**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

| | |
|---|---|
| VetBridge Product Development Subsidiary I (NM-OMP), LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>NewMarket Pharmaceuticals, LLC,<br><br>       Defendant. | Case No. 5:18-cv-06147-BCW<br><br>JURY DEMAND |

**SUGGESTIONS IN SUPPORT OF DEFENDANT NEWMARKET
PHARMACEUTICALS, LLC'S MOTION TO TRANSFER TO THE
<u>UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY</u>**

STINSON LEONARD STREET LLP
1201 Walnut Street, Suite 2900
Kansas City, MO  64105
Telephone: 816-691-2736
Facsimile: 816-412-8123
Email: brett.shanks@stinson.com

CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY  10281
Telephone: 212-504-6484
Facsimile: 212-504-6666
Email: robert.pollaro@cwt.com

ATTORNEYS FOR DEFENDANT
NEWMARKET PHARMACEUTICALS, LLC

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

    A.    The Parties ................................................................................................ 2

    B.    NewMarket's New Animal Drug ............................................................ 3

    C.    NewMarket Contracts With VetBridge To Fund Governmental Approval ............ 4

    D.    NewMarket Contracts With VetPharm To Conduct Clinical Trial In Furtherance Of Governmental Approval ................................. 5

    E.    NewMarket Files Suit Against VetPharm In The District Of New Jersey When The Approval Process Is Halted ................................. 6

    F.    VetBridge Files Parallel Action In Missouri State Court Because NewMarket Has Been Unable To Obtain Market Approval ................. 7

LEGAL STANDARD ............................................................................................... 7

ARGUMENT ............................................................................................................ 8

I.    THE COURT SHOULD TRANSFER THE CASE TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY ....................... 8

    A.    The Parallel NJ Action Was First-Filed ................................................. 8

    B.    Judicial Economy Favors Transfer ......................................................... 9

    C.    Comparative Costs Favor Transfer ...................................................... 11

    D.    Locus Of Operative Facts Favors Transfer .......................................... 12

    E.    Convenience Of The Parties And Witnesses Favors Transfer .............. 12

    F.    Plaintiff's Choice Of Forum Should Be Given Little Or No Weight ................. 13

    G.    Case-Specific Factors Favor Transfer .................................................. 14

CONCLUSION ....................................................................................................... 16

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES:**

Battenfeld Techs., Inc. v. Birchwood Labs., Inc.,
No. 2:10-CV-04224-NKL, 2011 WL 1131101 (W.D. Mo. Mar. 28, 2011) ..........................11

BBP v. Brasseler U.S.A. Dental, LLC,
No. 4:17-CV-10, 2017 WL 1132555 (E.D. Mo. Mar. 27, 2017) ...........................................11

C-Mart, Inc. v. Metro. Life Ins. Co.,
No. 4:13CV00052 AGF, 2013 WL 2403666 (E.D. Mo. May 31, 2013) ...............................14

Colo. River Water Conserv. Dist. v. United States,
424 U.S. 800 (1976) ............................................................................................................10

Cosmetic Warriors, Ltd. v. Abrahamson,
723 F. Supp. 2d 1102 (D. Minn. 2010) ...........................................................................11, 12

Crayola Props. v Alex Toys LLC,
No. 4:14-CV-00992-BCW, 2015 WL 12806577 (W. D. Mo. Jan. 7, 2015) (Wimes, J.)........11

Exp. Scripts, Inc. v. Jefferson Heath Sys. Inc.,
No. 4:13CV00379 AGF, 2014 WL 793773 (E.D. Mo. Feb. 27, 2014) ...................................13

Ferens v. John Deer Co.,
494 U.S. 516 (1990) ..............................................................................................................9

Fluid Control Products., Inc. v. Aeromotive, Inc.,
No. 4:09-CV-1667 CAS, 2011 WL 620115 (E.D. Mo. Feb. 11, 2011) ...................................12

Griggs v Credit Sols. of Am., Inc.,
2010 WL 2653474 (E.D. Mo. June 29, 2010) .................................................................. 9-10

Hynes Aviation Indus., Inc. v. Sacramento E.D.M., Inc.,
No. 6:12-CV-03521-BCW, 2013 WL 12198837
(W.D. Mo. Aug. 1, 2013) (Wimes, J.) ...........................................................................8, 9, 10

In re Apple, Inc.,
602 F.3d 909 (8th Cir. 2010) ..............................................................................................8, 14

Larsen v. Pioneer Hi-Bred Int'l, Inc.,
No. 4:06-CV-0077-JAJ, 2007 WL 3341698 (S.D. Iowa Nov. 9, 2007) ...................................11

May Dep't Stores Co. v. Wilansky,
900 F. Supp. 1154 (E.D. Mo. 1995) ......................................................................................10

Case 5:18-cv-06147-BCW   Document 9   Filed 10/12/18   Page 3 of 21

Monsanto Tech. LLC v Syngenta Crop Prot. Inc.,
  212 F. Supp. 2d 1101 (E.D. Mo. 2002)..................................................................8, 9

Nw. Airlines, Inc. v. Am. Airlines, Inc.,
  989 F.2d 1002 (8th Cir. 1993) ........................................................................8

Orthmann v. Apple River Campground, Inc.,
  765 F.2d 119 (8th Cir. 1985) ..........................................................................8

Preston v. Mo.-Neb. Exp., Inc.,
  No. 91-0056-CV-W-6, 1991 WL 626751 (W.D. Mo. Oct. 16, 1991) ....................................14

Shaffer v. Rees Masilionis Turley Architecture, LLC,
  No. 4:14-CV-965, 2014 WL 5320266 (E.D. Mo. Oct. 17, 2014)...........................................14

Terra Int'l, Inc. v. Miss. Chem. Corp.,
  119 F.3d 688 (8th Cir. 1997) ...........................................................................7-8

## STATUTES & OTHER AUTHORITIES:

28 U.S.C.:
  § 1391(b)(1) ....................................................................................................7
  § 1404(a) .......................................................................................................7

COMES NOW defendant NewMarket Pharmaceuticals LLC ("NewMarket"), by and through its undersigned counsel, and respectfully submits this memorandum of law in support of its motion to transfer Plaintiff VetBridge Product Development Subsidiary I (NM-OMP), LLC's ("VetBridge") Verified Petition for Damages, Specific Performance & Injunctive Relief to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

## INTRODUCTION

The present action is inextricably linked to a first-filed dispute currently pending before the Honorable Michael A. Shipp of the United States District Court for the District of New Jersey (Civil Action No. 17-cv-01852) (the "NJ Action") and should be transferred there in the interests of justice and for the convenience of the parties and witnesses. The parallel actions relate directly to NewMarket's stalled attempts to obtain governmental approval for its new animal drug and who is to blame for the delay. In the NJ Action NewMarket has alleged that the contract research organization ("CRO") hired to conduct the clinical trial, a company named VetPharm, Inc. ("VetPharm")(no relationship to Plaintiff VetBridge) is to blame because it has refused to make available the clinical trial data to NewMarket. VetPharm's continued refusal to release NewMarket's information has halted the approval process, and has thus had a domino effect that resulted in the present action filed by VetBridge which alleges NewMarket failed to provide it an approved drug for distribution. The nexus between the actions is simply this – NewMarket's performance of the contract with VetBridge, if deficient, was frustrated by VetPharm's failure to perform its agreement with NewMarket.

This case should be transferred to the District of New Jersey because (1) the NJ Action was first-filed and involves issues that substantially overlap; (2) transfer would promote judicial economy and avoid inconsistent rulings; (3) unnecessary duplication of resources, depositions and

discovery will be avoided, and (4) additional case-specific factors are present that strongly favor transfer of this action. Transfer is particularly warranted here because the United States District Court for the District of New Jersey has invested significant time and effort understanding the operative facts including holding multiple oral arguments and several, hours-long, settlement meetings. Transfer will also eliminate costly duplicative discovery which would otherwise require witnesses having to be deposed on multiple occasions in multiple matters. Plaintiff's forum choice of the State Court in Missouri, a forum that no longer has jurisdiction over this matter, is entitled to no deference. Nor would VetBridge be prejudiced by a transfer of this action, as both actions are in the earliest stages and no discovery has yet commenced in either action.

## STATEMENT OF FACTS

### A. The Parties

NewMarket is a small, family-run limited liability company, organized and existing under the laws of Delaware and based in Trenton, N.J. See Declaration of Mark Ridall ("Ridall Decl.") ¶ 2. NewMarket has four members that reside in New Jersey and Florida. Id. NewMarket is currently developing an animal drug – its first drug to be brought to market – for the treatment of animals, including horses. Id. ¶ 4. It is this first drug and associated approval process that is the subject matter of both actions. NewMarket designed and developed the material aspects of its new, patented drug in New Jersey. Id. NewMarket conducts the vast majority of its business in New Jersey including signing all the relevant agreements related to the project in New Jersey. Id. ¶ 2. NewMarket does not own any real estate, bank accounts or other property in Missouri. Id. NewMarket is "pre-revenue" which means it must rely on funding from other sources in order to operate. See id. ¶ 3.

VetBridge is a limited liability company organized and existing under the laws of the State of Missouri, with its principle place of business located at 1302 S. 59th Street, St. Joseph, Missouri. ECF No. 1-1 (Pet.) ¶ 1. It is believed that VetBridge members consist of, at least, five of the largest national and international animal pharmaceutical distributors including AHII/Paterson Veterinary Supply Inc. (Mendola Heights, Minnesota), MWI Veterinary Supply (Boise, Idaho), MidWest Veterinary Supply (Lakeville, Minnesota), Clipper Distributing (Saint Joseph, Missouri) and Victor Medical Co. (Lake Forest, California). See Ridall Decl. ¶ 10. The known members of VetBridge have combined sales revenues of well over $7 billion.

VetPharm is a New York corporation, organized and existing under the laws of the State of New York, with its principle executive office located at 349 West Commercial Street, Suite 2200 East Rochester, N.Y. See Pollaro Declaration ("Pollaro Decl.") ¶ 2 & Ex. 1 ¶ 8. VetPharm is a contract research organization that purports to provide clinical trial support services to pharmaceutical companies that develop new animal health products. Id. ¶ 4 & Ex. 3. VetPharm has no known offices or employees in the state of Missouri.

B. **NewMarket's New Animal Drug**

NewMarket is the owner, often referred to as the "drug sponsor" or "sponsor", of a new animal drug for treatment of animals including horses. Ridall Decl. ¶ 4. For a veterinary pharmaceutical product to be marketed and sold, the Food and Drug Administration Center for Veterinary Medicine ("FDA/CVM") must first approve the product to ensure that it is safe and effective. Id. ¶ 5. The process begins with the filing of a new animal drug application ("NADA") with the FDA/CVM. Id. The drug sponsor, in this case NewMarket, collects information about the manufacturing, safety, and effectiveness of the new drug. See id. The sponsor typically needs to conduct studies to develop this information. Id. For any studies that are performed, the sponsor analyzes the results which are included in the application. Id. A new animal drug sponsor may

hire, and often does hire, an independent CRO to assist in the preparation of clinical trial management services related to a NADA.  Id.  CRO's are hired, in large part, because they are highly regulated by the federal government and held to the strictest standards of impartiality.  Id.  The NADA, is reviewed by a team of FDA/CVM personnel, including veterinarians, animal scientists, biostatisticians, chemists, microbiologists, pharmacologists, and toxicologists.  Id.  If the FDA/CVM determines that the drug is, *inter alia*, safe and effective, the FDA/CVM approves the NADA and the drug can be legally marketed and sold.  Id.

A NADA includes several major technical components or "sections" such as:  (1) Chemical Manufacturing and Controls ("CMC"); (2) Target Animal Safety; (3) Effectiveness; (4) Human Food Safety; and (5) Environmental Impact.  Ridall Decl. ¶ 6.  The FDA/CVM allows for the major technical sections to be submitted in phases but will not approve an application until all phases have been completed and individually approved.  Id.

NewMarket began the approval process when it filed the CMC section on January 26, 2017.  See Ridall Decl. ¶ 7.  The remaining sections of the NADA – the Target Animal Safety and Effectiveness sections – are based on the clinical trial data, which has been withheld by VetPharm and is the subject of the NJ Action.  Id.  As discussed in more detail below, without the clinical trial data, the remaining sections of the NADA cannot be submitted and the approval process has stopped.  See id.

**C.    NewMarket Contracts With VetBridge To Fund Governmental Approval**

The approval process for veterinary medicines tracks the process for that of human drugs and is complicated, lengthy and expensive.  To defray the costs of approval NewMarket contracted with VetBridge for funding in the amount of $4 million (the "VetBridge Agreement") on June 27, 2014.  See, e.g., ECF No. 1-1 (Pet.) ¶¶ 7-10 & Ex. A at Ex. B.  In return for funding the approval

process, NewMarket granted VetBridge a license to distribute NewMarket's drug, limited by territory and field of use, if and when approved by the FDA/CVM.  See ECF No. 1-1 (Pet.) ¶¶ 7-8.  VetBridge drafted the VetBridge Agreement and it was signed, by NewMarket, at NewMarket's offices in Trenton, N.J.  Ridall Decl. ¶ 8.  Prior to entering into the VetBridge Agreement, VetBridge members and NewMarket entered into several non-disclosure agreements ("NDA's") that, *inter alia*, precluded the disclosure of confidential information related to the project to be disclosed to non-parties.  See id.

At the time the VetBridge Agreement was signed, both parties projected the total estimated costs of achieving market approval to be $4 million.  Ridall Decl. ¶ 9 & Ex. 1.  The costs of the approval process to date have exceeded $8 million.  Id.  NewMarket requested additional funding from VetBridge to cover the over-budget costs associated with the project.  See id.  VetBridge declined thus leaving NewMarket to shoulder the burden for all amounts beyond the $4 million in funding received from VetBridge.

**D.  NewMarket Contracts With VetPharm To Conduct Clinical Trial In Furtherance Of Governmental Approval**

On December 22, 2014, NewMarket and VetPharm entered into the Master Services Agreement (the "VetPharm Agreement").  Ridall Decl. ¶ 11.  The purpose of the VetPharm Agreement was for VetPharm to provide "clinical trial support services" to companies that are "developing new animal health products" and, in return, NewMarket agreed to "retain the services of VetPharm from time to time to provide clinical trial management services in connection with certain clinical research programs NewMarket is conducting".  Id.  VetPharm drafted the VetPharm Agreement.  Id.  The VetPharm Agreement was signed at NewMarket's offices in Trenton, N.J.  Id.

E.     **NewMarket Files Suit Against VetPharm In The District Of New Jersey When The Approval Process Is Halted**

NewMarket was forced to initiate the NJ Action as a last resort in order to move the approval process forward. See Pollaro Decl. ¶ 2 & Ex. 1 ¶¶ 1-6. Near the completion of the clinical trial it became clear that there was a significant fee dispute between VetPharm and NewMarket regarding the cost for completing the clinical trials associated with the project. See id. NewMarket having already begrudgingly paid $1.8 million on a $680 thousand contract could never have predicted that VetPharm would demand another $1.3 million before turning over the completed study. See id. Despite repeated attempts, VetPharm and NewMarket were unable to amicably resolve the dispute and VetPharm refused to turn over any information related to the clinical trial until it received another $1.3 million. See id. VetPharm maintains this position to date. The approval process is at a standstill as a result.

On March 8, 2017, VetPharm filed for Arbitration over the fee dispute (Case 01-17-0001-4888) (the "Arbitration"). Pollaro Decl. ¶ 5. Shortly thereafter, on March 21, 2017, NewMarket filed the NJ Action alleging, *inter alia*, breach of contract and misappropriation of trade secrets along with a contemporaneous application for issuance of a TRO requiring VetPharm to turn over the information related to the clinical trial while the parties arbitrate the fee dispute (Civil Action No. 17-cv-01852). See id. ¶ 2 & Ex. 1. VetPharm filed a cross-motion to stay the NJ Action and compel arbitration and the Court granted VetPharm's motion. See id. ¶ 3. However, VetPharm voluntarily withdrew the Arbitration on October 13, 2017. NewMarket successfully moved to lift the stay in the NJ Action and re-applied for a TRO. See id. ¶¶ 3, 5. Oddly, VetPharm again moved to stay the NJ Action for a second time in favor of arbitration. See id. ¶ 3. NewMarket's application for a TRO (now preliminary injunction) and VetPharm's second cross-motion to compel arbitration have been fully briefed and are awaiting a ruling from the Court. No discovery

has taken place in the NJ Action nor has VetPharm been required to answer NewMarket's complaint.  See id.

NewMarket and VetPharm appeared four times before the Court in NJ – twice in front of the Honorable Michael A. Shipp for oral argument and twice in front of the Honorable Magistrate Judge Tonianne J. Bongiovanni.  See Pollaro Decl. ¶ 3.  The NJ Court graciously invested significant time and effort moderating two settlement meetings that lasted hours.

### F. VetBridge Files Parallel Action In Missouri State Court Because NewMarket Has Been Unable To Obtain Market Approval

Without attempting to notify NewMarket, VetBridge initiated suit in the Circuit Court of Buchanan County, Missouri (18BU-CV03460) on August 28, 2018 alleging, *inter alia*, breach of the VetBridge Agreement for failure to "perform and provide the funding required to perform the steps and tasks necessary to obtain FDA approval from the CVM and provide VetBridge with its Omeprazole DSI Products in a saleable form for distribution[,] all in material breach of its obligations under the Agreement."  ECF No. 1-1 (Pet.) ¶ 12.  NewMarket removed the action to this Court on October 5, 2018.  See ECF No. 1.

## LEGAL STANDARD

Pursuant to Section 1404(a), a court may transfer a civil action to any other jurisdiction where (1) the case "might have been brought"[1] if (2) the transfer serves "the convenience of parties and witnesses, [and is] in the interest of justice[.]"  28 U.S.C. § 1404(a).  Courts have long identified some of the factors the Court should consider when deciding whether or not to transfer: such as the convenience of the parties and witnesses, the locus of operative facts, judicial economy, the plaintiff's choice of forum and the comparative costs of litigating in each forum.  See, e.g.,

---

[1]  There is no genuine dispute that VetBridge could have brought the present action in the United States District Court for the District of New Jersey in satisfaction of the first prong of the Court's Section 1404(a) analysis because NewMarket resides in that district.  *See* 28 U.S.C. § 1391(b)(1).

Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 696 (8th Cir. 1997). Courts are not limited to those factors that have been identified. See id. Courts are free to "weigh any 'case specific factors' relevant to convenience and fairness to determine whether transfer is warranted." In re Apple, Inc., 602 F.3d 909, 912 (8th Cir. 2010) (citation omitted). The decision to transfer is left to the discretion of the trial court. Terra Int'l., 119 F.3d at 697.

## ARGUMENT

## I. THE COURT SHOULD TRANSFER THE CASE TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

### A. The Parallel NJ Action Was First-Filed

The "first-filed" rule "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." Nw. Airlines, Inc. v. Am. Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993). The rule is "not intended to be rigid, mechanical, or inflexible[.]" Orthmann v. Apple River Campground, Inc., 765 F.2d 119, 121 (8th Cir. 1985). What constitutes parallel litigation is not limited to actions between the same parties with identical claims. Hynes Aviation Indus., Inc. v. Sacramento E.D.M., Inc., No. 6:12-CV-03521-BCW, 2013 WL 12198837, at *2 (W.D. Mo. Aug. 1, 2013) (Wimes, J.). The rule applies when the issues between the two litigations substantially overlap. Monsanto Tech. LLC v Syngenta Crop Prot. Inc., 212 F. Supp. 2d 1101, 1103 (E.D. Mo. 2002).

The NJ Action and the present action are parallel actions involving substantially the same issue, namely, who is liable for the delay in obtaining governmental approval. The NJ Action will resolve the issue as between VetPharm and NewMarket (see, e.g., Pollaro Decl. ¶ 2 & Ex. 1 ¶¶ 53-56) whereas the present action will resolve that issue as between VetBridge and NewMarket. See ECF No. 1-1 (Pet.) ¶¶ 12-13. Should NewMarket be successful in the NJ Action it would all but

preclude liability in the present action.  Ultimately, either this Court or the United States Court for the District of New Jersey "will be required to look at the same documents and circumstances and refer to and apply the same legal principles before arriving at a determination."  Hynes Aviation, 2013 WL 12198837, at *6.

There are two exceptions that would prevent the first-filed rule from applying:  (1) balance of convenience, and (2) compelling circumstances.  See, e.g., Monsanto Tech., 212 F. Supp. 2d at 1103-04.  Neither exception applies here.  As discussed in more detail below, litigating the issues in New Jersey, the locus of operative facts, is the more convenient forum for the parties and witnesses.  Nor are compelling circumstances present that would preclude application of the first-filed rule.  The VetBridge Agreement states "In the event a party reasonably determines that injunctive relief is needed, the parties consent to the jurisdiction in the Western District of Missouri."  ECF No. 1-1 (Pet.), Ex. A ¶ 14(b).  To the extent the language contained in the VetBridge Agreement could be construed as a forum selection clause the result does not change because the clause is permissive and not mandatory.  Hynes Aviation, 2013 WL 12198837, at *4 (finding that a permissive forum selection clause is not a compelling circumstance that would preclude application of the rule).  Even if the clause is somehow interpreted to be mandatory it does not preclude application of the rule and the case should still be transferred.  Id, at *11 (noting that forum selection clauses are not dispositive but are part of a larger "calculus" in which a court weighs the convenience of the parties and witnesses).

**B.** **Judicial Economy Favors Transfer**

Judicial economy is a critical factor to determine whether a case should be transferred.  A scenario in which "'the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [Section] 1404(a) was designed to prevent.'"  Ferens v. John Deer Co., 494 U.S. 516, 531 (1990) (citation omitted); Griggs v Credit Sols. of

Am., Inc., 2010 WL 2653474, at \*3 (E.D. Mo. June 29, 2010) (cases support premise that "[Section] 1404(a) was designed to prevent the potential waste of resources that results when cases involving the same issues are pending in multiple, different district courts."). "As between federal district courts . . . the general principle is to avoid duplicative litigation." <u>Colo. River Water Conserv. Dist. v. United States</u>, 424 U.S. 800, 817 (1976). Thus, "'[l]itigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplic[ative] litigation and inconsistent results.'" <u>May Dep't Stores Co. v. Wilansky</u>, 900 F. Supp. 1154, 1166 (E.D. Mo. 1995) (citation omitted).

The issues to be decided in the NJ Action and this action substantially overlap as both actions will resolve issues of liability resulting from delay in approving NewMarket's drug. Here, the United States District Court for the District of New Jersey has spent significant amounts of time and effort getting to know the operative facts since the case was filed in March of 2017. VetPharm and NewMarket have participated in several marathon-like settlement sessions with Magistrate Judge Tonianne Bongiovanni who, along with Judge Shipp, are well-versed in the overlapping issues presented by the parallel actions. <u>See</u>, <u>e.g.</u>, Pollaro Decl. ¶ 3. Allowing the actions to proceed on separate tracks creates the potential for inconsistent rulings. <u>Hynes Aviation</u>, 2013 WL 12198837, at \*12 (granting transfer, noting "unnecessary risk of inconsistent rulings may result from litigating the same issues in two courts."). For example, it would be an anomalous result if NewMarket were to be successful in the NJ Action against VetPharm yet be found liable to VetBridge for failing to take the necessary steps to achieve market approval. Transfer eliminates this risk altogether. Similarly, transfer will eliminate needless motion practice. The crux of VetBridge's allegations are that NewMarket is responsible for the delay in market approval, thus, VetBridge has now created a situation where it is a necessary party to the NJ Action where liability for the delay will be resolved. For at least these reasons, transfer represents a significant advantage

over litigating the actions in separate forums. <u>Cosmetic Warriors, Ltd. v. Abrahamson</u>, 723 F. Supp. 2d 1102, 1108-09 (D. Minn. 2010) (movant must show advantage to litigating in its chosen forum not just a shifting of inconvenience).

Courts in the Eighth Circuit routinely transfer actions under similar circumstances to avoid the needless waste of precious judicial resources. <u>See</u>, <u>e.g.</u>, <u>BBP v. Brasseler U.S.A. Dental, LLC</u>, No. 4:17-CV-10, 2017 WL 1132555, at *1 (E.D. Mo. Mar. 27, 2017) (transferring action involving only a common defendant to district where similar action pending); <u>Battenfeld Techs., Inc. v. Birchwood Labs., Inc.</u>, No. 2:10-CV-04224-NKL, 2011 WL 1131101, at *3 (W.D. Mo. Mar. 28, 2011) (transferring action where case overlapped with first-filed suit already pending in Minnesota involving same issues); <u>Crayola Props. v Alex Toys LLC</u>, No. 4:14-CV-00992-BCW, 2015 WL 12806577, at *2-3 (W. D. Mo. Jan. 7, 2015) (Wimes, J.) (transferring case to N.J. in part because N.J. was the location of the project was designed and developed).

### C.     <u>Comparative Costs Favor Transfer</u>

Absent a transfer, NewMarket "will be forced to proceed in two districts and incur duplicative litigation costs." <u>Larsen v. Pioneer Hi-Bred Int'l, Inc.</u>, No. 4:06-CV-0077-JAJ, 2007 WL 3341698, at *11 (S.D. Iowa Nov. 9, 2007). By contrast, if the Court were to transfer this action to the United States District Court for the District of New Jersey the overall cost of litigating this matter would be substantially reduced because (i) discovery could be coordinated in a single proceeding, (ii) witnesses, including third-party witnesses, would only need to be deposed once, (iii) those witnesses, the majority of whom reside in the outside the subpoena power of this Court, would not be forced to incur the time and expense of traveling to Missouri; (iv) documents would only need to be produced once, and (v) only one court would need to expend the time and resources to preside over common facts.

### D. **Locus Of Operative Facts Favors Transfer**

Courts routinely transfer cases to the district in which significant events took place.  See, e.g., Cosmetic Warrior, 723 F. Supp. 2d at 1109 (transferring case to district in which product was designed and marketed and from which it was sold).  Here, NewMarket's headquarters (in Trenton, N.J.) served as the epicenter for the entire project from which NewMarket communicated with all other parties including VetBridge, VetPharm, the FDA/CVM and numerous other contractors and subcontractors.  Ridall Decl. ¶ 2.  New Jersey is the location where all material agreements were signed by NewMarket.  See id.  NewMarket, as the drug sponsor, is required to maintain all documentation related to government approval in a secure location with controlled access.  Id.  Those vital documents are located in Trenton, N.J.  See id.

### E. **Convenience Of The Parties And Witnesses Favors Transfer**

"'The logical "starting point" for analyzing the convenience of the parties is a consideration of their residences in relation to the district chosen by the plaintiff and the proposed transferee district.'"  Fluid Control Products., Inc. v. Aeromotive, Inc., No. 4:09-CV-1667 CAS, 2011 WL 620115, at *2 (E.D. Mo. Feb. 11, 2011) (citations omitted).  The members of NewMarket reside in the United States District for the District of New Jersey, where its principle and sole place of business and where its documents are located.  Ridall Decl. ¶ 2.  One member of NewMarket resides in the Southern District of Florida.  Id.  VetBridge, on the other hand, has only one member that resides in this district.  See id. ¶ 10.  All other members are headquartered outside of the State of Missouri including AHII/Paterson Veterinary Supply Inc. (Mendola Heights, Minnesota), MWI Veterinary Supply (Boise, Idaho), MidWest Veterinary Supply (Lakeville, Minnesota) and Victor Medical Co. (Lake Forest, California).  Id.  Here, the majority, if not all, of the documents related to the governmental approval process are located at NewMarket's headquarters in Trenton, N.J.  Id. ¶ 2.  Many of the documents related to market approval, particularly those sent and received

from the FDA/CVM, are in hard copy.  Id.  VetPharm, a potential party absent transfer, resides in Rochester, N.Y.  Pollaro Decl. ¶ 2 & Ex. 1 ¶ 8.  Therefore, on balance, this factor weighs in favor of transfer.

With respect to the convenience of the witnesses factor the Court considers "'the importance of the witnesses' proposed evidence, the willingness of the witness to appear and the adequacy of deposition testimony, [and] the amenability of significant nonparty witnesses to subpoena at the respective forum[.]'"  Exp. Scripts, Inc. v. Jefferson Heath Sys. Inc., No. 4:13CV00379 AGF, 2014 WL 793773, at *4 (E.D. Mo. Feb. 27, 2014) (citations omitted).

At this stage of proceedings, based on the Petition, it appears as if the primary witness will be NewMarket CEO Mark Ridall who resides in New Jersey.  See, e.g., Ridall Decl. ¶ 2.  He will likely testify about the steps NewMarket undertook to seek market approval and why they were reasonable.  To the extent any other NewMarket employees or consultant are called to testify they would do so in proximity to NewMarket's headquarters in Trenton, N.J.  If this action is not transferred, NewMarket expects the principles of VetPharm including President Denni Day ("Day") and CFO Pat Niland ("Niland") to possess information material to NewMarket's defenses and counterclaims.  Both Day and Niland are located in Rochester, N.Y.  Members of VetBridge may also have relevant testimony to possible claims or defenses of NewMarket.  As discussed above all but one of the members of VetBridge reside outside this district.  Ridall Decl. ¶ 10.  Because the primary witness in this case, Mark Ridall, resides in New Jersey this factor weights in favor of transfer.

**F.** **Plaintiff's Choice Of Forum Should Be Given Little Or No Weight**

Although courts generally give considerable deference to a plaintiff's choice of forum, that choice is afforded no weight where, as here, the plaintiff could have but did not choose to litigate in the United States District Court for the Western District of Missouri.  Instead, VetBridge chose

to file its case in the Circuit Court of Buchanan County, Missouri forum that no longer has any jurisdiction over the matter. A plaintiff's choice of forum is also afforded less weight where, as here, the operative events took place in another forum. Shaffer v. Rees Masilionis Turley Architecture, LLC, No. 4:14-CV-965, 2014 WL 5320266, at *2 (E.D. Mo. Oct. 17, 2014); Preston v. Mo.-Neb. Exp., Inc., No. 91-0056-CV-W-6, 1991 WL 626751, at *1 (W.D. Mo. Oct. 16, 1991). The minimal deference courts give a plaintiff's choice of forum in cases like this cannot justify denying a request for transfer, especially where other factors, such as the convenience of parties and witnesses, the locus of operative facts and the interests of justice weigh in favor of transfer, as they do here. See C-Mart, Inc. v. Metro. Life Ins. Co., No. 4:13CV00052 AGF, 2013 WL 2403666, at *4 (E.D. Mo. May 31, 2013).

### G. Case-Specific Factors Favor Transfer

Courts are free to "weigh any 'case specific factors' relevant to convenience and fairness to determine whether transfer is warranted." In re Apple, 602 F.3d at 912 (citation omitted). Such a factor is present here that strongly weighs in favor of transfer.

In early 2016, unbeknownst to NewMarket, VetPharm president Day contacted members of VetBridge including President Kevin Speltz ("Speltz") and Guy Flickenger ("Flickenger") to discuss payment pursuant to the VetPharm Agreement. See, e.g., id. VetPharm and VetBridge have no business relationship. Communication between the CRO – VetPharm - and a third-party with a financial interest in the outcome of the clinical trial – like VetBridge – is a potential conflict of interest affecting the appearance of partiality that could result in the entire study being disallowed by the FDA/CVM. See, e.g., Ridall Decl. ¶ 13. VetBridge knows this which is why, upon being contacted by VetPharm, VetBridge President Speltz reached out to NewMarket, on March 22, 2016 "requesting written permission from you to talk with VetPharm directly, per her request." Id. ¶ 12 & Ex. 3. NewMarket responded unequivocally the same day: "[NewMarket]

can not give you permission to speak with VetPharm under the advice of counsil [sic]. **We would consider direct contact with VetPharm interference with our existing contracts.**" Id. (emphasis added). VetPharm was similarly instructed to refrain from communication with VetBridge regarding the NewMarket project. See id. ¶ 12. Yet, through discovery in the aborted Arbitration, it has become known that VetPharm and VetBridge disregarded NewMarket's clear instructions and continued to communicate with one another regarding the merits of the NewMarket project and its funding. See, e.g., Ridall Decl. ¶ 13. Moreover, in response to NewMarket's repeated request for the communications, VetBridge repeatedly denied any such communications ever took place. Id. ¶ 14 & Ex. 5. But documents show otherwise. See id. NewMarket, as the drug sponsor, is obligated to apprise the FDA/CVM of any and all information that could impact the partiality of the clinical trial data so that the agency may consider it in making its assessment of the reliability of the data. See id. ¶ 12.

The communications have had a chilling effect on NewMarket's contractual relationships. Since the communications occurred, two things have happened: (1) no additional funding was ever received from VetBridge despite prior assurances that funding would be made available, and (2) VetPharm has since refused to turn over the clinical trial data because they fear they will not be paid. See id. Whether or not the FDA/CVM throws out the study based on these communications remains to be seen. This case-specific factor not only highlights the commonality and nexus of issues between both actions it strongly favors transfer so that the ramifications of these communications, which are not yet fully known, can be resolved in a single forum in an efficient manner. Lastly, the Court should consider the factor that VetBridge brought this action knowing full well that NewMarket had filed the NJ Action and the relief sought there. VetBridge cannot now complain that consolidation of the cases is prejudicial because this is a problem of their own creation and weighs in favor of transfer.

## CONCLUSION

For the foregoing reasons, NewMarket respectfully requests that the Court transfer this action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

Dated:     October 12, 2018

<div style="margin-left: 40%;">

Respectfully submitted,

STINSON LEONARD STREET LLP

*/s/ Brett A. Shanks*
Brett A. Shanks, MO #67749
1201 Walnut Street, Suite 2900
Kansas City, MO  64105
Telephone: 816-691-2736
Facsimile: 816-412-8123
Email: brett.shanks@stinson.com

CADWALADER, WICKERSHAM & TAFT LLP

*/s/ Robert M. Pollaro*
Robert M. Pollaro, *admitted pro hac vice*
200 Liberty Street
New York, NY  10281
Telephone: 212-504-6484
Facsimile: 212-504-6666
Email: robert.pollaro@cwt.com

ATTORNEYS FOR DEFENDANT
NEWMARKET PHARMACEUTICALS, LLC

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of October, 2018, the above pleading was filed with

the Court via the CM/ECF system, and served on the following via electronic mail:

> Greer S. Lang
> Brian W. Fields
> LATHROP & GAGE LLP
> 2345 Grand Boulevard, Suite 2200
> Kansas City, MO  64108-2618
> Telephone: 816-292-2000
> Facsimile: 816-292-2001
> Email: glang@lathropgage.com
>          bfields@lathropgage.com
>
> Attorneys for Plaintiff
> VetBridge Product Development Subsidiary I (NM-OMP), LLC

> */s/ Brett A. Shanks*
> Brett A. Shanks
>
> Attorney for Defendant
> NewMarket Pharmaceuticals, LLC