IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| VetBridge Product Development Subsidiary I (NM-OMP), LLC, | ) | |
| Plaintiff, | ) | Case No. 5:18-CV-06147-BCW |
| vs. | ) | |
| NewMarket Pharmaceuticals, LLC, | ) | |
| Defendant. | ) | |

**SUGGESTIONS IN SUPPORT OF PLAINTIFF'S MOTION TO SCHEDULE A HEARING ON ITS MOTION FOR A PRELIMINARY INJUNCTION AND TO EXTEND THE AMENDED TEMPORARY RESTRAINING ORDER**

COMES NOW Plaintiff VetBridge Product Development Subsidiary I (NM-OMP), LLC ("VetBridge" or "Plaintiff"), by and through counsel, and respectfully submits its Suggestions in Support of its Motion to Schedule a Hearing on its Motion for a Preliminary Injunction and to Extend the Amended Temporary Restraining Order ("Motion").

## I. Procedural and Factual Background

This action arose out of a June 27, 2014 Exclusive Distribution and License Agreement (the "Agreement") entered into between VetBridge and Defendant NewMarket Pharmaceuticals, LLC ("NewMarket" or "Defendant") with respect to the development, manufacture, supply, marketing and distribution of NewMarket products, consisting of rapidly dissolving formulations of omeprazole (used in the treatment and prevention of ulcers), including omeprazole direct system introduction (DSI) compositions for use in all non-human animals, especially equine animals (hereinafter, "Omeprazole DSI Products"), as well as the licensing of NewMarket's

intellectual property and patent rights relating thereto. (Verified Petition [Doc. 1, Ex. A at 3,[1] ¶7). (A true and correct copy of the Agreement is attached hereto as **Exhibit 1**).[2] Pursuant to the Agreement, and in exchange for VetBridge's payment of $4,000,000,[3] NewMarket appointed VetBridge as its exclusive distributor and granted it an "exclusive, transferable, perpetual and royalty-free right and license to use, sell, offer for sale, import and Distribute, with the right to sub-license," NewMarket's intellectual property and patent rights ("IP/Patent Rights") related to its Omeprazole DSI Products in the agreed upon Field ("the veterinary use of rapidly dissolving formulations of omeprazole in all non-human animals including especially horses and other equine animals") and Territory ("the veterinary market in the United States of America including all of its states, districts, territories and possessions, including the District of Columbia"). (Agreement at ¶¶ 1(c) and 2; Verified Petition [Doc. #1, Ex. A at 5, ¶8]).

VetBridge filed its Verified Petition in the Circuit Court on August 29, 2018, asserting claims against NewMarket for:

(i) Breach of contract for failing to fund and perform the steps to obtain necessary approvals from the Federal Drug and Food Administration's Center for Veterinary Medicine ("FDA/CVM") and to manufacture and supply

---

[1] Exhibit A to NewMarket's Notice of Removal [Doc. 1] is not paginated. For the Court's convenience, VetBridge has bates-numbered the pages in the lower right hand corner and attaches the same hereto as **Exhibit 2**.

[2] As a matter of courtesy in the Circuit Court of Buchanan County, Missouri ("Circuit Court"), VetBridge, at the request of NewMarket's counsel, agreed that the Agreement, which was attached to VetBridge's Verified Petition for Damages, Specific Performance & Injunctive Relief ("Verified Petition") as Exhibit A, could be placed under seal. However, the Agreement—which is not called a "Confidential Agreement" and contains no markings identifying it as "Confidential," as required under ¶12(b) of the Agreement—is not a confidential document and there is no reason why that document should not be filed openly in Court.

[3] The Agreement expressly capped VetBridge's payment under the Agreement at $4,000,000. (Agreement at Exhibit B ("[VetBridge] shall not be obligated to contribute more than $4,000,000 in the aggregate to [NewMarket] or any third party.")). By November 23, 2015, VetBridge had paid NewMarket $4,002,435, thereby fully performing its funding obligation. (Verified Petition at ¶11 [Doc. 1, Ex. A at 6]).

VetBridge with the Omeprazole DSI Products in a saleable form for distribution (Count I);

(ii) Breach of contract for using VetBridge's $4,000,000 to pay expenses that were not "direct expenses related to the development of" NewMarket's Omeprazole DSI Products, contrary to the limitations specified in ¶1(d) of the Agreement (Count II);

(iii) Specific performance under the Agreement's "Change in Control" provision (¶¶ 13(d)(i) and (ii)) to permit VetBridge to step into NewMarket's shoes to make and commercialize the Omeprazole DSI Products in the Field and Territory, with the right to assume the beneficial position of NewMarket's relationships with any Collaborators (including, but not limited to, Collaborators Catalent Pharma Solutions, LLC and Srini Pharmaceuticals of India), to make and commercialize its Omeprazole DSI Products in connection therewith (Count III); and

(iv) A temporary restraining order and preliminary and permanent injunction to enjoin and restrain NewMarket from directly or indirectly pledging, encumbering, assigning, transferring, disposing of or otherwise conveying or granting any rights or interests in or to NewMarket's Omeprazole DSI Products and/or its IP/Patent Rights relating thereto in the Field and Territory. (Count IV) (Verified Petition [Doc. 1, Ex. A at 1-21]).

The Circuit Court entered an *ex parte* Temporary Restraining Order ("TRO") on September 5, 2018, and set VetBridge's request for a preliminary injunction, as made in its Verified Petition, for a hearing on September 14, 2018 at 9:30 a.m. (TRO [Doc. 1, Ex. A at 39-45]). NewMarket was served with the TRO and appeared at the September 18, 2018 preliminary injunction hearing through counsel. (Return of Service [Doc. 1, Ex. A at 48-49]; Notice of Hearing [Doc. 1, Ex. A at 50-51)]; Division 1–Civil Worksheet [Doc. 1, Ex. A at 61]; Amended Temporary Restraining Order ("Amended TRO") [Doc. 1, Ex. A at 63]).

The TRO "enjoined and restrained" NewMarket, "together with its officers, managers, members, agents, affiliates, attorneys, and employees, and all other persons in active concert or participation with them, "from directly or indirectly pledging, encumbering, assigning, transferring, disposing of or otherwise conveying or granting any rights or interests in or to":

1. “NewMarket’s Omeprazole DSI Products, consisting of (a) rapidly dissolving formulations of omeprazole (used for both the treatment and prevention of ulcers), including omeprazole direct systemic introduction (DSI) compositions for use in all non-human animals including especially equine animals, and (b) any revisions, alterations, or improvements to such products (collectively, the “Omeprazole DSI Products), and/or

2. NewMarket’s IP/Patent Rights relating thereto, including all patents and patent applications, and all divisionals, continuations, continuations-in-part, counterparts, re-examinations, reissues, extensions, registrations, and supplementary or complementary certificates and the like, both domestic and foreign, and items which claim the benefit of priority to any of the foregoing, whether in whole or in part, directly or indirectly owned, licensed, and/or optioned (with the right to grant sub-licenses) by NewMarket or an affiliate thereof, as of the Effective Date (June 27, 2014) of the Exclusive Distribution and License Agreement or during the term of said agreement, which relate to the Omeprazole DSI Products, and their development, manufacture, or use in the Field and in the Territory, as defined below, including, but not limited to, the following:

| Item | Country | Patent Application or Patent No. | Filing Date | Title |
|---|---|---|---|---|
| 1 | US | 61/437763 | 01/31/2011 | |
| 2 | US | 13/343,692; issued as 8,722,636 | 01/04/2012; issued 05/13/2014 | Animal treatments |
| 3 | US | 14/275,019; issued as 10,022,361 | 05/12/2014; issued 07/18/2018 | Animal Treatments |
| 4 | US | 14/275,031; issued as 9,402,835 | 05/12/2014; issued 08/02/2016 | Animal Treatment |
| 5 | WO | PCT/US2012/020242 | 01/04/2012 | Animal Treatment |
| 6 | US | 61/674,435 | 07/23/2012 | |
| 7 | US | 61/678,355 | 01/08/2012 | |
| 8 | US | 61/641,509 | 02.05.2012 | |
| 9 | WO | PCT/US2012/070031 | 12/17/2012 | Pharmaceutical compositions for direct systemic introduction |
| 10 | US | 14/398,085 | 10/30/2014 | |
| 11 | US | 16/014,290 | 06/21/2018 | |

(collectively, the “IP/Patent Rights”),

in the Field (defined as “the veterinary use of rapidly dissolving formulations of omeprazole in all non-human animals including especially horses and other equine animals”) and

> Territory (defined as "the veterinary market in the United States of America including all of its states, districts, territories, and possessions, including the District of Columbia")."

(TRO [Doc. 1, Ex. A at 44]).

The TRO was issued based upon the evidence presented in the Verified Petition that NewMarket—despite the Agreement's "Change in Control" provision,[4] its grant of exclusive rights to VetBridge[5] and the Agreement's anti-assignment provision,[6] and without VetBridge's consent—(i) claimed (in May 2016) that it had purportedly (a) transferred an 80% ownership interest in NewMarket to Aboris Animal Health, LLC ("Aboris"), a Delaware limited liability company; (b) assigned its right to manufacture its Omeprazole DSI Products to Aboris; and (c) transferred its IP/Patent Rights related to the Omeprazole DSI Products to an unnamed, overseas company for "tax purposes"; and (ii) advised VetBridge (in March 2017) that it had engaged AgriCapital Corporation, as a broker, for the purported sale of the distribution rights to NewMarket's Omeprazole DSI Products on a global basis, including within the United States, in direct violation of VetBridge's exclusive rights under the Agreement, thereby triggering the Agreement's "Change in Control"

---

[4] Agreement at ¶¶ 13(d)(i) and (ii). Pursuant to the Agreement, a "change of control" occurs when, among other things:

> (v) …(i) any Person is or becomes the "beneficial owner" (as defined in Rules 13d-3 and 13d-5 of the Securities Exchange Act of 1934, as amended, except that a person shall be deemed to have "beneficial ownership" of all shares that any such person has the right to acquire, whether such right is exercisable immediately or only after the passage of time), directly or indirectly, of over 50% of the total voting power of all classes of capital stock then outstanding of [NewMarket] normally entitled to vote in elections of directors;… or (iii) a party conveys, transfers or leases all or substantially all of its assets relating to this agreement to any person…."

(Agreement at ¶13(d)(v)).

[5] *Id.* at ¶¶ 1(a) and 10(c).

[6] For example, ¶15(b) of the Agreement expressly provides that, "[n]either party may (i) assign, subcontract, delegate or otherwise transfer this Agreement or any of its rights or obligations, or (ii) contract with third parties to perform any of the party's obligations, except as contemplated in this Agreement, without the other party's prior written consent." *Id.*

provision. (*See, e.g.,* Verified Petition, ¶¶ 34, 35, 37, 38, 45). The TRO was issued to, among other things, preserve the status quo so as not to render VetBridge's right to specific performance under the Agreement's "Change in Control" provision ineffectual.[7]

Although VetBridge was prepared to proceed with the preliminary injunction hearing on September 14, at the request of NewMarket's counsel, the preliminary injunction hearing was continued, and NewMarket's counsel stipulated and agreed that the TRO would remain in effect until the rescheduled preliminary injunction hearing, which was set by agreement for November 5, 2018 at 9:30 a.m. (Amended TRO [Doc. 1, Ex. A at 63]—"This [Amended] Temporary Restraining Order…will remain in effect until the November 5, 2018 preliminary injunction hearing, or further Order of this Court.").

NewMarket's counsel was initially unwilling to stipulate to the TRO remaining in place if the preliminary injunction hearing was continued (even though it was the one asking to continue that hearing). VetBridge's counsel, however, informed the Court that just days before the preliminary injunction hearing, VetBridge had discovered that yet another party, Dechra Pharmaceuticals PLC ("Dechra"), an England-based manufacturer of veterinary products, reported in its annual report (for the year ending June 30, 2018) that it had paid NewMarket £0.25 million (or $325,604.35) "to secure the worldwide rights for an equine gastrointestinal formulation from NewMarket Pharmaceuticals LLC…."[8] (June 30, 2018 Dechra Annual Report,

---

[7] TRO [Doc. 1, Ex. A at 43, ¶3(j)].

[8] VetBridge has since learned that Dechra entered into a letter of intent with NewMarket for the exclusive worldwide rights (including the United States) to distribute NewMarket's Omeprazole DSI Products (the "LOI"). VetBridge understands that Dechra's right under the LOI to enter into an exclusive distribution agreement isn't even triggered until NewMarket delivers certain due diligence materials for its review, which has not yet occurred. Although VetBridge has requested that NewMarket provide it with a copy of the LOI, it has refused to do so. VetBridge also requested a copy of LOI in its First Request for Production of Documents, which were served on October 5, immediately before NewMarket filed its Notice of Removal. (Doc. 1, Ex. A at 72-73).

**Exhibit 3**). Given this newly discovered information, the Circuit Court made clear that it would not continue the preliminary injunction hearing unless NewMarket consented to the extension of the TRO, which it did. (Amended TRO [Doc. 1, Ex. A at 63-69]).

NewMarket thereafter filed its Notice of Removal, removing this action to this Court on October 5. (Notice of Removal [Doc. 1]. Despite that removal, the Amended TRO, which was stipulated and agreed to by NewMarket, remains in effect and VetBridge now seeks to (i) have the hearing on its motion for preliminary injunction set for hearing, and (ii) to have the Court extend the Amended TRO until such time as the Court rules on VetBridge's motion for a preliminary injunction.

## II. Argument & Authorities

### A. The Court should set Plaintiff's motion for preliminary injunction for hearing, and extend the Amended TRO, stipulated and agreed to by NewMarket, until the Court's rules on that motion.

Pursuant to 28 U.S.C. § 1450, the Amended TRO continues to be valid following the removal of this action. That statute provides that, "[w]henever any action is removed from a State court to a district court of the United States…[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." *Id.* "In essence, the federal court 'takes the case up where the State court left it off' and does 'not vacate what had been done in the State court previous to the removal.'" *Global Control Sys. v. Luebbert*, No. 14-657-DGK, 2016 U.S. Dist. LEXIS 35951, at *5 (W.D. Mo. Mar. 21, 2016) (quoting *Duncan v. Gegan*, 101 U.S. 810, 812 (1879); *see also Schafer v. Macmillan*, No. 14-1053-DGK, 2015 U.S. Dist. LEXIS 103702, at *7 (W.D. Mo. Aug. 7, 2015).

The U.S. Supreme Court has directed that, "an *ex parte* temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by [Fed. R. Civ. P.] 65(b), measured from the date of removal." *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 439-40, 94 S.Ct. 1113, 1126 (1974). Rule 65(b)(2), however, expressly provides that an *ex parte* TRO shall expire "at the time after entry—not to exceed 14 days—that the court sets, ***unless before that time the court, for good cause shown, extends it for a like period or the adverse party consents to a longer extension***." *Id.* (Emphasis added).

Although the TRO, as originally entered in the Circuit Court, was issued *ex parte,* the preliminary injunction hearing was continued (at NewMarket's request) and the Amended TRO was only entered after NewMarket's counsel stipulated and agreed to extend the same until the preliminary injunction hearing—scheduled for November 5, 2018—was held. Thus, consistent with Rule 65(b)(2), the Amended TRO, by its express terms, remains in effect "until the November 5, 2018 preliminary injunction hearing, or further Order of this Court." (Amended TRO [Doc. 1, Ex. A at 69]).

Moreover, VetBridge should not be placed at a disadvantage simply because NewMarket chose to remove this action to federal court, and good cause exists to extend the Amended TRO until this Court can set VetBridge's motion for a preliminary injunction for a hearing and rule on the same. VetBridge has fully performed its obligations under the Agreement and seeks specific performance of the Agreement's "Change in Control" provision. (Agreement at ¶13(d)(ii)). That provision provides for VetBridge to step into NewMarket's shoes to make and commercialize the Omeprazole DSI Products in the Field and Territory, with the right to assume the beneficial

position of NewMarket's relationships with any Collaborators in connection therewith. *Id.* The "Change in Control" provision, by NewMarket's own admissions, was triggered by, among other things, its purported (a) transfer of an 80% ownership interest in NewMarket to Aboris; (b) assignment of its right to manufacture its Omeprazole DSI Products to Aboris; and (c) transfer of its IP/Patent Rights related to the Omeprazole DSI Products to an unnamed, overseas company for "tax purposes." (Verified Petition at ¶¶ 34-38, 45 [Doc. 1, Ex. A at 12-13]). Despite the exclusive rights NewMarket granted to VetBridge in the Field and Territory, the evidence shows that NewMarket continues to purportedly transfer and enter into agreements to transfer those same rights (within the same Field and Territory) to third parties: first to some unnamed, overseas company for "tax purposes"; and now, apparently, to Dechra pursuant to the LOI. (Verified Petition at ¶¶ 34, 35, 45, 46 [Doc. 1, Ex. A at 12-13]; June 30, 2018 Dechra Annual Report, **Exhibit 3**).

Such actions create a very real risk that VetBridge will suffer imminent, irreparable harm in that, among other things, NewMarket's actions might render any judgment for specific performance entered in VetBridge's favor ineffectual if—before judgment is entered—NewMarket successfully transfers or conveys those same rights to a third party. *See, e.g.,* RSMo. § 526.050 (A preliminary injunction is appropriate to "restrain[] the commission or continuance of some act…, the commission or continuance of which, during the litigation, would produce injury to the plaintiff, or…[to restrain] some act…tending to render the judgment ineffectual."); *In re Feit & Drexler, Inc.,* 760 F.2d 406, 416 (2d Cir. 1985) (finding it appropriate, based on defendant's numerous and substantial efforts to hide and secrete assets, for the District Court sitting as a Bankruptcy Court to issue a preliminary injunction to prevent the defendant from making any judgment the trustee might eventually obtain against her ineffectual); *Now Disc, Inc. v. Munn*, No. 4:10-CV-00403-EJL, 2010 U.S. Dist. LEXIS 123676, at *14-15 (D. Idaho Nov. 19,

2010) (preliminary injunction appropriate where defendant's actions would threaten or tend to render a judgment entered in the case ineffectual).

VetBridge's position is that any such transfers are void as to it—given the recorded notice of its rights in the U.S. Patent & Trademark Office (*see* Verified Petition at ¶33 [Doc. 1, Ex. A at 12]). It's doubtful, however, that third parties who have or in the future do pay NewMarket for such rights will agree; putting VetBridge in a position where, even if it is successful in this action, it may then have to litigate its rights against such third parties. The only way to protect against that is for the Court to enjoin NewMarket from directly or indirectly pledging, encumbering, assigning, transferring, disposing of or otherwise conveying or granting any rights or interests in or to NewMarket's Omeprazole DSI Products and/or its IP/Patent Rights relating thereto in the Field and Territory while this action is pending.

## III. Conclusion

Based upon the foregoing, Plaintiff VetBridge Product Development Subsidiary I (NM-OMP), LLC, respectfully requests that the Court set its motion for a preliminary injunction, as set forth in its Verified Petition, for a hearing on November 5, 2018 at 9:30 a.m., or as soon thereafter as the parties may be heard, and that the Amended TRO, as entered by the Circuit Court and stipulated and agreed to by NewMarket, be extended until such time as VetBridge's motion for a preliminary injunction is ruled upon.

Dated: October 19, 2018.

Respectfully submitted by,

LATHROP GAGE LLP

BY: */s/ Greer S. Lang*
Greer S. Lang MO #40107
Brian W. Fields MO #45704
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
Phone: 816.292.2000
Fax: 816.292.2001
glang@lathropgage.com
bfields@lathropgage.com

**Attorneys for Plaintiff**
**VetBridge Product Development**
**Subsidiary I (NM-OMP), LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2018, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the below-named counsel:

Brett A. Shanks, MO #67749
STINSON LEONARD STREET LLP
1201 Walnut Street, Suite 2900
Kansas City, Missouri, 64105
Brett.shanks@stinson.com

Robert Pollaro
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
Robert.Pollaro@cwt.com

**Attorneys for Defendant**
**NewMarket Pharmaceuticals, LLC**

*/s/ Greer S. Lang*
**An Attorney for Plaintiff**