## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

VetBridge Product Development Subsidiary I
(NM-OMP), LLC,

        Plaintiff,

vs.

NewMarket Pharmaceuticals, LLC,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)

Case No. 5:18-CV-06147-BCW

## DECLARATION OF GREER S. LANG

I, Greer S. Lang, being over the age of 18, under the penalties of perjury, state as follows:

1. My name is Greer S. Lang. I am a partner in the law firm of Lathrop Gage LLP and lead counsel for the plaintiff, VetBridge Product Development Subsidiary I (NM-OMP), LLC ("VetBridge"), in this action. In that capacity, I have personal knowledge of the facts stated herein.

2. As counsel for VetBridge, I electronically filed VetBridge's Verified Petition with the Circuit Court of Buchanan County on August 29, 2018. Exhibit A to VetBridge's Verified Petition was a copy of the July 27, 2014 Exclusive Distribution Agreement ("Agreement") between VetBridge and NewMarket Pharmaceuticals, LLC ("NewMarket").

3. Attached hereto as **Exhibit A** is a true and correct copy of a September 6, 2018 email I sent to Mark Ridall at m.ridall@aborisah.com; m.ridall@newmarketpharma.com, together with the Microsoft delivery receipt, a Microsoft notice indication that delivery to the email address m.ridall@newmarketphara.com failed, and the attachments, which included the Summons, Verified Complaint, Ex Parte Motion for a Temporary Restraining Order ("TRO"), and a Certified Copy of the Ex Parte Temporary Restraining Order the Circuit Court entered on September 5, 2018. Because NewMarket is currently seeking to place the Agreement under seal, I have included only the first page (redacting everything but the introductory paragraph), and the signature pages.

4. Attached hereto as **Exhibit B** is a true and correct copy of a September 7, 2018 letter NewMarket's counsel, Joel A. Pisano of Walsh Pizzi O'Reilly Falanga LLP, filed in the case styled *NewMarket Pharmaceuticals, LLC v. VetPharm, Inc.,* Case No. 3:17-cv-01852 (the "New Jersey Action"), with the attachments thereto, including a copy of the TRO.

5. NewMarket's counsel did not provide me with a copy of Mr. Pisano's letter (**Exhibit B**) at the time it was filed in the New Jersey Action. Nor did they contact me to advise that it was their position that the Agreement was confidential or to request that it be placed under seal. The first time NewMarket's counsel said anything to that effect was at the September 14 hearing—seven days after they first learned that the Agreement was attached as an exhibit to the Verified Petition and had been publicly filed—when Mr. Pollaro and NewMarket's local counsel, Aimee Davenport (of Stinson Leonard Street LLP) appeared in court.

6.     At the preliminary injunction hearing in the Circuit Court, because certain of the testimony to be offered during that hearing would potentially disclose "Confidential Information" under the terms of the Agreement, out of an overabundance of caution, I requested that the hearing itself be conducted in a closed courtroom, so that the parties would have the opportunity, once the transcript was available, to designate those portions they claimed were confidential under the Agreement.

7.     Following the hearing in the Circuit Court on September 14, 2018, I prepared a proposed Amended Temporary Restraining Order ("Amended TRO") at the direction of the Circuit Court, and emailed a copy of the same to NewMarket's counsel, Robert Pollaro and Aimee Davenport. Neither Mr. Pollaro nor Ms. Davenport notified me of any objections to the contents of the Amended TRO, nor did they request that the same be placed under seal.

8.     Attached hereto as **Exhibit C** is a true and correct copy of NewMarket's Notice of Motion to Seal and attachments, including the Declaration of Joel A. Pisano in Support of Motion, Proposed Findings of Fact and Conclusions of Law in Support of Motion to Seal, Statement in Lieu of Brief Pursuant to Local Civil Rule 7.1(D)(4) and [Proposed] Order (Doc. 93), filed in the New Jersey Action on September 26, 2018. According to the Docket Sheet in that action on PACER at https://ecf.njd.uscourts.gov/cgi-bin/DktRpt.pl?318976243552462-L_1_0-1 that motion was not opposed by VetPharm, Inc. ("VetPharm"), the only other party to that action.

9.     Attached hereto as **Exhibit D** is a true and correct copy of the [Proposed] Order (Doc. 97) entered by the New Jersey Court on October 30, 2018, granting NewMarket's motion to permit the Agreement to be filed under seal in that action.

10.    At the time NewMarket removed the Circuit Court action to this Court, and even as of today, NewMarket has never moved this Court to place any of those pleadings or orders under seal.  Nor has it done so in the Circuit Court; though those pleadings and orders are still accessible to the public through case.net at https://www.courts.mo.gov/casenet/base/welcome.do.

11.    Attached hereto as **Exhibit E** is a true and correct copy of an email string between Mr. Pollaro and myself (between October 19 and October 24) regarding Mr. Pollaro's request that I take steps to place the copy of the Agreement attached to VetBridge's October 19, 2018 Suggestions in Support of Motion to Schedule a Hearing on its Preliminary its Preliminary Injunction Motion ("Motion for Hearing") (Doc. 13-1) under seal, my explanation of why VetBridge did not believe the Agreement was entitled to confidential treatment, both under the Agreement's express terms and based upon NewMarket's voluntary filings and disclosures, as well as my requests that Mr. Pollaro explain the basis for his position and how my analysis was in error.

I make this declaration under penalty of perjury under the laws of the United States and the laws of the State of Missouri.

Dated: November 14, 2018

_____
Greer S. Lang

**Lang, Greer S.**

| | |
|---|---|
| **From:** | Lang, Greer S. |
| **Sent:** | Thursday, September 06, 2018 10:35 AM |
| **To:** | m.ridall@aborisah.com; m.ridall@newmarketpharma.com |
| **Cc:** | Stahl, Thomas |
| **Subject:** | VetBridge Product Development Subsidiary I (NM-OMP), LLC v. NewMarket Pharmaceuticals, LLC, Case No. 18BU-CV03640 |
| **Attachments:** | 2018-08-29_Ex Parte Motion for Temporary Restraining Order.pdf; 2018-08-29 _Summons for Personal Service Outside the State of Missouri.pdf; 2018-08-29_Verified Petition for Damages, Specific Performance & Injunctive Relief.pdf; 2018-09-04 TRO_Certified.pdf |

Mr. Ridall,

This firm represents VetBridge Product Development Subsidiary I (NM-OMP), LLC. Please see the attached, which were filed in and issued from  Circuit Court of Buchanan County, Missouri on August 29, 2018:

1. Summons,
2. Verified Petition for Damages, Specific Performance and Injunctive Relief, and
3. Corrected Ex Parte Motion for a Temporary Restraining Order.

Additionally, we are attaching the Temporary Restraining Order entered by the Court on September 5, 2018, which enjoins and restrains NewMarket Pharmaceuticals, LLC and the persons and conduct described therein.  **Please note that VetBridge's motion for a preliminary injunction, as requested in its Verified Petition, has been set for a hearing in the Circuit Court of Buchanan County, Missouri, Division 1, at 9:30 a.m. on September 14, 2018**.


**Greer S. Lang**
Partner



Lathrop Gage LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108-2618
Direct: 816.460.5511 | Mobile: 785.691.6155 | Fax: 816.292.2001
glang@lathropgage.com
lathropgage.com

This e-mail (including any attachments) may contain material that (1) is confidential and for the sole use of the intended recipient, and (2) may be protected by the attorney-client privilege, attorney work product doctrine or other legal rules. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.

**Lang, Greer S.**

| | |
|---|---|
| **From:** | Microsoft Outlook |
| **To:** | m.ridall@aborisah.com; m.ridall@newmarketpharma.com |
| **Sent:** | Thursday, September 06, 2018 10:36 AM |
| **Subject:** | Relayed: VetBridge Product Development Subsidiary I (NM-OMP), LLC v. NewMarket Pharmaceuticals, LLC, Case No. 18BU-CV03640 |

**Delivery to these recipients or groups is complete, but no delivery notification was sent by the destination server:**

m.ridall@aborisah.com (m.ridall@aborisah.com)

m.ridall@newmarketpharma.com (m.ridall@newmarketpharma.com)

Subject: VetBridge Product Development Subsidiary I (NM-OMP), LLC v. NewMarket Pharmaceuticals, LLC, Case No. 18BU-CV03640

1

**Lang, Greer S.**

| | |
|---|---|
| **From:** | postmaster@newmarketpharma.com |
| **To:** | m.ridall@newmarketpharma.com |
| **Sent:** | Thursday, September 06, 2018 10:38 AM |
| **Subject:** | Undeliverable: VetBridge Product Development Subsidiary I (NM-OMP), LLC v. NewMarket Pharmaceuticals, LLC, Case No. 18BU-CV03640 |

## Delivery has failed to these recipients or groups:

m.ridall@newmarketpharma.com

This message was rejected by the recipient email system. Please check the recipient's email address and try resending this message, or contact the recipient directly.

**Diagnostic information for administrators:**

Generating server: SN6PR05MB4816.namprd05.prod.outlook.com

m.ridall@newmarketpharma.com
Remote Server returned '< #5.1.10 smtp;550 5.1.10 RESOLVER.ADR.RecipientNotFound; Recipient m.ridall@newmarketpharma.com not found by SMTP address lookup>'

Original message headers:

```
Received: from SN4PR0501CA0128.namprd05.prod.outlook.com
 (2603:10b6:803:42::45) by SN6PR05MB4816.namprd05.prod.outlook.com
 (2603:10b6:805:9b::30) with Microsoft SMTP Server (version=TLS1_2,
 cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.1143.6; Thu, 6 Sep
 2018 15:37:42 +0000
Received: from BY2NAM01FT035.eop-nam01.prod.protection.outlook.com
 (2a01:111:f400:7e42::202) by SN4PR0501CA0128.outlook.office365.com
 (2603:10b6:803:42::45) with Microsoft SMTP Server (version=TLS1_2,
 cipher=TLS_ECDHE_RSA_WITH_AES_256_CBC_SHA384) id 15.20.1143.8 via Frontend
 Transport; Thu, 6 Sep 2018 15:37:42 +0000
Authentication-Results: spf=pass (sender IP is 67.231.157.70)
 smtp.mailfrom=lathropgage.com; newmarketpharma.com; dkim=none (message not
 signed) header.d=none;newmarketpharma.com; dmarc=bestguesspass action=none
 header.from=lathropgage.com;
Received-SPF: Pass (protection.outlook.com: domain of lathropgage.com
 designates 67.231.157.70 as permitted sender)
 receiver=protection.outlook.com; client-ip=67.231.157.70;
 helo=mx0b-000e6701.pphosted.com;
Received: from mx0b-000e6701.pphosted.com (67.231.157.70) by
 BY2NAM01FT035.mail.protection.outlook.com (10.152.69.8) with Microsoft SMTP
 Server (version=TLS1_2, cipher=TLS_ECDHE_RSA_WITH_AES_256_CBC_SHA384_P384) id
 15.20.1122.11 via Frontend Transport; Thu, 6 Sep 2018 15:37:41 +0000
Received: from pps.filterd (m0134568.ppops.net [127.0.0.1])
        by mx0b-000e6701.pphosted.com (8.16.0.22/8.16.0.22) with SMTP id w86FUY6j003522;
        Thu, 6 Sep 2018 10:35:56 -0500
```

```
Received: from lg2010.lathropgage.com (74-203-210-1.static.ctl.one [74.203.210.1] (may be
forged))
        by mx0b-000e6701.pphosted.com with ESMTP id 2maprqa94r-1;
        Thu, 06 Sep 2018 10:35:17 -0500
Received: from LG2011.LATHROPGAGE (10.100.20.11) by LG2010.lathropgage.com
 (10.100.20.10) with Microsoft SMTP Server (TLS) id 15.0.1263.5; Thu, 6 Sep
 2018 10:35:02 -0500
Received: from LG2011.LATHROPGAGE.COM ([fe80::b1f6:162:64ce:264a]) by
 LG2011.lathropgage.com ([fe80::b1f6:162:64ce:264a%12]) with mapi id
 15.00.1263.000; Thu, 6 Sep 2018 10:35:02 -0500
From: "Lang, Greer S. (LG)" <glang@lathropgage.com>
To: "m.ridall@aborisah.com" <m.ridall@aborisah.com>,
        "m.ridall@newmarketpharma.com" <m.ridall@newmarketpharma.com>
CC: "Stahl, Thomas (LG)" <tstahl@lathropgage.com>
Subject: VetBridge Product Development Subsidiary I (NM-OMP), LLC v. NewMarket
 Pharmaceuticals, LLC, Case No. 18BU-CV03640
Thread-Topic: VetBridge Product Development Subsidiary I (NM-OMP), LLC v.
 NewMarket Pharmaceuticals, LLC, Case No. 18BU-CV03640
Thread-Index: AdRF9xKN8FYNOR4ZTwakfFTVaEQy0w==
Disposition-Notification-To: "Lang, Greer S. (LG)" <glang@lathropgage.com>
Return-Receipt-To: <glang@lathropgage.com>
Date: Thu, 6 Sep 2018 15:35:01 +0000
Message-ID: <f664107ae3004589b9b4bf110278ce5a@LG2011.lathropgage.com>
Accept-Language: en-US
Content-Language: en-US
X-MS-Has-Attach: yes
X-MS-TNEF-Correlator:
x-pgma-masrq: I
x-ms-exchange-transport-fromentityheader: Hosted
x-originating-ip: [10.100.20.128]
x-exclaimer-md-config: 6e348829-c92f-4b44-bc6f-6b3419cc6e0d
x-exclaimer-md-bifurcation-instance: 0
Content-Type: text/plain
MIME-Version: 1.0
X-CFilter-Loop: LGDLP
X-Proofpoint-Virus-Version: vendor=fsecure engine=2.50.10434:,, definitions=2018-09-
06_07:,,
 signatures=0
X-Proofpoint-Spam-Details: rule=outbound_notspam policy=outbound score=0
priorityscore=1501
 malwarescore=0 suspectscore=0 phishscore=0 bulkscore=0 spamscore=0
 clxscore=1011 impostorscore=0 adultscore=0 classifier=parse_limit adjust=0
 reason=mlx scancount=1 engine=8.0.1-1807170000 definitions=main-1809060152
X-Proofpoint-SSN: Sensitivity3
Return-Path: glang@lathropgage.com
X-MS-Exchange-Organization-OriginalArrivalTime: 06 Sep 2018 15:37:41.5041
 (UTC)
X-MS-Exchange-Organization-ExpirationStartTime: 06 Sep 2018 15:37:41.9573
 (UTC)
X-MS-Exchange-Organization-ExpirationStartTimeReason: Original Submit
X-MS-Exchange-Organization-ExpirationInterval: 2:00:00:00.0000000
X-MS-Exchange-Organization-ExpirationIntervalReason: Original Submit
X-MS-Exchange-Organization-Network-Message-Id: 4d3c52b1-444a-440a-e31d-08d6140eaf1d
X-MS-Exchange-Organization-OriginalClientIPAddress: 67.231.157.70
X-MS-Exchange-Organization-OriginalServerIPAddress: 10.152.69.8
X-MS-Exchange-Organization-MessageScope: 87b401ea-4ad5-474e-8850-b094c6406730
X-MS-Exchange-Forest-MessageScope: 87b401ea-4ad5-474e-8850-b094c6406730
X-EOPAttributedMessage: 0
X-EOPTenantAttributedMessage: 8bc7e518-5044-4a13-a275-8730d9e7ef0e:0
X-MS-Exchange-Organization-TargetResourceForest: namprd05.prod.outlook.com
X-MS-Exchange-Organization-MessageDirectionality: Incoming
X-MS-Exchange-Organization-Id: 8bc7e518-5044-4a13-a275-8730d9e7ef0e
```

```
X-MS-Exchange-Organization-FFO-ServiceTag: NAM01B
X-MS-Exchange-Organization-Cross-Premises-Headers-Processed: BY2NAM01FT035.eop-
nam01.prod.protection.outlook.com
X-MS-Exchange-Organization-ConnectingIP: 67.231.157.70
X-MS-Exchange-Organization-Exchange-Diagnostics-Stage-SecureDataContainer: 0
X-MS-Exchange-Organization-Bulkv2: 1
X-MS-Exchange-Organization-IP-Bulk-Level: 1
X-MS-Exchange-Organization-BCL-Source: IPBulk
X-MS-Exchange-Organization-CyrenBCL-Standalone: 1
X-MS-Exchange-Organization-MxPointsToUs: true
X-MS-Exchange-Organization-DKIMBHOverride: Matched
X-MS-Exchange-Organization-SpoofDetection-Frontdoor-DisplayDomainName: lathropgage.com
X-MS-Exchange-Organization-VBR-Class: GrayBest
X-MS-Exchange-Organization-CompAuthRes: pass
X-MS-Exchange-Organization-CompAuthReason: 109
X-Forefront-Antispam-Report: CIP:67.231.157.70;IPV:NLI;CTRY:US;EFV:NLI;
X-MS-Exchange-Organization-Originating-Country: US
X-MS-Exchange-Organization-Scanned-By-IP-Filter: true
X-MS-Exchange-Organization-OriginalEnvelopeRecipients: m.ridall@newmarketpharma.com
X-MS-Exchange-Organization-MxRecordAlignment: 0
X-MS-Exchange-Organization-SenderRep-Score: 1
X-MS-Exchange-Organization-SenderRep-Data: IpClassLargeGrayBest_GrayBest_Good
X-MS-Exchange-Organization-RepTable-Version: 636715296000000000
X-MS-Exchange-Organization-HMATPModel-Spf: 1
X-MS-Exchange-Organization-HMATPModel-FeatureReputationValues-Spam: 145;-1;14;7;7;-
1;18;18;7;-1;-1;-1;99;-1
X-MS-Exchange-Organization-HMATPModel-FeatureReputationValues-Phish: 24;-1;0;0;0;-
1;0;0;0;-1;-1;-1;5;-1
X-MS-Exchange-Organization-HMATPModel-Recipient:
<PII:H10l(rs0hTuZOsoUGEPwwbTYNmt1ujPfwvLw3ScRuhf3VKfc=)>@newmarketpharma.com
X-Microsoft-Exchange-Diagnostics:
1;BY2NAM01FT035;1:vQNUOdFCXV3p144Waw9FVfwhzzVlvb86uPrX470/n8CO5viXYauOp8sVLZYXwBoYkcaI0lR
fZvGYzzTfo8hFtMv9RKKQfP6gFGq9cubwHVTQA7JABBCvefLg9uTqT6Ib
X-MS-Exchange-Organization-OrderedPrecisionLatencyInProgress:
LSRV=SN4PR0501CA0128.namprd05.prod.outlook.com:TOTAL-FE=0.234|SMRE-
PEN=0.204(SMRPI=0.050(SMRPI-FrontendProxyAgent=0.050));2018-09-06T15:37:42.317Z
X-MS-Exchange-Organization-RoutedUsingDagSelector:
X-MS-Exchange-Organization-MessageLatency: SRV=BY2NAM01FT035.eop-
nam01.prod.protection.outlook.com:TOTAL-FE=0.625|SMRI-PEN=0.621(SMRRC=0.180(SMRRC-
TenantAttributionAndInboundConnectorAgent=0.157
 )|SMREH=0.172(SMREH-Protocol Filter Agent=0.171))
X-MS-Exchange-Organization-MessageLatency:
SRV=SN4PR0501CA0128.namprd05.prod.outlook.com:TOTAL-FE=0.249|SMRE-
PEN=0.204(SMRPI=0.050(SMRPI-FrontendProxyAgent=0.050))
X-MS-Exchange-Forest-ArrivalHubServer: SN6PR05MB4816.namprd05.prod.outlook.com
X-MS-Exchange-Organization-AuthSource: BY2NAM01FT035.eop-
nam01.prod.protection.outlook.com
X-MS-Exchange-Organization-AuthAs: Anonymous
X-MS-Exchange-Organization-FromEntityHeader: Internet
X-MS-Exchange-Organization-TransportTrafficType: Email
X-MS-Exchange-Organization-TransportTrafficSubType:
X-MS-PublicTrafficType: Email
X-MS-Exchange-Organization-Antispam-ProtocolFilterHub-ScanContext:
ProtocolFilterHub:SmtpOnEndOfData;
X-MS-Office365-Filtering-Correlation-Id: 4d3c52b1-444a-440a-e31d-08d6140eaf1d
X-MS-Exchange-Organization-Auth-DmarcStatus: Pass
X-MS-Exchange-Organization-Originating-IPHeaderPresent: True
X-Microsoft-Antispam:
BCL:1;PCL:0;RULEID:(7020095)(4652040)(5600074)(711020)(4605076)(4608076)(49563074)(140118
0)(1414027)(71702078)(7193020);SRVR:SN6PR05MB4816;
X-Microsoft-Exchange-Diagnostics:
1;SN6PR05MB4816;3:E5bqQ6zZ72vZ7N2tsrS59W+BhtwuoXAG2qf9nUVzU1qdeZQFurJyX92sldoaOEFchQ+hZTv
```

5Ii2rcQtcW3tyJkGCzvANOp95JSV4nLZrDXgsYOF69ZQC6iUSPXnnJSNKEpfOBKYeFit+gXrwGCZHQYC/pL8kcfAf
vcxfAyizNyCh6TomSF924Ebpb0bm1w8AJ5IFxEdkFM3vtopu0Qy13qPQsh7ajTprfQf+weQ7iNFxYwkFN/fQJDP1U
bcoJmE1j9fcNxprInv93rGFfRWD8zJC5+vK7a/wd5J7gWcMAmtdOEyrPAEQc6c7RC3WrWBMSYbgxoCsnsx6ena8nh
4xLV48OiNIQRy/rpY5PymXdck=;25:0Y+zv9QVwSkC5WsJcORZoHYlG4OoAnps3Om6UGtYFF8evsvsG0HPfXBUSyp
LXE0UZTGxLDiAEoFUXrN/FSM6TmquFuuSE5SbBTRChAHbxE0kTxto19cyupLtwOOBMQCeG4X3PLvy8m6tLinvRvO9
Gd71SNHvSEf4VgCfhYS0VESoYjnwEzxYUUFxeihrSrQf+ThUnoKo7Sy4Q7cvdlPh/nrTaTyKh9JC5r+8nZs6lvkkD
ED2S4FgZB8IqvoH2TZu6uu65ROgDF8IcUEz80AZrZwJTj/MdvdDONs9bgfBgoHhDFOD1wdKGiS61khLTdQ4bKRsRi
fgSfZwkrcT8XGHsQ==
X-MS-Exchange-Organization-OriginalSize: 26012791
X-MS-Exchange-Organization-Transport-Properties: DeliveryPriority=Low
X-MS-Exchange-Organization-Prioritization: 2:FlexTransport: Deprioritize.To:
 Low
X-MS-Exchange-Organization-IncludeInSla: False:FlexTransport: Deprioritize.To:
 Low
X-MS-TrafficTypeDiagnostic: SN6PR05MB4816:
X-MS-Exchange-Organization-HygienePolicy: Premium
X-MS-Exchange-Forest-IndexAgent-0: AQOCZW4AASZIAAAPAAADH4sIAAAAAAAEAO192XIc2ZleragFBFsaW+
HwXJ3QyAogXChWFVaSNyoCIBstYjEAsi0rOhyJqgSQYlVlKbMKIBRz
ofEjeK489tgOX1jh8NhWxDhm7PHFRDRjrvwW/QJ+Bf/LOX+ezFpQIN
lEawQNhg3kctZ/+f7t5L/6L9mF815QVUde2+l0KgvlkwsvVGde0FWB
2w/c0O0NQvXaHTwLvPa5qw4Dvz1sDdS2e+l2/H4Xbqvj4WnotT0nuF
a7anF/b/lg73Cpo16+3Kqqw47rhK4KXVcNLlzlDAZO68JtV9TVhde6
UFdu4EJvHbetvJ5yevCfMBzCX2eB31VbXtAaegO15Q+DgFLP1LNh68
LpOT280htcV9QePA43PeX3VHN4PgwHqvG4ohq1+uaThXK9ulA+Hna7
fi+EmTXgr9du4J150P6hO/AGHrx15gdq2+k6525YUcd9twX3W3A7gB
tdp9dyaVS7vV8Me62Bd+mqI7fjuWcVvLxQXoE2t/wgcFsDaHTnrTp0
goGr9nxp21EnbrfvB7g6R244CByv5/XO1UHQdgN4u91u00Bg9WE+V9
BdYJYJH8NFm9KAgvWHJWyr02t6VK9UTx27/YHbPYUnlng5zIq7vV/4
Xi+kWQW6uVDtu1d7TvDGHajDCwfm3XKHA6/ldELaRnoYm++7Qejrl1
t+jyih7YatwDt16YnA9XowKb3rPX+A2+4MIgL65tf/JlRde3mAyDpe
1+vh/Dy9zH4P1jeE8f1yCENk4vCIDhPbVlEX8Nyp6/aAxAa6xQvXCX
CF4CVak5mpqKK2vUsvxLHVYQAD9fjJSk051W41vqTlVV5TmOmLwIUL
x1X10umdw8Rh+3tusFB+6QwuAr+vXgBhwRIeAvmtrK6pFwEu3bPOZb
sK1AajclWjUastlH/q9EKYyZYH4wGOPFgor6/Wa5vLjfX65kJ520MK
A4rerK9XV9dr1bW1e139MTzonwLzwI2NzbXq+uN6db2+tqb+WD133u
qnG48bVeihvlA+78AQf9Jeaz3DuKotv7tQHr1AEsBd7jpeRy16vV7Xn
2MbVdHrXmi6R6cMl1XWukQgGQEDwO5Ch53R4txfrS8DHePPMa8PDeA
PnjduDOxL6HVcNgUBgM/BvD4i4l3aRIFte34M3iL3UYoN7OQXKC4CW
kMkWyprUYSx+0HOvl1sdfAOegL3ruOduRW6pKz94g68yofqtAdAF9B
ooH2lVwdMwsmDYccOqasL8AvfSc68qCkmSeB8ebXvAJN7pkEgW+qZX
Q7wD07lyAlqcK29w4Q8Hyn2LMjNERukCUeErsBDYQGvQucahXHinsO
vtqto9U9f+kNgd+GTiOvSZlWihW/TYQjnEpwJaorbbcYGIQHrAI/BK
CDSpdvfVyec7amv3aOvV7onaOnh1dKIOnqtnr7Y+b+439/HK/snPgP
B3j4/hJkjt7d3Xu8e7B/tq/6Cq1JJS7y3zKyDzgSQG3hkIyUtY2Omy
BXjOPYP5OL1BFfod/T+1hfPf92FY+n87/1wdNo9OdtTewQkO+fnBkT
rZ2Ts8OGoe/Uwd7RyfHDV393i3X6iDo+2do+2ntfjNr/+dJcP+
HC4DKbBYDPzh+QWs/rAXuh0m3P4wCIcwIzaxZwIxcV1BHSGFL+FdIoDaL
ntIew+MGitsXgKTXb9Sze05DiLs4GI/8AS/z6K/4oQHpCQlwLShw5Z
wscEfLTGN0l6nKg8DBNFOpdXeOLQ3GngghzAycQFu/sWpEWIWjLGNY
F3fjFgrdGBUcI6qXMQhCjYh0TJOGXSLyA+gYahLfXFEDilsUGCdhU0
q2l4224YW3ypW2yegyimfcQ5yF88ZoM7UKvsvCUeVE1crPj43wce/H
gUHGhySbTFIyFg0yZ5DgIBWvd68hfwevscNrcCe9gaoqqhPxwQJOc9
+hV2sxeeuQHfgEXu+yFRw5lItSuPxcWle8l0wmttRLjeC+oYoUMIf8
COomT2n6h61d5tWJGDLqBA51cosLePdw3bwFpADyFshe580VlSgdP3
2jCLNhJ85xLv4CINQcF4CBpwjFFriyD/WSOcwrCZAoCqBrSDxEMgjF
F3wCbAm8NOC6QuUZ9RSFZjvIIqvAaw0IX9ganxQPHtRRj4Eoy3i2vF
Q8FuUf8gm4Dk7Pm95YshbCd07HWBF6xe3BA3HdGZAjSC6kM/o1XU6R
Ivq8vAAS93YF15zhVa5y6I/UsixhBJLgT4YZRSGqBZbfqfjEvUgAMR1
AOKZsOxL10kjaFTt4EuB30PehbE9Jwy9HGGb5SQehiulzSdrq6q5p+
qbz14tb72urayvlhqqkdz03cNHh6DQYSOOmFpAHzoDDUcDd+Db24AL
2KenmcP5d+X0+8DrZhnwBj7Y1viK1g91mtcbmmdify57vWWUBhUsrL
Cg+EeImnnZfesgXNRvAeJEiwF+c99Cx6G5eo5ywu4+HMKIaBdQlMIS

IkVEF4C8BsjbMPpQ8G7HewMylQi0DeQG5N4yQMYFluSGQZl3Q42uW6
BquvTqqdtzzzzCm4BM/ACAHW4+0opGPdjIuU+MfHXhEiABery6wE0n
9lS8ABOEhX/VQztKC9S2UIbfx0kDMSibqCeiOexd5IEsBKny/olgH
GgxyKdgAoHuOAMTDLPIfAO++2fERrXw94502NyBbk4EAhnSd+Y5F4i
CDUMjC0DO9nFd0LHa0cvGeOE6MzFkeKzE2WP3h4PWo7UN6hPpzc8A5
AESpUYDzjcIlTYR9aTCs0NlD1Ix7wRnY5/BY88Ubuwl2wWBOpaaSZo
RqSMzeqriEiA63BitBAn3gAGWlevjtV6/dHqysbG+oqqlR+t1B/BQt
SVauCt+sqjldWVyvrjxlNj6sLSblY2Go3K+so6vlBbxRei+7WlR/AW
qcEmiZ5IUIZqhRqFNzbWKrX6Y7vReq1Sg1ZX1uvURIOaiFrdeFTffE
SCQbd6ErW6are6UrdbfVwBkVHZXFkb2+jmoxpdWh9pVK2pLw/U4dbJ
olfHOD14sNZYbUTzHX1jXa/l+sZqZRU73HjUWOFn1Ybc26ysgMmD7W
zqe5vm3mq9slZ7rGoAsNaqfO9xchQbNZiggt/qG/x6HBaN6o2puqZe
0yu38nizUttcgwuPVmq8eapOxFFffwR/VRqPa0rVlh8l6rwJ8L/xqi
ApjBlGfJD8XzGm8XPP7bSxX1uX441LF+05ssm1nXY77R4plhn06oUf
hFrosl0WV7RLdOcEQQ+Yddc3DLfLgkxP8FWPOP14QGIdnm524cGWk9
BfcAPdCyE9VtHglUTNQHfruVruADHAYLWaiVrBzrb1awTy/Q4AOM9Z
AkOvR7rHZ+fDAK1r9g9VLHsEWvIDhPk4zlPEE4DyXMSXE/weLDA9dH
7QXtD+w8q0hgG8hwoCRTeqABLeaCWAlXI2xAXXrhLQDtpjo778fOdo
B+yonYoY6cCG5OuJHp7shPkIFlZABDHgAWrHT8juhMggYv1lLSFtCf
nApjvaKmJFeQjkyEJiRNyOWVWRnWRNZKzV6iRWhsyXwAfycNtTPXa8
X6CDQQkhbZptAvsW9Uj7CUgCw7qb2s+ksJloeaKXT0FOvGyefH50cA
iGyIvmixl0NqlnP3uiYp4pFC/JC3sH6o9Wa/XahoKJAo9+WWV5EPKd
tY3aqrKdVj7Yr5dO0LYdV8r2W0WmroqcV7B8gEaeKMsXVSP31H2lrs
Y6p9TpGQlo5Lpqag8Pi+SI/D4IFR8cbzXVYmljub65pI731mtq8Xjv
4HhJPYc+mABfgTA86HWun6htHyw0pOnd7T8CPL2MTy6vryQAAQC4HZb
9og+wlsv5DtbZara1X6D8b9B90JcJ/GrWnSq3VlqtrtVqFfwFVcnS8
5yvjzVk7+Vx98Wp7d2u3+dK4dipTXDpgQSP1ov2qQfcTtbfzEm431R
4QzZc/2znSvhUyNYHu7BGD2YSoBlcQxWe3vxQt8yPD+fjW652TZO0e7
20B5h0cH26+2TtT2zuudlweHezv7J+r41bPj3e1ddMwkOV6aQ5vDap
JMELPBj5rtNnrUgJ6PdmDAx5/vHoGken4MM9h/oenzqLm/rZ69fL0N
3e2e7KjGKlJmc/+4eQwrRatyoGmSPFLC5Y+Qrfwe+iifqP2dL/eaRz
/dOVGHnzeP9ppbO690dreaL495uEwAMhxr4dnB9vnBq+MdtQpK/otX
L3eO1TFMvrkLS/DFwfHO4edmDGtA7McnzRNAAkc7r3d3vlSf7zSP0F
ml3TzZeVKvLzeQANVP1OaTlVpzr6K2dl8DVe07iGuRtpD7nqitrfHu
CKUDHswY5K8HFHPsBpeA+NXBcAACmJ0tpBSxQWHbxZ23Lbc/wMXXbl
7VJFyzpE7GvoAug5vWrQmWBKwXYMrD3ZOt5u7Rvmq+3tl/taM3a1Wd
HAGlHOxX1P4XAIk21xuAhthnebwDtH7wXCXJXPlMe05DmixhebQ4XQ
flKxpWrCRatGdkLvikItHlGpBPlbW2r8MaRpG1/D7Z26Jdo4CVbiWE
lQRoIk/GGxwCNcW806JO+8I8faF0pZWbc+pjm0xaBEhQIYBSWamptg
NCzjlDDRfqTTQoItQ7TZ3COCqW/00DI3ibrC1+U5zOZ+jbH7skFfUL
EBu09YBC2u6ZM+wMYDgwplNYVOeNCzr3HGNGA25J0AI5vtouUGGbAz
Y0RofoBxTYv7z5f7M8E3ueJNRWxw3eqOew0Qgdd3vECQMSd0odgCXb
0iIFRopsYAQM3Gk7l2yhG/bY1W6AawIe5A7bVU5XOUPAT4H3K9cigT
46cENynrXIo8tTDc3eUaCDOSYQGHmNpn7gWrtuNvGKAAU03K6iQ2YP
9w3GTjEVsixhMWdYEpjMhDsm2DVyY5FGCUBlBWd74eCgaCBjRnkKmg
8A+IXbeqOAgpcUBiCA3si+j5iC5q5fIddP7I5hAMN+bRHHgYhjoBig
yMv3alZzVfvK7ZB5DqzHoZxhOMRI1KnfjhhkTN+0gzcvdgWDlyRgRx
ojjRYlSAR35nQRe8JqMsdgYBDeq6+paxBb6EDyKWzk9Bi+w+sgqZmc
pi3TIrKgiIYeLQpbEiS4P3B/bia5iI56ThcoYvY34BUibSA9Nvye3F
YC3OZ/Veb+NpLHt9ODWtQifAmFwtRHJzCj4cUKbuTIvTbeSg4f17BL
S3j78d76DX7tMPAodrMP+03S8wItwrNIwKpj77wX4ZWR24vHrtNZIm
tQpw6Qg/YKNCbSnNbgXa3EE2twnSQxtQh0PLiwLqtFZkklFt5P4vKK
KLxFOkOTe8vkBbDSR+cnGoCovHoshN2gql/8BWPq270Y1x50uwvmYI
gK3QezJlQxXUEeYGyNRIRucZI4r1IUhXSwPxws+2fLWuFw30s39o3i
w7RAslkGEOXz7lKnwa34OUkoERmQB4fUmFGlz12QbQar/mjc2/vAAz
sAM8be3APkghJO7E21mLgCkhd6+4n6kZkNSlqFVwHZ+gNQCmPb+dJt
99wQSK6SNBsfhY9+CnbEwbOD43+BEez+cHDNSOSjGJGNj21EHuv8K3
Flqz6uXuTPJOQCFKJJR3WdN/hU4ML29VAaWeBTqG879qrGWmqPXz2S
V4+jV82Gq+aMukinCnVx8U8FmMAVCkCPV4kAcjHMMla1B+7ZEJ2NMF
4Yu4tQmVl5/GB09wDaiKMx1aqi8S7NLrxwGBn3A7fvYCKW0wLli0ga
/TQ+ud4AMV74V/QatWE6MmsND2gtPal/E4+aCjBoak4nObUQpDTwud
kEGXHXabtPKFXnoAewGSNzbYBHVfwT5JcnV2LBPrxxhjKJglHoHHfJ

N62BEIZXLgxso/QaWIZIppwPMV/G6VXYuJgBmegF0EgxGpTukNrHGP
LlDHDRLOYg0RatnqDFC5883gYtavB4pmEjobHQ77oJ6GejO4F0+BZw
2Xshu4qelkyrZCM29LafUwQ2Ev2nsgkkbaBl9LB6OnGw4lzZRGNxur
ZxnlImFtDFC71/EZFMoQWcNmbnfRuEYN63yAAGuUKD3Irgb0XphLzw
wuvjMA/ISHzVs9ztbdUMQx8MLTZUDxIIukJRWKuJYfxlJ3r5fSYTIQ
XpiHYeiMU5N/kbLlxFw+XcogtD7lp6eRhAGZDcOx2GXg8tU274Zksn
yuw0vNu6cIJzif6OUqLuEMbvUXbAOWEKXI1zTV8mlE3r/S3Q4ypt9e
HwtOO18P1/NnRCbln/bVEA3nvmt6+r6lWfjKM+PVIBjdID67qP4u0c
ubZHiQAdfP6X1BY/aJMCrQO0ZRBby+HQmMM5CtcVQ51d5xohGWAqjP
prsKn/EsfQaCOe1UTrAt0p7lu3NRywP4d1RfItWOMbZlSZaUrRlhm5
JrlEsB067IB6KiRMh14KUSk6RRMVCmfFyWgRXjA2im++3uGP4EihZB
pDIYC8cRAThkY5cdfjmtIcEgsWEozQcAPfjB6vYPwlBIE75AQJzDJt
Y6RWnsC8OeMYMzep2yreIV+q5k0Ns2iKZsgIdcIrdGXqVAx2U4lfU5
svFbO0+i/ob5p1YjF5zECJsmH13ZssBkoPjobFwx3oZBGFxmiFlSa7
TEGQ9Rjy6AlWIuyDzi0UNbDhESrSRo9keZgLpKX14DiX5mOQz2TK0Y
iTSKeDHQwuHArwk0e2hzKa98OJ/LSU3Md+V70eY6WuFlr+ahw3blWV
6EJwpT/stKV/mGO3P8CkAEo4YkKm9DhkSgqSetpLy5mZ2LV46ZkSpr
mUq+qDc4aXPiBh+KcuaB0MZ3QGv4IOUPUhjFqpNTBcufYYdNTxIHBd
aAWW6Qs/dPsXFE/BcMrGbfON8aapd5HOVtWhN2g5Hqx9E9Z16Joo5y
ompPQGqN2hYfUFMAkIb45S3JC5bP+fJDG/3jnafb67s60Od052JX15
u7nXfLFzDJ0e7mzB/S24fQQ39pr7WzuYYrr/xav9rZPd1zvqaOfl7s
5z2I69nWNY+S/vIL0ZZRsq/pZDthTqIU5/MZGBGZKME0nFnHph8gTd
c/w9lOZq+ITyvXdhvvXq2Ol6hDJ1WlfHc069Dmle4BpCIcG50yOJRu
kCb3XySJR7DPpI8ttGolycZE0T7gP6IRUbmQWCtjp+iwHhwKJcJaRb
idOu4U2k4E3y+I9L0f5W5rXtwmUHc+RuO6/JTFKzzCXjZ6YVs1awNJ
DjiU4Ayca2cK+GoAZcoyuSpOD0ycyEd6vq3b/9+q+//j/f/Pq33/z6
f/+/v/iTb379p9/8+j9+8+v/v/BFe+/lu49ddf/0a9+zO4wI/9Z/XuL9
W7f//1f6U3/uzrv4Wn6R+6/h/n/wiOt38G32h0vfv/737z7/f7777Z/0/3
3Z//UQ2Ye+/7+NBNYy+nYxxz+yf/xtd/fb/6/w/cnxdc
ReRzyJWeNzyJWeNz8/9
9+9xf/vqtt+

xvF40yKY7Rh1kowK1Fippt6Ju6qU//tXKI/rDUt6x+XyEUl99T4F82
Pr4cm0nlIP/3N8eBKN3qYiPl76q8OJcS7HVb5d2fzd6sK1b7Ns/75q
f0zVvnrPsv0pVftTivbvsGZ/pGTfqthf/Dwy6JRdus/2TaATKMJRW2
9cSX9VPZ5qCsVNn8i8oSgDWzhkEWtTpHNtT9x92yfxpQVKe4xRfyMa
mFUsJLtMalvOlKUm+uiTxQQn7TPwTwe6VBp0IgBup8OZURhSlGS2jV
4+m7Mpltzcbp1jghCEfbyOlk1k6k2wQyqRv/+52yYH/XPfZ9HIvekU
GFaStPzY6XPd5xaXn2vz1ADGPe1No0e3Xu/Ro9axiThJiRwpKnMGne
hR4TIgR1hjcsRxhMEhd1FbR6iMYxRrw10ngNkecBw4WpCtowN2HMCI
iDcqarfXqpo4P12iEU2AiZwzXK9Vla4InWp827a2FXuiAxwx5yX0AB
9yRIgjN2a/z4a9CCyTRgf+7GtU4YRvrOAaUqy23BMRBjWqGWMIliFM
6eghdDVbRDD4xjhYRJXYUzQiQ6NW2g/RBCwObLhJftL6l0yZTXf86+
PO4q5j1usgKm33L0ahOWtQ77nL7mD/tOOda5MvCsPFAy2U8oSJZPh2
3McDCH9IYSumLx2HTFiu49yX1sCEd7UZizTlXI8bB53agTtHAYF9tP
3x4M/GCj151yqxmbbZtxQNYLw3qoHaELiKcj3CPuZNtH2KMvgM4IDw
cOhgLzJbxBlOQnFcY2s7jHm1HTrsgH1KZ6QLBr5ZfS3zmH8IvGnWk7
xb6lnOmJvCiMwRSO2RoBYeMLQ/gVuRCD6Azp+SsLBPHI3OIpyBvmD5
V6qqiQEoraf0UN962CBSDdY7j7hUb9VJJcEH4TDE9dKbo403V58FR7
c4o9Thk1Lb5rjBWTC4q40wUbexI2WGBoVw3q6lZNF2R0IK3sRNQMlb
xWJOfWSjf+6beer0jEF0VCnlYXY60+RXlMrZY/f/mRc7U/qKch2p8B
j0Ga6TENPEEBBp+SneS7LKSFhocGQlc2DQFEmH19VK+NDbg01JjoZy
aMp2DWQ6ZccUN8u+ac6zVz/arBv5AiS2akWn+zNAOg5qUilsW2e+U7
yWY/d6eNGZAnQ+5ujOy37jyLAMvmV0lk3+IIGadFhsr60Bch8T7Skv
FbruYnKdqLsoQky747d0D+jfxTOXrxyPCtat44M+91FAsMHXOiQZnU
zgWhEvWqUz51L702dMQfR7EnPWTG0f+fmEHP5x+cs+0Bm585Mx591q
/Y0ZhcOMQYdPKyZElcwgKp6Sq/UwcIUGtdvWokpznqopMLsA2w7/xO
gXduVfERdz+QM02EpS2MysDi+3+UiWlo+nZMXz47Rr2MUC6xYe+cUn
Y3BigDls3mSwOfZ5w20XHXS/wMx3rRYxwSPScC08Sb2LiqqFBRKagS
ZkbdTXCUQRauvo+Dk6jc+4DpbfTPCeLRNxKa0c4LbfHyQORuOWsbaM
mSN2HNfXf/X1X6m6WFAI2ah0epbD0Oob95b4JEscLO0PtrITRtL7WM
TGiL3BgN3koorIvNCgVCsU2CF0M+sIFULiMOnf5fAXw96fx5zRfG4c
p1d9pctqDeb9udDIV2NiF14Xc20Ybhr7hlYn5lg+I/HU9Slfhgw MHI
L1BI406odKi+qPq+rZR7ZXxpr94Yhvn16lz3mYYitt/JP7WhJGbf6m
8j4txS3rDdkwZs9J+qJJxI1ZgsYE5E+JaAWZJP14zp1ZTaIUPkTLxb
ShXtvnk/0jd4vnhpNoLMGyUwybuzbON4EIJnLCGD+EUKoDXDdIaG8E
p0Fbp7lGpy2R1BkXgIMNGAZjPwMitERbx+cikuTUYhNVM1XTU/qejM
58Y4HEnZb9co6j1xqjDBIYuFGnM18EjKeYENrsB15HfydlPa6CzPdH
EhmMhs897WxwEDOQ/V2hKBflfOBC9VoUF9JoBE8BSH4JhT5TgUZin8
fWAHxOHmX+FoWB8OiHA/aEmTvt8MJ1B+HocNoj6dg2C9IU9IwqxoEC
eIlMDT3FSkzexZZN7721xBzOjfYA5hinFOI+ICB9DoxxO2hpBiwez2
izM5zsjGVs29SWxtITvIj945nHN6bzoBAgSovvBo9Oe4V0NNrho1+v
GPTDjcBHa9d5G0s4cCwf8SVDUVzWC9gt20CzoGbcfKxHHlQGwTa5jR
qRMmtvYB0GGl8CnCO0gWtb7KS1U+27ZJ8HMBp0v15vVGobtWp9jeXx
la4plMwPlpmUFcFiMpp8TFrqD/ecdfiTSHhyCEIFM2KgcO0AiXwt8S
Cv8i3e3IOdqG+MsiZ+74KktnV2OcvgM488WwY3Xnqh1G8M4gUbca82
Lp/5plHEz1oE6kEm8+zG0l6ClAk+s8s3QmLa0JEWogXjADLgJauws0
WWjy1IbQ0YrYDZ6ngWvsv5sX08jKixWp3VbQhENX5xmD+NZKT1qej6
8Qk+P4eyeyPijZQGd8sKJeZitDtjMNdYm4rKsaVTl7L/rRnyfCYLnh
F5N1WpJFUJ7TWydGTfmDMR7lbhP9b5FZSIJ7aZSeXCeWgLTKyiKb6o
hAserSYLICJ9GjxlF8f455yjYSyN9zOT4xXVi6FdZUy9cv3/kDP9pX
+glvXvrg+usTHdB4ePkx/O7Zkap98PV9wUXxyC16iwc8RMYf9Mf4x/
ZvnePwObOu6o4CWFxbnPLXfMp/PHYLXEzpF6YxuOk8aJNgNgX1SwyI6
FhfTUJIJKRffzdJJdHycfrJIrQ9NeVTAIa8b98M+nGyA9+Fg57t/rT
OrB3nTArY9G565ljS+aLXwlbClPn1FWASLBnimJNGpn+k/R9D4sQWW
Scg8S488BxvaZWapaspkElgJY+9t9GNZy1+11ORx3NDR35rJKVkzyS
WE2dWZm38cQKi+zjxB7731fsECZzrk/Aau6aThbg2ZvzHEYGOFsOuF
r0qm5VP1jyncr9lrwb6/shPNrfgSTvpaqKfx42iT4Hds19Y/FsqTJG
NIZJyRj7Hhy6fSnnNvocHCfqoFFpHsIvbIaiz8eRynS5dCt5tFK/LX
SLV9Wa5A5jJ0VuPBOVijtzOK4UuBR5I1L3OwbsTkrgMfcnZTIkLMKe
ruZvVwx18eE95FMHQtQlTgaj+x2q4TmLAWoctOlXZo8zgUH2ipmyIx
FGXeeNqeXqdrFA2Ol4v3KnpxLfnB6MCnv0641WBk/CkyO+xBBQG4+V
U77p+CeTp4mzTabqc30a0AqevCdKFPijA9ABUBsQ1s9vCIPYD4dqyx
mAPO8ZHKqOgdV04rv5yvExbLSXxKk4ODwh0618NWVdp8VsZlhWwz8G
7

DlJJStuNzmmjAxZ7ofG2jiyXLqLl1wcxvMpOGXEUVtoC4Cc3dsaqvj6
H+EdKPU8JXlUQwxaZ5Q1swUh04t3RaMqCyqJWcLBMZ75xJeooHAVOB
Lp6gxbpPC5zJUThLhsfEREXOLYEmer51TJgDD76lEv9g2CNtrWEJ2y
Aw8YlqrfZPmPPBLqOTLBZ1QKQC3EbnkHWHcUUs+LWifiiv/VDLByrj
pIPHuKABdJCioNyQvE52CEYC6bgBU2UEDYPP2dBVFKjotU/Udhga6G
QeA+WEf7WHJJATjwLxn4Ih0mYchw8yqVOY0iNLl6w08zEO4//SF4lF
wA4l3scjDMiIx9PUYA3pC8s+eVy1Qwj08rmHhtapx+e+UrkIueN0y0
sa4JGLQTbO3jBO5aLDLQkNxcQz6VWMafq8XmQXk/GI2QVhJNBsIo3L
KyBQ+yZ5dE85lQxIvqoWLak7ABOrvgJ2J5Yy4sccGmzbgQLFb1KNCd
iRsy70fLv6NV5oHlOl4xWVFYs2njY5Ypq4PIx54MMnVE+K0z6UwwjJ
hdHCsiFq4IeWesCqneCHahFDFbpqD7icj8Gur7SX+bwD/GlNzrliQI
MEtmNqh5sMreqPV1bZZ9c1JEAfTMH0Zj1BDZHliGS0t9kbRCJnZGCo
mH5oIrXwVmACywSsKEJujplKKsMWpVlGX/6kp/k2OqL4PA+iFokWc0
mT30POpwgRg5swlF+SoO8ATKp/qhDIRqi1xgImivle+oTz+sBEgZlM
q+OEmmhaAN4pNDzwW2/wNToSQpJU4Yk71iqNGJP00LtBJb6WMw+mSH
aF2zHnlcOweWmAz54q4iZYLy6UNUdB8UeUw8iwJFKl77HzV3ooD0IS
N3FfIoMAly9WY+9rH5CwbOy8VVwBstLKCsUmD2BgGMCvl/hUidiZV+
RzYq898uT+wcnu1g6e1fgS/rt/vKOOdl98fnKMRzo2sXzlsHmCn+Jq
Hh7CA006OuzgKLphqmPZ6qkeV02pFJlNkonGx7tTCcGr48OTAzmZQA
6xx9KqtdoKDHetXq+oncMmjGEbD+87Wamt1+t4kUwWthtct6NqKyuP
V2COzwM8wK3WaKwvwz+b5AZg4YmfNTe6+MoPAD2NHCcVxIzVpGUCon
AlHu/FmNK6CSnZEUWdpx7JP5NOcOYFYPfw2aYmKEOJBChcAlA4sPfi
PKJoitpENjNCIvI9ej0778JXTRD2WPnHlS2f04km0SGJfFevtBzcN/
lEwKcTR8cOAp2Eb1kIUh84NTFbBvo0Ck/esARj/QmJpKcp3Tl4Shem
OSIwuMTjBJ1Qzj084+MNAHCIemPmWSNHYeDqQzbigUSslNHfb9iIqT
wdI7SCXdb8uPh1oGfE59aYcAioX2+LxSOrFXUa+G+wZ/nql1kdQVac
nWJlKUZwc6YsSf7Ez3nHP0Xs4oReDIhaHqWY/4LsTp0Uc+n5HUlJiH
NSwoickEK/sq5P005G8k7JZ5083GSs28uuz5hGedERZjfZgjcnzH9s
Y3CKLThlSnzYgD4+epoWia/iWH0S35aN5HfcI+pj9rdTld5fBoxEuK
NujAAwndwkAO4YOax8TAlESNje2jGm7ViHPqXhtKes5G2lCZDCpuVC
+xQ0IRkN708LH3srvLPIwGz7PdLcFGbq+dbUQ8kS1xKPkD65IxliRc
gIQU+M9n+3FQLlheDCTPDcRj5bHVSyQ2UxIZYoxWKzIT72G6NaZNDD
gMAAbwP9Pk7mnU7WR8abNttiGTodT43WYVg0mmHP++XQTRy/hgaaWT
J06rTdXw45mRcIFD/wgPHjqlqtzVZoRgGWEUmRlJF2Qps5WW/css+a
3uBEIXxkABMeto5WrURxgqgVE4q/9zZ/J73Nd6xPV+/E3R0dhdS89/
7ee39/H7y/oFluHST9dPltq437GtNEYtvYzLaxanc8PBpVxXd96FJ9
7R4MfLfBwL0uvtfF97r4W9fFT9WJnet+53J5nTKXm0DjVO4wLlryHc
tixny9AQlnciIzfnpM7b5WiycuUrGDCZGH2HaXM/d+jNFk/r4qSEv5
SssR9b6kVldiec6vP1ma82rjFmnOq6vkMIilJ/hB2jl1QpN8OXKu3P
jofPwwGgedEKcmbsTOLy5DY62ASY6DyR/2MRkGY3wNUdQkqX5v9DWM
wTfjCvee3EOOe8jxnYMcdyzvN+4xzz3m+fT+h7WqejGmVIPzvTFYGb
B6TGRCT/i2gtEd31rKAsqHcZ3cYcoCneJOCfEVDFZxjIqiMuOPtxsb
9bhNTH9clMkugtGfP5s58IQPj6wXhU9IUz61lSNiUhsg2HvAqfeUzs
ThMjk36pPFxsaU3EQLB0M0ECBWgzTD0X9ODG73QZhc8NHrio9bgH0n
4aBhrYeJen0Btp4+k65vwC2ltf3C9+TwqwmHnfc7bvuclAFA1iEeBU
N/WCVxdqkbVa0gNOF0vlhJHOfAJQuLkKKjoriocsTr6ULwmQno0aTS
o5F43Iy1SJPLpjw6twHATOjjx0LZ53jHyntzdJ7cImOKUojEZgDQsD
qJsyxQ4OvDGEytftygoI958VeCQJ6vJyOuMWo1H38LwOwJ6NM+Fy7u
k4uUeHrNSXJOS2fSxr7WRu5cIllUcB39PXWwPnRAWD5aqA8qJkPx6I
Bbig6P1UkxnI039mwo3HkSLVJnZbJZTZQdALEp6h92jEWLnwWc0GL8
pIhYpgWZR/qgDll6YB2UNU0xmbJCNXJe3bgTsqRgqIUfkA4H15lYpe
tYv/NlNXHuc4VSMlee1DeWtl4v1+qba43lvebx8sKxz9TigKv25ESt
l7IznHcY7V9ffwbU5BNqqqhUrrFtb9Ic7IK26IPAciDcmM7ss6rHoQ
Q60IAOPMGMcURcEbL90WN9AlviKCkzmis/eEOKX6gpGV4nlHUDXVnH
YwDTYhawsj5SMUJcScaOKuQ4m5ThL2VeTzrjODSzxlyEtiE3zKl/mq
h54/H1XYclKrkw2roF/sj8gM9hIxxKB5bTt+LwYx5IvMNedA4WEIN8
zdIJAnQpUKaMlSecKGPWHGCxiz5dOGIUKkPEw+NO3TPetwSZa+QxkP
RN8+YgVoY3/pjHafzmo3gcPabYPoUOKSpCthtVdezhSyPLGz+FzNNf
skS9iXVWwRAlKZ4Yr0PfRUin50efWzJk7fRmSny8UTHeDnIwpc+83a
SFzL56JMOp1EPvwljwQXAAvWWJz9HeLRqFjd2sqj2gPcTmcY9fi+Vb
Rx8rmtBhF+acLD63mbdFHwRlHddE2V1c7iEHVSSUHux5u2MCpkTe3p
izpolN7hiXPI7y3mJcug3ruIlh2iO/9aZCK/Ea9mv50HzKFacj3yWg

enn7ezQesUIHpDsWatNnVt344e1P6QO+pnoIECeKNHIPtfAD3omtaf
uopf1BVBJ45uGZKR65nvFLufp4pgC/X0wwxtB6BbYbrKgOJsBZkkbO
Q48dbs78ngQE4ySTndU3OQEYZOU4OnbwNxirb5IzJNTK5x8Me296/l
XPiF8itVDq+VEUG+sIm6AXv7Os+Dg6G/Y0dPUhN47YQTErKGEDKfMZ
drTtbHRrPuVoHz6FdVlDOs0hOnSTJGtAZ5+SjDTniE7+yP3oYdB3m4
4Yffw5mmucFSbmJVYibylgl5tzAKfYDzogwTrilNXGCj0mhgUauFbq
Itg26IGycj7wO9IMKyvm/NxpNq0bWbTGnI1sWWPHuhOsWDFhJ9ivkf
l6g2Ke3WiN1XhZZ2+8XzXGeJ5kzykekbamT/kkip7ABmdx6+x9vQ9y
Nprz++yMGOtyAIh/hcZxyFvvE/LGz1Xjrt jDIXXkJr/CQQVH15H+Hf
koHGAGVASIOnmDAGAM8dt8Hlc92l+C5q/cynvicr9beNGo2QfIEe1Y
PmLzwfgEAXeQsZFcqQI2CqxJ9cKpE2BeFofGBrcKEk7z7HoTPEvTA4
OjJ5p+nMhgOD40+J0qfrpdaFCWFORXneVXf3ja4a+0sVym/QcN47Qv
USu1Nb8g58ScMknW4VBH0nUO/TTiR0nu+VV1VFVb3iVcr6rHjWqtAS
rShhI6KUAbfqIU5avuGreITGQhhWQRXhgFeeGi78x9S6azK6dVcshE
V7qyNm27Z64xKThaYGZhHUk8pU/DQp453cYczJn4SBLABL+PfnhAFg
MS/h6LTOwKvw7ojEKz0e4qf8+0doV/AbOE98FYbGA3Xk/eD051AeJa
me3rAZ8wIXdt9XcxIZc/45M4AHwcq9KKHB3jra9/s9ZYr9bWajod5d
tJ5x2TQESJKRNxVGUCkDKHStksNWkUNIjkwap0YiAV5qMKgNadc/6N
zv/HUs1zfQaH+UIt/m5Iioel7XDX+viwfWIcacA7xgt1oshLV/sBBn
REGfof0csSO5W/W7nHohZISaQmst33MTIDWzdmBrY/RWbgF6+0fqa2
d/aa+9tq62BvR+0ffPkRpBF99Y9tc07kw09rh65298VElf4aH8Xo8B
hpCtoDQbqkLegLu3SUN1yHmVTpo8PtJ6o5PMdp4lEX+DHZKjrNokaj
M90x8+Zl8+Tzo4ND9WPlovliB8Z3qJ797Il6AfI9UMdV9dIBaoj/tX
eg/mi1Vq9tKJg/aPkvq0wfId9Z26itqsbK6hp9Pb6tngFIcC+BKCqw
KPhhwkajVlM/BU6A/dkiaLCHZzcOA0+tr9Zrm8uN9fomCCi/5z5Rm/
XlagMkcQNDMM+dt7ErdXXegRH9BIgW1rKP1bJVwGnqlKIt4cj1pqE8
glbRVt6tBPp97l3tvKVzJFXz93kV7nu/7/2+9/ve73u/7/2+9/ve73
v/aPgylcmkcnOpUi6Vh59yar6UKhdSxfnUA/g9ncpm0qm5VDabmsum
8nOpQjaVg59iqpxPzcHz8G3G07OILBfgTXuQrxVRpLlWEf+H3uXTqM/
hJFaCjXLqQTqXSqVwhXeZf4Bn4gRYK9Av0C79D1/B6Np3nZ2BI0A60
zANIpzJwBZ7Mp4oPUg95AHCF/6XrczASvs7jKaVT34efFHSazaXm+A
F+Hn4+S32f50XDKPK/tA51nhf8QLPSOy3OA2yWBpbVs8ABwJPcDjwm
YxhZlnIxXaKpwfJCIyluBy79Afzg79BOAV7h0cLKQAvYchpGkuJlxw
fSc/TnHA2ykEnDZFOwZGW5noaFTWXTOf6XLhbHXSxk03MjF+egqR+k
5mhH8vO4g/hLDsmgyKs9n1rg2cG8cuk5PaNU9gFd5x9eEFmlUmrebG
uWr8MVfRe7gPUpwJUiEWTBkFCetixP6y90Bb0gdSFdZYFg4GH4KVNr
8ABvkAxDeofnaYs1MZt/yxN3CvsqTWEKGn/OUBH8qWDkGepdKFbIku
ltQlNwd0GGUSCm4JnyanCDpXQZdx1pA2k7a/61mAIn0Ee0x73TxIXO
53jBS9bqwVtwF9aTn+eV5GaZMaH1BFjBMeCG8sOGTeDdBR4n/JlGeY
INjvD1Q2LqE1l/AI3wK2Xcaxj2AowKeJkZgTmLf+dGeJxyF0idSYiX
kSUSbTlczzIZMHmUqS+hQ6ZbJpI5WhYaVQF6gd5h+4R0NfGkgTdzLC
7kYdqafFqLnf156oi7o3mVuSkzsHlqLfcw9VkeKWo+IQ+LqVSRVxje
NWJhnugH+uKxFWioIp3gInWRYx5cSH22gKz6KAYwhyIR24chPaRleQ
APwJML9AD8K3PMkQyXbWJa4h/ui9c/Y1iV58vXmU24R9nKPI62zA/D
L7zm/CS2mU49oJ2yt5LYocS/8wYxqXNfccKbE5LmZ4gU55nL+BUhBu
4XFmde8xQ+KRI+Q79g+yQHgGjhX1nzjFFneS3TMiClM6kU/DuXSuED
KGNTZZ7+yDOFVKpAciyS7fbzPNrYFRxDOT0/pZ1yKoVE+8HtzD6ekl
bQGa3fmVDTJW6T1VDssVh3xRmW6AOeMUMasx2pPDAaU7jm6/QCNkiq
dkrLiWcibQiUFmtfCwrDnvOT+BoEBAtq4R3gjrJRdmUtFhLCyqhC0v
gicJiYjeRBurXbEeJnccFtlgwbssZkMcXigm8ZzTLPz5t9L7JsZ8YU
YCMsnEfxssAsPEcQxYytaPOXcL20MFXx5ajNkogLxpYycVulsaqiiT
ywlFreBnui8ljnstotoqAoxfYIpegCCSIYc9kAlZzBXUXzi0FW1FSa
RYTGWnOCx1AQmT9JeswVWVNHeAzkSWEEZSGoG71oQS+Ayql/ROtGQk
yj3Ju0CdEzUCDTsxb1EVrQQjud48fKyAJ5pnyDS7WGzaHQBiRWgtnR
dAoj/xaRodIlZquc2QJDxiWBUgZZlRknsIydI93HXTDSziMCRLU1hW
DgItMMDoz2NxfDxvnEXsgOMlTjxhn2k3IvaRWWnieWj3QW4ijzLvMX
Q3EYTJF/NCDJkywCm4XXLcOcmDNgEviO+YJZ2+aRI1kZ2uSJLsJ48t
Eg00VulhazIIqpQJtIwyvwxDPUhWWp1QRI8OKwWOClFuVeNGpXhsSP
MfeJthUmZcyQlYs5L9yn8Um6wOKUexTxoq0YmpcQCckfPQzpiHGUoE
oZG7fPPyzejeD6SvqaT30m0JF/YXrDdoyRwkqERy4j5F9E7LAMFBFn
plYUM6dItJdJ/TiT+sO51B+aPcryikk71Dhjqjmi5IwgHG7TviI7Qg
u7wCOf5XkzGC2lrUYA5CwKQQrvMD3oLdBSIps3zGV2ilt4KGiQjN+F

2WbxKJdayeOo2tT1z2mXlVzqH+exqX9IrPH9XOqXsr8FY7PIrtGfKF
JYXeYNAqRN/4Ns6gf51B/kCL9lNG1He2dzMTdFbc7f+ABTBaHZ5GM8
WWtny5oaCdmapuwWNJvkUUSjmJpLbZUMOuWJ0xb/IKudBj+gP3+cx3
/Zn8BK5welhKhHxZIhZVQkGDZ/dwI/L6KAfy8bUGEDEmbzKbemUxST
q7X7eRbjNp2bpooiSbKWxURLrW3JfCSWH/C+c5s2bditSSNZbXMhB8
W7K4jrwPi4skQDun3WOBnL4hb/A4smgihlJpvRpbANHF5DEWuTnmT9
mJAJrCNYOkULy5RghL/MMS4EZCJjhlc0FlyeWDjDFjbeGSth79ok4
FFqDYDE8uSNQ60GZcFHT7pBWmW7D7tgQGkxDYgyy6+LhenNMtkWTAe
GJ5CPrqVHID8bqRuPmswOcMGWUB7N8WOFuh7qwXkpvLIs3Niw7JdTz
K/WDLGxcgzeVvn8sO2uBPvro0T5OGcJRsZp9kPZI3Rwe7ZsV0L+ZWM
oi8bjGQ/I0pBYEZmBpXNcpXaKSTatJ+UMYi7jGfHFhaLTbFrSBSXZE
+ZWmSVSLbzMAokYQo2Q9kaxKIuPQWZHbtQWLgJWstFnk8WmNoxWIqc
lhEYE1f59PWxF8cGXSIKxGlmX0l40kQQaSI0gxQRXbSMUKElIS0BLS
Nwcbozdm6KM5YReyFdZDRuBF2OYHyWYXzCYctmbyEGsIs2wCbUVzDv
/lPB2OPcm9oivq2bN2sALS8myz3jrY28sloiGZwp2y2iUgx/XlibHw
XYy/bJ2pIzhFxb6aJ2gxCu4HUrpkus+r+NTseteTa+5gXukQlJwkzj
AKfGFQlBZHc6IpNLaTbQycxJEwhZJGwcj/M69iNghv+tnMk6bjEHGMt
tqkyRdIIykd0oiWRkTfmJC5YdL6TIve9rygloO9nICkzDFyt0MOZ+F
SCRkwLYbKxTWR+JNYs+nOMNFlI3uGo9E5Lb4H2yRQu6dmHOVqaJozG
rbk89TYL4QEQF/sq9DFB8PMm98IDAG4SzxACcGAC1/lvqeYaUi05ho
LtvW5gZllWR5ZYLww00JOdlrIvY16z6ZlOiyiJy0X8loH0iJ0U7GmO
d5y1WYIABZIiMMx/TCW8lTji9OSUS30IaQqyGngrxVMDGIBAyIzO0Y
beeEMFgmiJM/8pVBjwax2JadIYBSAmlnj0+xYIgngUvFiJiFefktkU
s896zxH8rseGoct5IVEGIomGCx4BwKlGuMJ4FI3mi+yz5P/vMztHN1
POiz9PdN44noRoHGE5NsRiDnSAzOE6c/ZNag0S4I246E5B4IBKLJYh
xE4rbi4DVRszEhM6HD7Lh4mYlATYmXlSRYxr2b0EwMfIpgF4eeyGd2
7vFSJASUyBMxIXmjRRKSUOU4SAShSyY0nDXWjbB2lnwgFGTRZg73JS
qeZREJ7ZKtBLOGs3hl2OcsjEZCCVVb2dg1OSQS6AK24Ht27LJEICGx
CzbW+uBdKGd0sPJBxgQridJm4iB7qFny4BkilyhUsOhC6qHxNApiz0
8PdoyNsWajkEdZVJsJfOSytwt8PMiOC3xwDJf5RcSRcIcZdj5BPxKn
JlEJsq4oMMBQVD5nQqgUXCvSaB/E3Avp1DzR1RCVWKPsIJWubRGUoY
2gyd4uHPww9blvIRC8ICaGYZn3CATrVc1MDgSLujeKRgK+mgyyBkXk
YwHfyO6wxvxgbBR4Ri7IfYRgcf73JFg8NjI7N2u8eOwqfcAzHz9enJ
8cL84lVkxUW8b4pjTkM6DIljDz6Qe8fUy0suYyPEunP4iLqflR2uZX
yhrta0koRgpTNVMvGLA5Q/O2vWbLLvEHwr/fS/2DrBkYKYJ5DsyxEs
yTKGCHFdsgfIXQF4ggFg6FonF66GZlFF47WrWONnpZYHDWslLEUmUN
GhctIL5okflsaRoh/3DUZskay13kFT+woEFXeZZmZxIm7Ic3nYodwQ
FrWXlmGdlx+UWsqgjjpXOa6w3klvGzgNWBSJ0GWcpol5buRYYRAaH0
Ax6hccJom0gjZKOA4q6JyFUulpfskblBcyYtTWIHRr/fvLxGp0Tu1m
jROAhCD7CUzhqDMWN8y8lXiFyzlu7zmIn2SqMMJWaUMJHwJlxZMFpY
5ivWpUQqs/EkJXvueZP2YPvZJK9M3spYPrdMFMQsSMsPTQDUfpJF+n
wKtN2C2dmSLXkEVMuu2TaObcvbSy0szyss47cis0VufLJDTFv38lYC
mVvesCgkLYyQJTOTN3dky7K33bIZkcDYnY2D5PfZWZH5I5tb5Dka+R
xtHMtkA7/nJCXS2rj5dNwBS4g0nzYR+WwcS+dN+k3WRMpIAH7GQkDM
eWG0rEkDtgMZtvE7ZlI3RXrjk+JftSzcTCKnyNy6Q/0o+zVJJ4qOGF
V8AoYT2k26yJl3DYrOceazPDNPfMFUbUNoo4nmJHd6TodHc9q5bXj8
djKfXEx2BgI/KbZwxuRUsEAW3++8hRBsqc7LK+1Is3Zsw14icf0JR9
xKmcrClkYsDsYSpoucOGAN+HnAwxY+tUdV0MlXuQcWnSfUDfeS1/4c
nbcvgEGmzMPmQAZI6YQyyus4SIQH8pRuJwRpi2hi3pIslxhfWROelv
UUzyE3aPxFjAr0poBmFz9SHGPMW64PHVjnAWeMR458fTr8zV08JDNT
xFRCBzGlGSKctzNYZADMqvMmaL6QfriQgoV9aFOj7I5IrYLVAvKsJa
bsBBgxObUpqpM3NHfYkTVxWSccVoITGJzIagj7JJZXHIOiiQpmEzMm
AijTEWph4hExOIq45qxUmayOdESxRf26hXmkfXlFhJItY7NxMGbRTN
mmsWzkKomWVChtdk0qOqJoaj3I+VywqVl2BCwvAbpCyUwMtuyKq8Wc
iPG0WVUhJOHijw6HhAE/DSiylK8GRUKuhukWIhTB5QZ3BCTYtSVANF
JD3wJ4yBrDjfeFZc7D1PfK2pun3eaiRpmG46ZTft5S97axkxDgHISS
AjT274mAYqfoLHxh3AvaQyjylnZH10x9RCekXWwiUEoaFBPJwKSIL7
LGScuvc0RYII14ZbNxtzBH6j/QJ2wkVSH7EVzBD+yoihWNlZRTMlE/
kd48VKEHa75FiwBGdt/o91FRkzWGagJHMaS0nQBssMh8bUuZRXcijU
dicEY5zjNuFN4smfga/8ku4oTrO+5ElepDPBW2pstbRTplg2ZhwTng
mB3neFnAMiVd95c10gAACYm1ojUwKarKJ4ShDIyBN/u3iaJ4r+dFC5
RR28/AgPHpCHgwnqIFloo2Nwn90/I+sNeK0Y61a2KSlMkC/axgcsO4

TW6Hf3AkutxGUokK7KE1i8ZSEUWf5DOzYBetF3eVl3JWHjiPn4OR3j
XhXL7ISNUIPQ2HJCJgWLgkL2ZNintG52Po6LNMp2woULShGMhcpUXb
p3FIkRGgRviUIGGZUbapMspHFuVrbUK3inkTxZMdMfI8T5GLomhbxo
d5k9LPckn+TEA7e5t4g3I6B68gFELznWOtKvJKtmnOpD7mTSMFK8FM
YHxClOdMXJ5jl6I7bPksAFX2hRecG5yNI/SWFS3garD6Q9qOPHt6C0
ZCCjktGK9dNp60LzBpzgLqwEXfgx9itJyeJqeyyG7qJB/eAonFZHSu
eF6KaCwHILRg0jjTOYprzDNflI3uy5kKDl05gguRl/JqG9Vk4r5EzS
8Gb2Qsy2KeNKwYg3Y4j9Z/TuSM3lyTvJ2w+IxqLpLLvcxGh7EUSnYj
RRO8yxikZysIseDsTm2Wt9Mb5C0mRe6RI79FA3clXM7G70P4IT9Gzi
TplWLlnFEUWzJy5wxgsJ+UIL7lUiuJHGbTQIDKXNwUYptRoKAgc6Z2
lo824MlZ2kT64iGJzlpAh+rsOqsQ11mRN0Mwj3AEE1Ikx8xoeRYCh6
ZsqK18bQNtdE9nVHw3bD2F4G2FaEPlrOWEyUh0bJSeDbMw+JxtpoVE
4+9DtyYDJGdQa8JAExdQltgUtgn/0elWNCOHG4zVP1+2JC0zqSwydy
pmO9OPIDEhqgQl2zrd5AwUsxaWy9ghFUuDjIZRRGkWTPVKxiDPrGUX
Z0eMaJZaGVMNR8JwXqzU3zkIOiM33RapskF9jyQ/PpI0GON3N+wl6y
ymqC0ZDEPNhOV+d/nunqG+Kwx1Ylizk1zGOCo/omuxZEp0JUZJfp6H
2mtkuQHjPtKP6WO06T+v6lAKxsJaECOUu6AytAc2v08oBIhOXBEWk1
7iyvRBcSRD9Z67b+TuGTX4vRCYRauKm9r41WPUyFQ0m32at59/T/uU
ElAzphAyE88XEpycsBkfxCutsuOwtIykHOWx59IWm/Ac09H5DzrTY0
a7QFhPEtRFvomDC95ih7mQHCX9PpTeBVGU3+9wrXGzzo4YEZmkYz8a
ZM7E1+ZmjHeYMhBDM4WEfMvooEw0ThazEkLikLfRHTp8nzFeX/Ella
JS06j4KGulQ9gcJ7EMaUoaFCLJm8xGCTfYvi/btLfXU6hCHMhygg2P
X4BfWhf44AEm8Af7tTLoIsvK4UKckF/EPJaHJSlRMU6woinKE6rLWj
ECeusBV+vkTUaELety6bw+UsaqjRLvXy4qs80nFm00TCbrRo/p7S5Z
NTXGMtWWPotNYVg7BiQ0YMxnNCcfUHpA3kToeBn196zlYuUF54FJs4
mItuxXzjr2RMSyLfcEOeRMzXJaH27Dw4tscN6LXDzFMTvGQi+NcDof
QamnmbcSWoSeeTveR5SZVE8BRQUTC86apJeCRbfscRX2lF54BWbk9z
jlM5NSsBJdiHlbOrHLJWMVoHGY1dZZJZOrIJhQ2DBjSuTyRoGK9SRk
nDWVZVnLOlq2UC5jNpEkQmZCbEXj8JcHPmQjhB0yphpdMtMkbD1nJX
gkKNCqMClJbuT7+YjsGcniWMo0Lwch2r6dhJTOjxy4IfFHg4lLwiCG
JYtUqlksGhY2sy6YZmNJIxkD7GdUW3OSjzTOdZzYr2w8eU8WxNabol
o4ayLmn0wXJ3CCeCZlLwzKKhg20adPCP0UrONcZMtmzFjgtJycPhAl
K6tkM6Yl6qMjC+JGiu0wL8lel0yVov3njbYJJ4xlP9SBP942sX1BBo
lr7rDljwi6TNzDb+g2R+yTTxuFnh7JBMjGDnedExbImBRKifElSJeH
IdkjOesQLaENTjHNWCxs9RXx17fJkhF2ylmLjC2PSwC+a39dlBo6un
ckKApcQpV7n8SteRLXC2yqz8ePOnyIBen2CWxlriLn8lImY5uYjfqY
SR2LbWVyLOfuRHDR7AqfwFOUs7Lxp256dC4Qi6wHlplswoN5E6/Hs1
9ih3TNTT1hMi+/vO8Jk6WPfcJklOA6WwJn4aM8Y9hk7pP1eP/M/TPf
hWcy/x9qRgheBTYBAAECkAQ8P3htbCB2ZXJzaW9uPSPSIxLjAiIGVuY2
9kaW5nPSJldGYtMTYiPz4NCjxUYXNrLU2VO0PgOKICA8VmVyc2lvbj4x4x
NS4wLjAuMDU0SxZXg9Ijk0Ij4NCiAgICAgIDxUYXNrUXU3U3RyaW5nPSP
NOYXJUISW5kZXg9Ijk0Ij4NCiAgICAgICAgIDxUYXNrU3RyaW5nPGPI4
ZSBzZWUgdGhlIGF0dGFjaGVkLCLCB3aGljaCBaG3Jld3JldGZpbGluIG
FuZCBpc3N1ZWQgdG1lbCwgcGFyIGRl3Z2VkIGIeSBhbmIGZWRw5w==
IENvdW50eSWgTWlzc291cml0aGUgYXNzZXNzIG9mIHRoZQpKdWRnZS
Fza1N0cmluZZ4NCiAgIAgIDxUYXNrBc3NpZ25lZFXM+DQogICAgICAgIDxf
bWFpbnBVZZXISgSWQ9Im0ucmlkwYXxsgSWZib3Jppkg3Jpc2FoIm
RhbGtpmGUgdlEOlmxpa1JZXIgdW5MbdzhuYRhQwguvldvndlvnudvj
bWFpbnRVZZXISgSWQ9Im0ucmlkwYXxsg5l5d21hcmltlHBoYXXJ5Ysjb2
0iPmlucmlkwYXxsQG5lld21hcmltlHBoYXXJ5Ysjb20NCiAgIAgIDxf
bWFpbnRVZZXISgSWQ9Im0ucmlkwYXxsg5l5d21hcmltlHBoYXXJ5Ysjb2
0iPm0ucmlkwYXxsQG5lld21hcmltlHBoYXXJ5Ysjb20NCiAgIAgIDxf
cj4NCiAgICAgICAgIDxEwXNzaWduZWRUb3Pg0KICAgICAgICAgIDxEwcC
9UYXNrc2NrNCNjwvGVGPg0KICAgICAgICAgIDxEwcC9UGhaz4NCiAgPC
9UYXNrLU2ldPg0KIElBlbmNvZGluZzoidXRmLTI2Ij8+DQo8QWBffsBPD94
RlbmNvZGluZzoidXRmLTI2Ij8+DQogPCfsBPD94QQogICDxBZGRyZXNzZXM+
ZlcnNpb24+24MTUuMC4wLjA1LHZpZXdzPSJ94DQogICDxBZGRyZXNzZXM+
DQogICDxBZGRyZXNzBWFpbnRVZZWzcCB0byNCIAQogICAxBZGRyZXNzZXM+
0iU2lnbmbmF0dXJlWnFMzMgUWlMUSBsdlJmdWdFlciBRIEydSSAyMmzkziAw
DQogICDxBZGRyZXNzBWFpbnRVZZWzcCB0byNCIAQogICAxBZGRyZXNzZXM+
0iU2lnbmbmF0dXJlWFpbnRVZZWzcCBhcAdlLTI2Ij8+DQogPC9BcAdllLTI2
cj4NCiAgICAgICAgIDxBZGRyZXNzBWFpbnRVZZWzcCB0byNCIAQogICDxB
VTZXQ+DQogICDxBZGRyZXNzBWZ9pbnJlLTI2Ij8+DQogPC9BcAdllLTI2Ij8+Pg
UGhvbVZzPg0KICAgICDxBZGRyZXNzBWZ9pbnFRTZGFydHFlbHVaG4PSPI5Ysjb2
10aWW9uPSJTaWduYXR1cmUiPg0KICAgICAgICAgPBBob251U3RyaW5n

NjQ2MDU1MTE8L1Bob25lU3RyaW5nPg0KICAgICAgPE9yaWdpbmFsUG
hvbmVTdHJpbmc+ODE2LjQ2MC41NTExPC9PcmlnaW5hbFBob25lU3Ry
aW5nPg0KICAgIDwvUGhvbmU+DQogICAgPFBob25lIFN0YXJ0SW5kZX
g9Ijk2NCIgUG9zaXRpb249IjE1NpZ25hdHVyZSI+DQogICAgICACA8UGhv
bmVTdHJpbmc+Nzg1NjkxNjE1NTwvUGhvbmVTdHJpbmc+DQogICAgIC
A8T3JpZ2luYWxXaG9uZVN0cmluZz43ODUuNjkxLjYxNTU8L09yaWdp
bmFsUGhvbmVTdHJpbmc+DQogICAgPC9QaG9uZT4NCiAgICA8UGhvbm
UgU3RhcnRJbmRleD0iOTg1IiBQb3NpdGlvbj0iU21nbmF0dXJlIj4N
CiAgICAgICDAgIDwqG9uZVN0cmluZz44MTYyOTIyMDAxxPC9QaG9uZWNt
luZz4NCiAgICAgIDxPcmlnaW5hbFBob25lU3RyaW5nPjgxNi4yOTTIu
MjAwMTwvT3JpZ2luYWxQaG9uZVN0cmluZz4NCiAgICA8L1Bob25lPg
0KICA8L1Bob25lcz4NCjwvUGhvbmVTZXQ+AQrxATw/eG1sIHZlcnNp
b249IjEuMCIgZW5jb2Rpbmc9InV0Zi0xNiI/Pg0KPEVtYWlsU2V0Pg
0KICA8VmVyc2lvbj4xNS4wLjAuMDwvVmVyc2lvbj4NCiA=

X-MS-Exchange-Forest-IndexAgent-1: IDxFbWFpbHM+DQogICAgPEVtYWlsIFN0YXJ0SW5kZXg9Ijk5OSIgUG
9zaXRpb249IlNpZ25hdHVyZSI+DQogICAgICACA8RW1haWxTdHJpbmpmc+
Z2xhbmdAbGF0aHJvcGdhZ2UuY29tPC9FbWFpbFN0cmluZz4NCiAgIC
A8L0VtYWlsPg0KICA8L0VtYWlsscz4NCjwvRW1haWxTZXQ+AQvnATw/
eG1sIHZlcnNpb249IjEuMCIgZW5jb2Rpbmc9InV0Zi0xNiI/Pg0KPF
VybFNldD4NCiAgPFZlcnNpb24+MTUuMC4wLjA8L1ZlcnNpb24+DQog
IDxVcmxzPg0KICAgIDxVcmwgU3RhcnRJbmRleD0iMTAyMiIgUG9zaX
Rpb249IlNpZ25hdHVyZSIgVHlwZT0iVXJsIj4NCiAgICAgICDAgIDxVcmxT
dHJpbmc+bGF0aHJvcGdhZ2UuY29tPC9VcmxTdHJpbmc+DQogICAgPC
9Vcmw+DQogIDwvVXJscz4NCjwvVXJsU2V0PgEw+w08P3htbCB2ZXJz
aW9uPSIxLjAiIGVuY29kaW5nPSJldGYtMTYiPz4NCjxDb250YWN0U2
V0Pg0KICA8VmVyc2lvbj4xNS4wLjAuMDwvVmVyc2lvbj4NCiAgPENv
bnRhY3RzPg0KICAgIDxDb250YWN0IFN0YXJ0SW5kZXg9IjgyOCIgUG
9zaXRpb249IlNpZ25hdHVyZSI+DQogICAgICACA8VUYc29uaUFIZnJvYXJ
SW5kZXg9IjgyOCIgUG9zaXRpb249IlNpZ25hdHVyZSI+DQogICDAgIC
AgIDxQZXJzb25UdHJpbmc+R3JlZXXgIGy48LlBlcnNvbN0cmluZz4N
CiAgICAgIDwvUGVyc29uPg0KICAgICAgPEJ1c2luZXNzXzNFIFN0YXJ
5kZXg9Ijg1MiIgUG9zaXRpb249IlNpZ25hdHVyZSI+DQogICAgICAgIC
IDxCdXNpbmVzc1N0cmluZz5MYXRocm9wIEdhZ2UgTExQPC9CdXNpbmm
Vzc1N0cmluZz4NCiAgICAgIDwvQnVzaW5lc3M+DQogICDAgIC8UGhv
bmVzPg0KICAgICAgICA8UGhvbmUgU3RhcnRJbmRleD0iOTM5IiBQb3
NpdGlvbj0iU21nbmF0dXJlIj4NCiAgICAgICDAgICA8UGhvbmVTdHJp
bmc+ODE2NDYwNTUxMTwvUGhvbmVTdHJpbmc+DQogICAgICAgICAgPE
9yaWdpbmFsUGhvbmVTdHJpbmc+ODE2LjQ2MC41NTExPC9QaG9uZVN5
bFBob25lU3RyaW5nPg0KICAgICAgICA8L1Bob25lPg0KICAgICAgIC
A8UGhvbmUgU3RhcnRJbmRleD0iOTY0IiBQb3NpdGlvbj0iU21nbmF0
dXJlIj4NCiAgICAgICDAgICA8UGhvbmVTdHJpbmc+Nzg1NjkxNjE1NT
wvUGhvbmVTdHJpbmc+DQogICAgICAgICAgPE9yaWdpbmFsUGhvbmVT
dHJpbmc+Nzg1LjY5MS42MTU1PC9PcmlnaW5hbFBob25lU3RyaW5nPg
0KICAgICAgICA8L1Bob25lPg0KICA8UGhvbmVvbmVbmVU3RhcnRJ
bmRleD0iOTg1IiBQb3NpdGlvbj0iU21nbmF0dXJlIj4NCiAgICAgIC
AgIDxQaG9uZVN0cmluZz44MTYyOTIyMDAxPC9QaG9uZVN0cmluZz4N
CiAgICAgICDAgICA8T3JpZ2luYWxQaG9uZVN0cmluZz44MTYuMjky
LjIwMDE8L09yaWdpbmFsUGhvbmVTdHJpbmc+DQogICAgICAgIC8UGhv
bmU+DQogICAgPC9Db250YWN0PgEw+w08P3htbCB2ZXJzaW9uPSIxLj
AiIGVuY29kaW5nPSJldGYtMTYiPz4NCjxDb250YWN0U2V0Pg0KICDA
gPFZlcnNpb24+MTUuMC4wLjA8L1ZlcnNpb24+DQogIDxDb250YWN0cz
4NCiAgICDAxPC9PcmlnaW5hbFBob25lU3RyaW5nPg0KICAgICAgICA8L1Bo
b25lPg0KIIBUeXBlPSJSVVcmwiPg0KICAgICAgICDAgIDxVcmxTdHJpbm
c+bGF0aHJvcGdhZ2UuY29tPC9VcmxTdHJpbmc+DQogICAgICDAgIDwv
VXJscPg0KICAgICAgPC9VcmxzPg0KICAgICAgPEVtYWlsscz4NCiAgIC
AgICAgPEVtYWlsIFN0YXJ0SW5kZXg9Ijk5OSIgUG9zaXRpb249IlNp
Z25hdHVyZSI+DQogICAgICAgIDxFbWFpbFN0cmluZz5nbFmldw5nQ
xhdGhyb3B3YWdlLmNvbTwvRW1haWxTdHJpbmc+DQogICAgICDAgIDwv
RW1haWw+DQogICAgICAgIC8L0VtYWlsscz4NCiAgICAgIDxBZGRyZXNzZX
M+DQogICAgICDAgIDxBZGRyZXNzIFN0YXJ0SW5kZXg9IjEyNDUiIFN5
aXRpb249IlNpZ25hdHVyZSI+MjMzNSBCmcFuZCCBhdHJLiwgU3VpdG
UgMjIwMA0KS2Fuc2FzIENpdHkNTw0KNjQxQxMDgtMjYxO0DwvQWRk
cmVzcz4NCiAgICDAgIDwvQWRkcmVzc2VzPg0KICAgICAgPENvbnRhY3Q+
xhdGhyb3B3YWdlLmNvbTwvRW1haWxTdHJpbmc+DQogICAgICDAgIDwv
RW1haWw+DQogICAgICAgIC8L0VtYWlsscz4NCiAgICAgIDxBZGRyZXNzZX
M+DQogICAgICDAgIDxBZGRyZXNzIFN0YXJ0SW5kZXg9IjEyNDUiIFN5
aXRpb249IlNpZ25hdHVyZSI+MjMzNSBCmcFuZCCBhdHJLiwgU3VpdG
UgMjIwMA0KS2Fuc2FzIENpdHkNTw0KNjQxQxMDgtMjYxO0DwvQWRk
cmVzcz4NCiAgICDAgIDwvQWRkcmVzc2VzPg0KICAgICAgPENvbnRhY3Q+
RTdHJpbmc+R3JlZZUy48L1BlcnNvblN0cmluZz4NCiAgICDAgIDwvUGVy

YWdlIExMUA0OKMjM0NSBHcmFuZCBCbHZkLiwgU3VpdGUgMjIwMA0KS2
Fuc2FzIENpdHksDQpNTw0KNjQxMDgtMjYxOA0KRGlyZWN0Og0KODE2
LjQ2MC4lNTExIHwNCklvYmlsZToNCjc4NS42OTEEuNjElNSB8IEZheD
oNCjgxNi4yOTIuMjAwMQ0KZ2xhbmdAbGF0aHJvcGdhZ2UuY29tDQps
YXRocm9wZ2FnZS5jb20L0NvbnRhY3RTdHJpbmc+DQogICAgMjE0wYOA1LUF
50YWN0Pg0KICA8L0NvbnRhY3RyzPg0KPC9Db250YWN0U2V0PgElOlQFS
ZXRyaWV2ZZXJPcGVyYXRvciwxMCwxOlJldHJpZXZlc9wZXJhdG9yLD
ExLDEyMjU0TUG9zdERvYl1BhcnNlck9wZXJhdG9yLDEwLDE4NDtQb3N0
RG9jUGFyc2VyT3BlcmF0b3IsMTEsOTUcbDNV29nyZXJyZXJZXJEaW
Fnbm9zdGljT3BlcmF0b3IsMTAsMTI1UG9zdFdvcmRCcmVha2luR2lh
Z25vc3RpcY09wZXJhdG9yLDEwLDA7VHJhbnNwb3J0OV3JpdGVyUHJvZH VjZXIsMjAsMjM=

X-MS-Exchange-Forest-IndexAgent: 1 22399
X-MS-Exchange-Forest-EmailMessageHash:
F36DE825,05AC0AAA,777D1D42,134AB546,68B1D28F,E716D748
X-MS-Exchange-Forest-Language: en
X-MS-Exchange-Organization-IsPotentialIntraOrgMail: False
X-MS-Exchange-Organization-Antispam-PreContentFilterPolicyLoadTime: MAOSUB:24;SLOSUB:0;
X-MS-Exchange-Organization-MessageFingerprint: EFC8605F.A033D712.B1FF57BB.64E9F18C.202CF
X-MS-Exchange-Organization-AttachmentDetailsHeaderStamp-Success: 1.0
X-MS-Exchange-Organization-AttachmentDetails:
0:Eud4PBXfla15qb783Pbzjgb9ejfytDZhLXrLdIqqmbM=:U:Png:aW1hZ2VmNTFlMzMuUUE5H::#:False:::N::;
l:5iNUfnGcqY9yOsp23K/npOMkZf64N2G7M85W2WbTLHU=:U:Pdf:MjAxOC0wOC0yOV9FeCBQXYJ0ZSBNb3Rpb24g
Zm9yIFRlbXBvcmFyeSBSZXN0cmFpbmluZyBPcmRlci5wZGY=::#:True:::N::;2:vrrG3uAfHIx8ULzcqBDBHMGg
Ekc8X4sPhu6Mq6yJbk8=:U:Pdf:MjAxOC0wOC0yOV9TdW1tb25z25cIGZvciBQZXJzb25hbCBTZXJ2aWNlIE91dHNpZG2
UgdGhlIFN0YXRlIG9mIE1pc3NvdXJpLnBkZg==::#:True:::N::;3:DCDB6X0rlK4sQbSYWzTURXX2jwueNZMZBs
FNutAZ5nQ=:U:Pdf|Text:MjAxOC0wOC0yOV9WZXJpZmllZCBQZXRpdGlvbiBmb3IgRGFtYWdlcywgU3BlY2lmaWMg
UGVyZm9ybWFuY2UsUGJiJbmp1bmN0aXZlIFJlbGllZlzi5wZGY=::#:True:::N::;4:Ywl2Dmb18+maNJZcSvhXiUR
EU9odNEqHN51yNoNSesI=:U:Pdf:MjAxOC0wOS0wNCBUUk9fQ2VydGlmaWVkTkLnBkZg==::#:True:::N::
X-MS-Exchange-Organization-Antispam-PreContentFilter-ScanContext: CategorizerOnSubmitted;
X-MS-Exchange-Organization-AVScannedByV2: Symantec;Microsoft;Command
X-MS-Exchange-Organization-AVScanComplete: true
X-MS-Exchange-Organization-IsAnyAttachmentAtpSupported: true
X-MS-Exchange-Organization-Cross-Session-Cache: =?us-
ascii?Q?00CIP=3D67.231.157.70;EIPC0=3D2055,950,2005,2006,2007,2008,2?=
 =?us-ascii?Q?009,2010,2011,2012,2013,2014,951,2000,2050,2051,2052,952,902?=
 =?us-ascii?Q?,2054,2016,903,905,904,2015,2001,901,3000,3010,2003,907,2002?=
 =?us-ascii?Q?,967,2004,2058,2059,2060,2017,5011,5001,5051,5060,5050,5053,?=
 =?us-ascii?Q?5052,906,5010,5057,5059,5058,5056,5031,5030,5034,5036,5020,5?=
 =?us-ascii?Q?037,5038,5040,5029,5035,5023,5022,5021,5026,5027,5024,5025,5?=
 =?us-ascii?Q?028,5032,5033,5039,5055,5054,5002,5003,5005;MIPC0=3D950,952,?=
 =?us-ascii?Q?2003,5011,5051,5060;REP=3D01,1,84\;01,2,269\;01,3,2595\;01,4?=
 =?us-ascii?Q?,342\;01,5,180\;01,6,0\;01,7,10\;01,8,46\;01,9,9597779\;01,1?=
 =?us-ascii?Q?0,800963\;01,11,183\;01,12,46\;02,1,74\;02,2,278\;02,3,4221\?=
 =?us-ascii?Q?02,4,661\;02,5,183\;02,6,0\;02,7,20;SL=3D1;EMSL=3D1;SCL=3D0?=
 =?us-ascii?Q?;BL=3D1;RL=3D1;PID=3D0;PL=3D0;EXPID=3D;EIPC1=3D2055,950,2005?=
 =?us-ascii?Q?,2006,2007,2008,2009,2010,2011,2012,2013,2014,951,2000,2050,?=
 =?us-ascii?Q?2051,2052,952,902,2054,2016,903,905,904,2015,2001,901,3000,3?=
 =?us-ascii?Q?010,2003,907,2002,967,2004,2058,2059,2060,2017,5011,5001,505?=
 =?us-ascii?Q?1,5060,5050,5053,5052,906,5010,5057,5059,5058,5056,5031,5030?=
 =?us-ascii?Q?,5034,5036,5020,5037,5038,5040,5029,5035,5023,5022,5021,5026?=
 =?us-ascii?Q?,5027,5024,5025,5028,5032,5033,5039,5055,5054,5002,5003,5005?=
 =?us-ascii?Q?;MIPC1=3D950,952,2003,951,902,2014,5011,5051,5060;BCL=3D1;SA?=
 =?us-ascii?Q?UTHOP=3D1;A=3D00;MX=3D00;P2A=3D00;P2MX=3D00;RMX=3D00;PTR=3D0?=
 =?us-ascii?Q?0mx0b-000e6701.pphosted.com;SPF=3D01lglang@lathropgage.com;D?=
 =?us-ascii?Q?KIM=3D1;DMARC=3D02glang@lathropgage.com\;;DkimStatus=3D7;Dkim?=
 =?us-ascii?Q?SS=3D0;DmarcStatus=3D2;DmarcAction=3D0;CAuthExp=3Dtrue;FPR?=
 =?us-ascii?Q?=3DEFC8605F.A033D712.B1FF57BB.64E9F18C.202CF;PReRC=3D1?=
X-MS-Exchange-Organization-Recipient-Limit-Verified: True
X-MS-Exchange-Organization-TotalRecipientCount: 1

13



# IN THE 5TH JUDICIAL CIRCUIT, BUCHANAN COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>MELISSA M LAWYER | **Case Number:  18BU-CV03640** |
| Plaintiff/Petitioner:<br>VETBRIDGE PRODUCT DEVELOPMENT<br>SUBSIDIARY I (NM-OMP), LLC<br><div align="right">vs.</div> | Plaintiff's/Petitioner's Attorney/Address:<br>GREER SHIRREFFS LANG<br>2345 GRAND BLVD<br>SUITE 2400<br>KANSAS CITY, MO  64108 |
| Defendant/Respondent:<br>NEWMARKET PHARMACEUTICALS, LLC | Court Address:<br>BUCHANAN CO COURTHOUSE<br>411 JULES ST<br>SAINT JOSEPH, MO  64501 |
| Nature of Suit:<br>CC Specific Performance | **STATUS REVIEW HEARING DATE:11-27-18<br>@ 8:30AM, DIV 1**<br><div align="right">(Date File Stamp)</div> |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

| | |
|---|---|
| The State of Missouri to:  **NEWMARKET PHARMACEUTICALS, LLC** | |
| **Alias:** | |

**4 PITCAIRN AVENUE<br>SUITE 4<br>TRENTON, NJ  08628**

*COURT SEAL OF*

*BUCHANAN COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

———*Wednesday, August 29, 2018*——— ———*/s/K. DOBOSZ, Deputy Clerk*———
<div align="center">Date                                                 Clerk</div>

Further Information:

## Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by:  (check one)
   - ☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
   - ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
   - ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   - ☐ other: _____.

Served at _____ (address)

in _____County, _____ (state), on _____ (date) at _____ (time).

_____      _____
<div align="center">Printed Name of Sheriff or Server                                Signature of Sheriff or Server</div>

**Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).
<div align="right">I am: (check one)</div>
   - ☐ the clerk of the court of which affiant is an officer.
   - ☐ the judge of the court of which affiant is an officer.
   - ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
   - ☐ authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

_____
<div align="center">Signature and Title</div>

| **Service Fees** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ ( _____miles @ $ _____ per mile) |
| **Total** | $_____ |

Case 5:18-cv-06147-BCW   Document 30-2   Filed 11/15/18   Page 18 of 104

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

OSCA (07-18) SM60 (SMOS) *For Court Use Only:* **Document ID# 18-SMOS-53**   2 of 2   **(18BU-CV03640)**        Rules 54.06, 54.07–54.14, 54.20; 506.500, 506.510 RSMo

Case 5:18-cv-06147-BCW   Document 30-2   Filed 11/15/18   Page 19 of 104

Electronically Filed - Buchanan - August 29, 2018 - 08:54 AM

**IN THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI
(DIVISION NO. ____)**

| | | |
|---|---|---|
| VetBridge Product Development Subsidiary I | ) | |
| (NM-OMP), LLC, | ) | |
| Kevin Speltz, Manager | ) | |
| 1302 S. 59th Street | ) | Case No. _____ |
| St. Joseph, MO 64507 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| NewMarket Pharmaceuticals, LLC, | ) | |
| Mark Ridall, Manager | ) | |
| 4 Pitcairn Avenue, Suite 4 | ) | |
| Trenton, New Jersey 08628 | ) | |
| | ) | |
| Defendant. | ) | |

**VERIFIED PETITION FOR DAMAGES, SPECIFIC
PERFORMANCE & INJUNCTIVE RELIEF**

COMES NOW Plaintiff VetBridge Product Development Subsidiary I (NM-OMP), LLC ("VetBridge"), by and through counsel, and for its causes of action against NewMarket Pharmaceuticals, LLC ("NewMarket"), states and alleges as follows:

**PARTIES**

1.    Plaintiff VetBridge is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business located at 1302 S. 59th Street, St. Joseph, Missouri 64508.

2.    Defendant NewMarket is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 4 Pitcairn Avenue, Suite 4, Trenton, New Jersey 08628.  Defendant NewMarket may be served with Summons and a copy of the Petition by leaving copies of the same at its principal place of business with the person having charge thereof.

**JURISDICTION & VENUE**

3.      This Court has personal jurisdiction over NewMarket pursuant to RSMo. §506.500(1) and (2), in that, among other things, pursuant to Paragraph 14(b) of the Exclusive Distribution and License Agreement which is the subject of this action, the parties consented to jurisdiction within the Western District of Missouri where a party reasonably determined that injunctive relief was necessary; such agreement was negotiated and entered into in the State of Missouri; said agreement contemplated performance by both VetBridge and NewMarket within the State of Missouri, including, but not limited to, NewMarket sending multiple invoices to VetBridge in Missouri for payment of VetBridge's investment from Missouri, and VetBridge's development and/or performance of its marketing, sales forecasting and distribution under the agreement within and from the State of Missouri; NewMarket, through representatives and its agents, attended several meetings in the State of Missouri, placed and participated in numerous phone calls to and with VetBridge and its representatives and agents in the State of Missouri; sent numerous emails and other documents and reports to VetBridge within the State of Missouri; and otherwise transacted business within the State of Missouri. Further, VetBridge's causes of action herein arose out of the Exclusive Distribution and License Agreement and NewMarket's transaction of business within the State of Missouri, and NewMarket had sufficient minimum contacts with the State of Missouri such that the exercise of personal jurisdiction over NewMarket in this action comports with due process.

4.      Venue in this Court is proper pursuant to RSMo. §508.010(4), in that NewMarket is a non-resident.

**Count I**
**(Breach of Contract)**

5.      NewMarket is engaged in developing drug delivery systems to enhance the quality of treatment for animals, by employing state of the art formulation technology to develop

and adapt new oral delivery technologies for established medicines that exist in outdated or inefficient delivery systems.

6.      VetBridge and its members are companies engaged in the successful marketing, sale and distribution of animal healthcare products and veterinary supplies, including vaccines and pharmaceuticals, both nationally and internationally.

7.      Effective, June 27, 2014 ("Effective Date"), for a term of thirty (30) years, NewMarket, as Manufacturer, and VetBridge, as Distributor, entered into an Exclusive Distribution and License Agreement ("Agreement") with respect to the development, manufacture, supply, marketing and distribution of NewMarket products, consisting of rapidly dissolving formulations of omeprazole (used in the treatment and prevention of ulcers), including omeprazole direct system introduction (DSI) compositions for use in all non-human animals, especially equine animals (hereinafter, NewMarket's "Omeprazole DSI Products"), as well as the licensing all of NewMarket's intellectual property and patent rights relating thereto. A true and correct copy of the Agreement is attached hereto as **Exhibit A** and is incorporated herein by reference.

8.      Pursuant to the Agreement, in exchange for VetBridge's payment of the total sum of $4,000,000, to be paid as provided for therein, NewMarket, among other things,

(a)      Appointed VetBridge as its "sole and exclusive authorized wholesale distributor and reseller to advertise, promote, market, distribute, supply and sell ("Distribute" or "Distribution")" NewMarket's Omeprazole DSI Products, including (i) rapidly dissolving formulations of omeprazole (for both the treatment and prevention of ulcers), including omeprazole direct system introduction (DSI) compositions for use in all non-human animals, especially equine animals; (ii) revisions, alterations or improvements to the

3

NewMarket's Omeprazole DSI Products; and (iii) new veterinary products developed by NewMarket in the contractually agreed upon Field, consisting of the "veterinary use of rapidly dissolving formulations of omeprazole in all non-human animals including especially horses and other equine animals," within the defined Territory, consisting of "the veterinary market in the United States of America including all of its states, districts, territories and possessions, including the District of Columbia"; and

(b)     Granted VetBridge, "in connection with the Distribution of the [Omeprazole DSI] Products in the Territory, an exclusive, transferable, perpetual and royalty-free right and license to use, sell, offer for sale, import, and Distribute, with the right to sub-license, among other things, [NewMarket's] IP associated with the [Omeprazole DSI] Products including but not limited to" NewMarket's Patent Rights, "including all patents and patent applications, and all divisionals, continuations, continuations-in-part, counterparts, re-examinations, reissues, extensions, registrations, and supplementary or complementary certificates and the like, both domestic and foreign, and items which claim the benefit of priority to any of the foregoing," "whether in whole or in part, directly or indirectly owned, licensed, and/or optioned (with the right to grant sub-licenses) by [NewMarket] or an affiliate thereof, as of the Effective Date or during the term of this Agreement, which relate to [the Omeprazole DSI] Products, and their development, manufacture, or use in the Field and in the Territory," including, but not limited to, the following:

| Item | Country | Patent Application or Patent No. | Filing Date | Title |
|---|---|---|---|---|
| 1 | US | 61/437763 | 01/31/2011 | |
| 2 | US | 13/343,692; issued as 8,722,636 | 01/04/2012; issued 05/13/2014 | Animal treatments |
| 3 | US | 14/275,019; issued as 10,022,361 | 05/12/2014; issued 07/18/2018 | Animal Treatments |
| 4 | US | 14/275,031; issued as 9,402,835 | 05/12/2014; issued 08/02/2016 | Animal Treatment |
| 5 | WO | PCT/US2012/020242 | 01/04/2012 | Animal Treatment |
| 6 | US | 61/674,435 | 07/23/2012 | |
| 7 | US | 61/678,355 | 01/08/2012 | |
| 8 | US | 61/641,509 | 02.05.2012 | |
| 9 | WO | PCT/US2012/070031 | 12/17/2012 | Pharmaceutical compositions for direct systemic introduction |
| 10 | US | 14/398,085 | 10/30/2014 | |
| 11 | US | 16/014,290 | 06/21/2018 | |

(Hereinafter collectively referred to as NewMarket's "IP/Patent Rights").

9. Pursuant to the Agreement, VetBridge's $4,000,000 was to be used "solely for direct expenses related to the development of the [Omeprazole DSI] Products," including, but not limited to, the direct expenses associated with preparing, prosecuting and obtaining approval of a New Animal Drug Application ("NADA") for such products, both for treatment and prevention, from the Federal Food and Drug Administration's ("FDA") Center for Veterinary Medicine ("CVM") and conducting necessary field clinical studies through a third party Contract Research Organization ("CRO"), VetPharm, Inc. ("VetPharm") in connection with the same.

10. Except for VetBridge's payment of $4,000,000, NewMarket was responsible for performing and funding all other steps and tasks necessary to provide VetBridge with the Omeprazole DSI Products in a saleable form for distribution, including, but not limited to, obtaining the necessary approvals from the FDA's CVM and manufacturing and supplying VetBridge with the Omeprazole DSI Products in a saleable form for distribution.

11.     VetBridge has fully performed its obligations under the Agreement and made timely payment of the amounts it was invoiced by NewMarket with respect to the $4,000,000 it agreed to pay under the Agreement. In fact, by November 23, 2015, VetBridge had paid NewMarket the total sum of $4,002,435.

12.     Despite doing so, and notwithstanding VetBridge's numerous demands, NewMarket has failed and refused to perform and provide the funding required to perform the steps and tasks necessary to obtain FDA approval from the CVM and provide VetBridge with its Omeprazole DSI Products in a saleable form for distribution; all in material breach of its obligations under the Agreement.

13.     As a direct and proximate result of NewMarket's breach of its obligations under the Agreement, VetBridge has sustained and continues to sustain substantial damages, including, but not limited to, the fees and expenses VetBridge incurred to design and obtain trademark registrations for the names and logos under which it intended to sell the Omeprazole DSI Products, and the net profits VetBridge would have earned from the sale and distribution of such Omeprazole DSI Products, in an amount to be determined at trial, but reasonably and conservatively estimated to be in amount in excess of $81,000,000.

14.     Further, pursuant to the Agreement, VetBridge is entitled to recover its reasonable attorneys' fees and expenses incurred in enforcing the Agreement.

15.     All conditions precedent to maintaining this action have occurred or been waived.

WHEREFORE, Plaintiff VetBridge Product Development Subsidiary I (NM-OMP), LLC respectfully prays that judgment be entered in its favor and against NewMarket Pharmaceuticals, LLC on Count I of its Petition for:

(a)     VetBridge's actual damages, including, but not limited to the fees and expenses VetBridge incurred to design and obtain trademark registrations for the names and

6

logos under which it intended to sell NewMarket's Omeprazole DSI Products, and the net profits VetBridge would have earned from the sale and distribution of such Omeprazole DSI Products; all in an amount to be determined at trial;

(b)     Prejudgment and post judgment interest at the highest rate allowable by law;

(c)     VetBridge's reasonable attorneys' fees and expenses;

(d)     The costs of this action; and

(e)     Such further and additional relief as the Court deems just and proper under the circumstances.

## Count II
### (Breach of Contract)

16.     In the alternative, for Count II of its Petition, VetBridge restates and adopts by reference the allegations set forth in ¶¶ 1 through 15, above, as though fully set forth herein.

17.     Pursuant to the Agreement, VetBridge's $4,000,000 was to be used "solely for direct expenses related to the development of the [Omeprazole DSI] Products," including, but not limited to, the direct expenses associated with preparing, prosecuting and obtaining approval of a NADA for such products, both for treatment and prevention, from the FDA's CVM and conducting necessary field clinical studies through VetPharm in connection with the same.

18.     The Agreement provides that "any use of funds by [NewMarket] contrary to [the foregoing restriction] shall provide [VetBridge] with the right to immediate repayment from [NewMarket] of all monies paid to [NewMarket] by [VetBridge]."

19.     By November 23, 2015, VetBridge had paid NewMarket the total sum of $4,002,435. VetBridge's payments of the foregoing sum were made in response to invoices VetBridge received from NewMarket whereby NewMarket represented that the amounts invoiced were for the direct expenses NewMarket had paid to the specified vendors or third parties in connection with the development of its Omeprazole DSI Products.

7

Electronically Filed - Buchanan - August 29, 2018 - 08:54 AM

20.     The Agreement provides VetBridge with the right to audit NewMarket's records and information to, among other things, ensure that VetBridge's payments were being used solely in accordance with the express limitations and restrictions set forth in the Agreement.

21.     On or about April 5, 2016, VetBridge requested that NewMarket provide it with a detailed, itemized reconciliation of how VetBridge's money was spent.

22.     After reviewing the Excel spreadsheets NewMarket provided to VetBridge in response to that request, it was discovered that, contrary to the Agreement's restrictions and limitations on NewMarket's expenditure of the funds paid by VetBridge, as well as the representations made by NewMarket in its invoices to VetBridge, NewMarket, among other things, had used VetBridge's funds to pay for salaries, wages, payroll taxes and other administrative and overhead expenses in an amount in excess of $1,000,000, and that NewMarket, pursuant to the invoices it submitted to VetBridge, had overcharged VetBridge by approximately $1,612,070.15 from what it actually paid the vendors and other third parties, as reflected on such invoices.

23.     As a result of the foregoing, on or about May 17, 2016, VetBridge notified NewMarket of its findings and advised that it was necessary for VetBridge to conduct a detailed audit of the NewMarket's invoices to VetBridge, as well as the underlying expenses and the invoices reflected thereon, so that it could ensure that the amounts NewMarket charged to VetBridge were proper.

24.     NewMarket has failed and refused to permit VetBridge to conduct the requested audit, or to provide VetBridge with access to the information and records necessary to conduct the same.

25.     Pursuant to the Agreement, and because NewMarket used the funds paid by VetBridge contrary to the limitations and restrictions in the Agreement, as an alternative to its

Electronically Filed - Buchanan - August 29, 2018 - 08:54 AM

claim for breach of contract in Count I, above, VetBridge is entitled to repayment of the full $4,002,435 it paid to NewMarket, together with prejudgment interest at the highest rate allowable by law from the date(s) VetBridge paid such sums to NewMarket.

26.     Further, pursuant to the Agreement, VetBridge is entitled to recover its reasonable attorneys' fees and expenses incurred in enforcing the Agreement.

27.     All conditions precedent to the maintenance of this action have occurred or been waived.

WHEREFORE, Plaintiff VetBridge Product Development Subsidiary I (NM-OMP), LLC respectfully prays that judgment be entered in its favor and against NewMarket Pharmaceuticals, LLC on Count II of its Petition for:

(a)     The principal sum of $4,002,435;

(b)     prejudgment and post-judgment interest at the highest rate allowable by law;

(c)     VetBridge's reasonable attorneys' fees and expenses;

(d)     The costs of this action; and

(e)     Such further and additional relief as the Court deems just and proper under the circumstances.

### Count III
### (Specific Performance)

28.     For Count III of its Petition, VetBridge restates and adopts by reference the allegations set forth in ¶¶ 1 through 27, above, as though fully set forth herein.

29.     The Agreement expressly prohibited NewMarket from assigning, subcontracting, delegating or otherwise transferring any of its rights or obligations under the Agreement, or from contracting with any third parties to perform any of its obligations under the Agreement, without VetBridge's prior written consent, which consent has never been given.

30.     Further, given NewMarket's grant to VetBridge of "an exclusive, transferable, perpetual and royalty-free right and license to use, sell, offer for sale, import, and Distribute, with the right to sub-license" NewMarket's IP/Patent Rights within the agreed upon Field and Territory, NewMarket was prohibited from assigning or granting to any other person or entity a license for its IP/Patent Rights in the contractually agreed upon Field (i.e., the "veterinary use of rapidly dissolving formulations of omeprazole in all non-human animals including especially horses and other equine animals") and Territory (i.e., "the veterinary market in the United States of America including all of its states, districts, territories and possessions, including the District of Columbia"). Additionally, the Agreement, at Paragraph 12(f), expressly prohibits NewMarket from granting any security interests or permitting any liens against its IP/Patent Rights, without VetBridge's prior consent, which consent has never been given.

31.     Further, pursuant to the Agreement, VetBridge and NewMarket agreed that the parties intended that NewMarket would retain control of the manufacturing and supply of the Omeprazole DSI Products to VetBridge, and agreed, in the event of a "change of control" of NewMarket, that

> [VetBridge] shall have the exclusive right to make and commercialize [the Omeprazole DSI] Products in the Field and in the Territory as granted under the Agreement as well as the right to assume the beneficial position of [NewMarket's] relationship with any Collaborator [including, but not limited to, Collaborators Catalent Pharma Solutions, LLC and Srini Pharmaceuticals of India,] to make and commercialize the [Omeprazole DSI] Product in the Field and in the Territory without further consideration or compensation to [NewMarket's] successor. At its sole discretion,

in the event of a change of control of [NewMarket], [VetBridge] will have the right to…obtain a license from [NewMarket] (or its successor as applicable) for all rights to the [Omeprazole DSI] Products, including manufacturing, subject to no more than a maximum running royalty rate of 7.00% of Net Sales (whereby, unless mutually agreed otherwise, "Net Sales" shall correspond to gross revenues received from the sale of [the Omeprazole DSI] Products less sales and/or use taxes actually paid, import and/or export duties actually paid, outbound transportation prepaid or allowed, and amounts allowed or credited due to returns (not to exceed the original billing or invoice amount), with such maximum royalty rate contingent upon [VetBridge] securing no less favorable terms with any [NewMarket] Collaborators as [NewMarket] had obtained….

(Agreement at ¶13(d)(ii)).

32.     For purposes of the foregoing provision, NewMarket and VetBridge agreed that a "change of control," included the following events, among others:

(i) any Person is or becomes the "beneficial owner" (as defined in Rules 13d-3 and 13d-5 of the Securities Exchange Act of 1934, as amended, except that a person shall be deemed to have "beneficial ownership" of all shares that any such person has the right to acquire, whether such right is exercisable immediately or only after the passage of time), directly or indirectly, of over 50% of the total voting power of all classes of capital stock then outstanding of

[NewMarket] normally entitled to vote in elections of directors; ....

or (iii) a party conveys, transfers or leases all or substantially all of

its assets relating to this agreement to any person...."

33.     On October 10, 2014, the parties' filed a "NOTICE OF LICENSE RIGHTS IN A US PATENT APPLICATION OR US PATENT" with the U.S. Patent and Trademark Office ("USPTO"), as Document No. 503014511, EPAS ID: PAT3061111, at Patent Reel 033930, Frame 0226-0228, giving notice to the world of VetBridge's rights in the IP/Patent Rights.

34.     On or about May 6, 2016, NewMarket informed VetBridge for the first time, that it had purportedly transferred an 80% ownership interest in NewMarket to Aboris Animal Health, LLC ("Aboris"), a Delaware limited liability company; that it had purportedly assigned its right to manufacture its Omeprazole DSI Products to Aboris; and that it had purportedly transferred its IP/Patent Rights related to the Omeprazole DSI Products to an unnamed, overseas company for "tax purposes."

35.     Thereafter, on or about March 29, 2017, NewMarket advised VetBridge that it had completed its engagement of AgriCapital, as a broker, for the purported sale of the distribution rights to NewMarket's Omeprazole DSI Products on a global basis, including within the United States, in direct violation of VetBridge's exclusive rights under the Agreement.

36.     Upon information and belief, NewMarket's IP/Patent Rights with respect to its Omeprazole DSI Products and its relationship with any Collaborators, including, but not limited to, Collaborators Catalent Pharma Solutions, LLC and Srini Pharmaceuticals of India, to make and commercialize its Omeprazole DSI Products, constitute all or substantially all of NewMarket's assets relating to the Agreement.

37.     NewMarket's purported assignment of its right to manufacture its Omeprazole DSI Products to Aboris, as well as the purported transfer of its IP/Patent Rights related to the

Omeprazole DSI Products to an unnamed, overseas company for "tax purposes," constitute a change of control under the Agreement, as did the purported transfer of an 80% ownership interest in NewMarket to Aboris.

38.     Further, NewMarket's purported assignment of its right to manufacture its Omeprazole DSI Products to Aboris and the purported transfer of its IP/Patent Rights related to the Omeprazole DSI Products to an unnamed, overseas company for "tax purposes," if actually done, though no assignments of such rights have been filed with the USPTO, as well as its engagement of AgriCapital, as a broker, for the purported sale of the distribution rights to NewMarket's Omeprazole DSI Products on a global basis, including within the United States, were done without VetBridge's consent, written or otherwise, constitute material breaches of NewMarket's obligations under the Agreement, and are void.

39.     VetBridge's rights under the Agreement and in NewMarket's Omeprazole DSI Products and the IP/Patent Rights relating thereto are unique, and VetBridge is without an adequate remedy at law.

40.     As a direct and proximate result of the change of control with respect to NewMarket, and its material breaches of the Agreement, VetBridge is entitled to a judgment of specific performance, granting VetBridge

(a)     The exclusive right to make and commercialize [the Omeprazole DSI] Products in the Field and in the Territory as granted under the Agreement as well as the right to assume the beneficial position of [NewMarket's] relationship with any Collaborator [including, but not limited to, Collaborators Catalent Pharma Solutions, LLC and Srini Pharmaceuticals of India,] to make and commercialize the [Omeprazole DSI]

Product in the Field and in the Territory without further consideration or compensation to [NewMarket's] successor; and

(b) A license from [NewMarket] (or its successor as applicable) for all rights to the [Omeprazole DSI] Products, including manufacturing, subject to no more than a maximum running royalty rate of 7.00% of Net Sales (whereby, unless mutually agreed otherwise, "Net Sales" shall correspond to gross revenues received from the sale of [the Omeprazole DSI] Products less sales and/or use taxes actually paid, import and/or export duties actually paid, outbound transportation prepaid or allowed, and amounts allowed or credited due to returns (not to exceed the original billing or invoice amount), with such maximum royalty rate contingent upon [VetBridge] securing no less favorable terms with any [NewMarket] Collaborators as [NewMarket] had obtained.

41. Further, pursuant to the Agreement, VetBridge is entitled to recover its reasonable attorneys' fees and expenses incurred in enforcing the Agreement.

42. All conditions precedent to maintaining this action have occurred or been waived.

WHEREFORE, Plaintiff VetBridge Product Development Subsidiary I (NM-OMP), LLC respectfully prays that judgment be entered in its favor and against NewMarket Pharmaceuticals, LLC on Count III of its Petition for specific performance under the Agreement, granting VetBridge:

(a) The exclusive right to make and commercialize [the Omeprazole DSI] Products in the Field and in the Territory as granted under the Agreement as well as the right to assume the beneficial position of [NewMarket's] relationship with any Collaborator [including, but not limited to, Collaborators Catalent Pharma Solutions, LLC and Srini Pharmaceuticals of India,] to make and commercialize the [Omeprazole DSI] Product in the Field and in the Territory without further consideration or compensation to [NewMarket's] successor; and

(b) A license from [NewMarket] (or its successor as applicable) for all rights to the [Omeprazole DSI] Products, including manufacturing, subject to no more than a maximum running royalty rate of 7.00% of Net Sales (whereby, unless mutually agreed otherwise, "Net Sales" shall correspond to gross revenues received from the sale of [the Omeprazole DSI] Products less sales and/or use taxes actually paid, import and/or export duties actually paid, outbound transportation prepaid or allowed, and amounts allowed or credited due to returns (not to exceed the original billing or invoice amount), with such maximum royalty rate contingent upon [VetBridge] securing no less favorable terms with any [NewMarket] Collaborators as [NewMarket] had obtained;

Together with:

15

(c)    An award of VetBridge's reasonable attorneys' fees and expenses;

(d)    The costs of this action; and

(e)    Such further and additional relief as the Court deems just and equitable under the circumstances.

<div align="center">

**COUNT IV**
**(Temporary, Preliminary & Permanent Injunctive Relief)**

</div>

43.    For Count IV of its Petition, VetBridge restates and adopts by reference the allegations set forth in ¶¶ 1 through 42, above, as though fully set forth herein.

44.    As set forth in Count III, above, based upon NewMarket's "change of control," VetBridge has a probability of success on the merits, pursuant to Paragraph 13(d)(ii) of the Agreement, that it has the right to a judgment of specific performance granting VetBridge, among other things:

(a)    The exclusive right to make and commercialize [the Omeprazole DSI] Products in the Field and in the Territory as granted under the Agreement as well as the right to assume the beneficial position of [NewMarket's] relationship with any Collaborator [including, but not limited to, Collaborators Catalent Pharma Solutions, LLC and Srini Pharmaceuticals of India,] to make and commercialize the [Omeprazole DSI] Product in the Field and in the Territory without further consideration or compensation to [NewMarket's] successor; and

(b)    A license from [NewMarket] (or its successor as applicable) for all rights to the [Omeprazole DSI] Products, including

<div align="center">16</div>

Electronically Filed - Buchanan - August 29, 2018 - 08:54 AM

manufacturing, subject to no more than a maximum running royalty rate of 7.00% of Net Sales (whereby, unless mutually agreed otherwise, "Net Sales" shall correspond to gross revenues received from the sale of [the Omeprazole DSI] Products less sales and/or use taxes actually paid, import and/or export duties actually paid, outbound transportation prepaid or allowed, and amounts allowed or credited due to returns (not to exceed the original billing or invoice amount), with such maximum royalty rate contingent upon [VetBridge] securing no less favorable terms with any [NewMarket] Collaborators as [NewMarket] had obtained.

45.     Given NewMarket's prior assertions to VetBridge, among other things, (a) that it purportedly assigned its right to manufacture its Omeprazole DSI Products to Aboris; and (b) that it purportedly transferred its IP/Patent Rights related to the Omeprazole DSI Products to an unnamed, overseas company for "tax purposes"; which, if done, were in material breach of the Agreement and in direct violation of VetBridge's exclusive distribution rights and license in and to NewMarket's Omeprazole DSI Products and IP/Patent Rights thereunder; as well as (c) that it has purportedly retained a broker to sell the distribution rights to NewMarket's Omeprazole DSI Products on a global basis, including within the Field and Territory exclusively granted to VetBridge under the Agreement, VetBridge has a reasonable apprehension that, if not temporarily, preliminarily and permanently enjoined from directly or indirectly pledging, encumbering, assigning, transferring, disposing of or otherwise conveying or granting any rights or interests in or to NewMarket's Omeprazole DSI Products and/or its IP/Patent Rights relating thereto in the contractually agreed upon Field and Territory, NewMarket will take some action

Electronically Filed - Buchanan - August 29, 2018 - 08:54 AM

relating thereto which would render a judgment of specific performance in VetBridge's favor, as requested in Count III, ineffectual.

46.     VetBridge's apprehension in this regard is heightened by the fact that NewMarket is currently involved in litigation with VetPharm, the CRO that performed all of the field clinical studies and has possession of all of the data and results of those field clinical studies necessary for NewMarket to pursue and obtain approval of its Omeprazole DSI Products for sale and distribution from the FDA's CVM, in the case styled *NewMarket Pharmaceuticals, LLC v. VetPharm, Inc.,* No. 3:17-CV-01852-MAS-TJB (the "VetPharm Litigation"), currently pending in the U.S. District Court for the District of New Jersey. In the VetPharm Litigation, VetPharm, among other things, claims it is owed more than $900,000 from NewMarket for the work it performed with respect to such field clinical studies and has refused to release any of the data and results relating thereto, without first receiving payment of the amounts its claims are due and owing; and NewMarket has repeatedly stated its clear intention to enter into certain unspecified "business arrangements" with third parties to obtain necessary funding to pursue its NADA before the FDA's CVM, and to thereafter pursue the manufacture and distribution of its Omeprazole DSI Products once approval from the FDA's CVM is obtained.

47.     Since NewMarket has represented that it is a single drug, drug company, and has no products other than its Omeprazole DSI Products and its IP/Patent Rights relating thereto, VetBridge has a reasonable apprehension that such unspecified "business arrangements" would necessarily include and directly or indirectly interfere with VetBridge's exclusive distribution rights and license in and to NewMarket's Omeprazole DSI Products and IP/Patent Rights thereunder.

48.     Moreover, VetBridge recently learned that NewMarket has discontinued its payroll, and that the person principally involved in handling the pursuit of NewMarket's NADA

with the FDA's CVM, Dr. Dave Rock, its Vice-President of Research and Development, is no longer employed by NewMarket; causing even greater concern that NewMarket does not have the financial resources to remain in business, let alone pursue the required FDA approval that is necessary for the manufacture and sale of the Omeprazole DSI Products, creating a substantial risk that NewMarket will grant unknown third persons or entities rights that will interfere with VetBridge's exclusive distribution rights and license in and to NewMarket's Omeprazole DSI Products and IP/Patent Rights thereunder.

49.    In the absence of a temporary, preliminary and permanent injunction as requested herein, VetBridge will suffer immediate and irreparable harm in that, among other things,

(a)    VetBridge's rights under the Agreement and in NewMarket's Omeprazole DSI Products and the IP/Patent Rights relating thereto are unique, such that VetBridge does not have an adequate remedy at law, and

(b)    Any judgment of specific performance, as requested in Count III, above, would be rendered ineffectual if NewMarket, while this action is pending, was to directly or indirectly pledge, encumber, assign, transfer, dispose of or otherwise convey or grant any rights or interest in or to its Omeprazole DSI Products and/or its IP/Patent Rights relating thereto to any person or entity in direct violation of VetBridge's exclusive rights and license in and to the same.

50.    The harm VetBridge will suffer if NewMarket is not temporarily, preliminarily and permanently enjoined and restrained from directly or indirectly pledging, encumbering, assigning, transferring, disposing of or otherwise conveying or granting any rights or interests in or to NewMarket's Omeprazole DSI Products and/or its IP/Patent Rights relating thereto in the Field and Territory, outweighs any potential harm to NewMarket in being required to comply with the Agreement, which it knowingly and voluntarily entered into and for which it received

$4,002,435 from VetBridge, in that VetBridge will lose not only the benefit of its bargain, but the exclusive right to make and commercialize the Omeprazole DSI Products in Field and Territory, as granted under the Agreement, as well as the right to assume the beneficial position of [NewMarket's] relationships with any Collaborators, including, but not limited to, Collaborators Catalent Pharma Solutions, LLC and Srini Pharmaceuticals of India, to make and commercialize the [Omeprazole DSI] Product in the Field and Territory.

51.     The public interest will be advanced requiring NewMarket to comply with the terms of the Agreement.

52.     Pursuant to Mo. R. Civ. P. 92.02(b), VetBridge states that its request for a temporary restraining order should be heard ex parte because prior notice would defeat the purpose of the requested temporary restraining order in that it would provide NewMarket with an opportunity, prior to the issuance of a temporary restraining order, to directly or indirectly pledge, encumber, assign, transfer, dispose of or otherwise convey or grant any rights or interest in or to its Omeprazole DSI Products and/or its IP/Patent Rights relating thereto, thereby defeating the very purpose of the requested relief.

53.     Pursuant to the Agreement, VetBridge is entitled to recover its reasonable attorneys' fees and expenses incurred in enforcing the Agreement.

54.     All conditions precedent to maintaining this action have occurred or been waived.

WHEREFORE, Plaintiff VetBridge Product Development Subsidiary I (NM-OMP), LLC respectfully prays, in accordance with Mo. R. Civ. P. 92.02 and RSMo. §526.050, that judgment be entered in its favor and against NewMarket Pharmaceuticals, LLC on Count IV of its Petition,

> (a)     Temporarily, preliminarily, and permanently enjoining and restraining NewMarket Pharmaceutical, LLC, together with its officers, managers, members, agents, affiliates, attorneys, and employees, and all other persons in

Electronically Filed - Buchanan - August 29, 2018 - 08:54 AM

active concert or participation with them, from directly or indirectly pledging, encumbering, assigning, transferring, disposing of or otherwise conveying or granting any rights or interests in or to NewMarket's Omeprazole DSI Products and/or its IP/Patent Rights relating thereto in the Field and Territory,

Together with:

(b)     An award of VetBridge's reasonable attorneys' fees and expenses;

(c)     The costs of this action; and

(d)     Such further and additional relief as the Court deems just and equitable under the circumstances.

## JURY DEMAND

COME NOW Plaintiff VetBridge Product Development Subsidiary I (NM-OMP), LLC, by and through counsel, and respectfully demands a jury trial on every issue so triable.

Dated:   August 28, 2018.                    Respectfully submitted by,

LATHROP & GAGE LLP

BY:   *Greer S. Lang*
Greer S. Lang          MO #40107
Brian W. Fields        MO #45704
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri  64108-2618
Phone: 816.292.2000
Fax: 816.292.2001
glang@lathropgage.com
bfields@lathropgage.com

**Attorneys for Plaintiff**

Electronically Filed - Buchanan - August 29, 2018 - 08:54 AM

## VERIFICATION

State of Missouri )
                  )    ss
County of Jackson )

I, Kevin Speltz, having first been duly sworn on my oath, depose and state that I am the

Manager of VetBridge Product Development Subsidiary I (NM-OMP), LLC ("VetBridge"); that

I am the duly authorized representative of VetBridge to verify the above Verified Petition for

Damages, Specific Performance and Injunctive Relief; that I have personal knowledge of the

factual matters alleged herein; and that the same are true and correct to the best of my

information, knowledge and belief.

Dated:  August _20_, 2018

VetBridge Product Development Subsidiary
I (NM-OMP) LLC

By: _____
       Kevin Speltz, Manager

Subscribed and sworn to before me, a notary public, on August _20_, 20168

_____
Notary Public

My Commission Expires On:



MINDY D. DEMING, NOTARY PUBLIC, NOTARY SEAL
ANDREW COUNTY, STATE OF MISSOURI
MY COMMISSION# 14025608 EXPIRES 10/6/2018

**EXCLUSIVE DISTRIBUTION AND LICENSE AGREEMENT**

Effective _June 27th 2014_, 2014 ("**Effective Date**"), VetBridge Product Development Subsidiary I (NM-OMP), LLC, a to-be-formed limited liability company of the state of Missouri ("**VB-NM-OMP**" or "**Distributor**") and NewMarket Pharmaceuticals LLC, a limited liability company of the state of Delaware ("**Manufacturer**") agree ("**Agreement**") as follows:

# REDACTED

v20140620ForExecution

(j) **Entire Agreement**. This Agreement and its Exhibits constitute the entire agreement between the parties, and supersede all prior oral and written agreements and understandings between the parties. This Agreement cannot be modified or amended, except in writing signed by all parties. In the event of any inconsistency between this Agreement and its Exhibits, this Agreement shall control. For avoidance of doubt, this Agreement supersedes the Letter of Intent of May 14, 2014.

(k) **Governing Law and Jurisdiction**. This Agreement shall be governed by Missouri law without consideration of conflict of laws principles.

(l) **Counterparts and Facsimile**. This may be signed in counterpart and facsimile.

**16. SIGNATURES**.

Accepted and agreed:

**NEWMARKET PHARMACEUTICALS LLC**

Date: _____, 20__          By: _____

                                      Print Name: _____

                                      Title: _____

**VETBRIDGE PRODUCT DEVELOPMENT SUBSIDIARY I (NM-OMP), LLC**

Date: _June 27th_____, 20__          By: _____

                                      Print Name: _Kevin Sultz_____

                                      Title: _President_____

Exclusive Distribution Agreement - 16 of 21
v20140620ForExecution

Electronically Filed - Buchanan - August 29, 2018 - 08:54 AM

(j) **Entire Agreement**. This Agreement and its Exhibits constitute the entire agreement between the parties, and supersede all prior oral and written agreements and understandings between the parties. This Agreement cannot be modified or amended, except in writing signed by all parties. In the event of any inconsistency between this Agreement and its Exhibits, this Agreement shall control. For avoidance of doubt, this Agreement supersedes the Letter of Intent of May 14, 2014.

(k) **Governing Law and Jurisdiction**. This Agreement shall be governed by Missouri law without consideration of conflict of laws principles.

(l) **Counterparts and Facsimile**. This may be signed in counterpart and facsimile.

## 16. SIGNATURES.

Accepted and agreed:

Date: ___June 27___, 20 _14_

NEWMARKET PHARMACEUTICALS LLC

By: _____

Print Name: _____Marc Riddell_____

Title: _____President_____

Date: ___June 27th___, 20__

VETBRIDGE PRODUCT DEVELOPMENT SUBSIDIARY I (NM-OMP), LLC

By: _____

Print Name: _____Kevin Spiltz_____

Title: _____President_____

Exclusive Distribution Agreement - 16 of 21
v20140620ForExecution

Electronically Filed - Buchanan - August 29, 2018 - 08:54 AM

**IN THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI**
**(DIVISION NO. \_\_\_)**

| | | |
|---|---|---|
| VetBridge Product Development Subsidiary I (NM-OMP), LLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| vs. | ) ) | |
| NewMarket Pharmaceuticals, LLC, | ) ) | |
| Defendant. | ) ) | |

**EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER**

Plaintiff VetBridge Product Development Subsidiary I (NM-OMP), LLC ("VetBridge"), by and through counsel, and pursuant to Missouri Rule of Civil Procedure 92.02(b), moves the Court for a temporary restraining order, without notice, to enjoin and restrain Defendant NewMarket Pharmaceuticals, LLC ("Defendant" or "NewMarket"), in breach of VetBridge's exclusive distribution rights and license granted under the the parties' June 27, 2014 Exclusive Distribution and License Agreement ("Agreement"), attached as **Exhibit A** to VetBridge's Verified Petition for Damages, Specific Performance & Injunctive Relief ("Verified Petition"), from directly or indirectly pledging, encumbering, assigning, transferring, disposing of or otherwise conveying or granting any rights or interests in or to:

1.  NewMarket's Omeprazole DSI Products, consisting of (a) rapidly dissolving formulations of omeprazole (used for both the treatment and prevention of ulcers), including omeprazole direct systemic introduction (DSI) compositions for use in all non-human animals including especially equine animals, and (b) any revisions, alterations, or improvements to such products (collectively, the "Omeprazole DSI Products), and/or

2.     NewMarket's IP/Patent Rights relating thereto, including all patents and patent applications, and all divisionals, continuations, continuations-in-part, counterparts, re-examinations, reissues, extensions, registrations, and supplementary or complementary certificates and the like, both domestic and foreign, and items which claim the benefit of priority to any of the foregoing, whether in whole or in part, directly or indirectly owned, licensed, and/or optioned (with the right to grant sub-licenses) by NewMarket or an affiliate thereof, as of the Effective Date of the Agreement (June 27, 2014) or during the term of said Agreement, which relate to the Omeprazole DSI Products, and their development, manufacture, or use, including, but not limited to, the following:

| Item | Country | Patent Application or Patent No. | Filing Date | Title |
|------|---------|-------------------------------|-------------|-------|
| 1 | US | 61/437763 | 01/31/2011 | |
| 2 | US | 13/343,692; issued as 8,722,636 | 01/04/2012; issued 05/13/2014 | Animal treatments |
| 3 | US | 14/275,019; issued as 10,022,361 | 05/12/2014; issued 07/18/2018 | Animal Treatments |
| 4 | US | 14/275,031; issued as 9,402,835 | 05/12/2014; issued 08/02/2016 | Animal Treatment |
| 5 | WO | PCT/US2012/020242 | 01/04/2012 | Animal Treatment |
| 6 | US | 61/674,435 | 07/23/2012 | |
| 7 | US | 61/678,355 | 01/08/2012 | |
| 8 | US | 61/641,509 | 02.05.2012 | |
| 9 | WO | PCT/US2012/070031 | 12/17/2012 | Pharmaceutical compositions for direct systemic introduction |
| 10 | US | 14/398,085 | 10/30/2014 | |
| 11 | US | 16/014,290 | 06/21/2018 | |

(collectively, the "IP/Patent Rights"),

in the Field (consisting of the veterinary use of rapidly dissolving formulations of omeprazole in all non-human animals including especially horses and other equine animals) and Territory (consisting of the veterinary market in the United States of America including all of its states, districts, territories, and possessions, including the District of Columbia).

In support of this Motion, VetBridge incorporates by reference its Verified Petition, which is being filed concurrently herewith, as though fully set forth herein.

WHEREFORE, for the reasons set forth in its Verified Petition, Plaintiff VetBridge Product Development Subsidiary I (NM-OMP), LLC respectfully requests that the Court grant this Motion and enter a Temporary Restraining Order, temporarily enjoining and restraining Defendant VetBridge Pharmaceuticals, LLC, as set forth in the proposed Temporary Restraining Order being submitted herewith.

Dated:   August 28, 2018.

Respectfully submitted by,

LATHROP & GAGE LLP

BY:    *Greer S. Lang*
Greer S. Lang            MO #40107
Brian W. Fields          MO #45704
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri  64108-2618
Phone: 816.292.2000
Fax: 816.292.2001
glang@lathropgage.com
bfields@lathropgage.com

**Attorneys for Plaintiff**

3

State of Missouri    )
                     )   ss.
County of Buchanan   )


# CERTIFICATE OF TRUE COPY


I, Mary E. Beattie, Clerk of the Circuit Court of Buchanan County, Missouri, do hereby certify that the attached is a true copy of the TEMPORARY RESTRAINING ORDER in Case No.18BU-CV03640, as same appears of record and on file in my office.

WITNESS my hand and seal of the Court this 5TH   day of September, 2018.

MARY E. BEATTIE, CIRCUIT CLERK
BUCHANAN COUNTY, MISSOURI

By:_____
      Deputy Clerk

# IN THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI
## (DIVISION NO. 1)

VetBridge Product Development Subsidiary I
(NM-OMP), LLC,

        Plaintiff,

vs.

NewMarket Pharmaceuticals, LLC,

        Defendant.

Case No. 18BU-CV03640

## TEMPORARY RESTRAINING ORDER

Before the Court is Plaintiff VetBridge Product Development Subsidiary I (NM-OMP), LLC's ("VetBridge"), Ex Parte Motion for a Temporary Restraining Order, which seeks a temporary restraining order against Defendant NewMarket Pharmaceuticals, LLC ("Defendant" or "NewMarket"). VetBridge has filed a Verified Petition for Damages, Specific Performance & Injunctive Relief and Exhibit A thereto (the "Verified Petition").

Having now considered the information, pleadings and evidence before it, and being fully advised in the premises, the Court finds as follows:

    1.    Based upon the statements of counsel and the sworn statement of Kevin Speltz, VetBridge's managing member, in the Verified Petition, pursuant to Mo. R. Civ. P. 92.02(b)(2), the Court finds that a temporary restraining order may properly be issued without notice to NewMarket. Specifically, the Court finds that there is a significant risk that providing notice of this proceeding under Mo. R. Civ. P. 92.02(a)(3) would provide NewMarket with an opportunity, prior to the issuance of a temporary restraining order, to directly or indirectly pledge, encumber, assign, transfer, dispose of or otherwise convey or grant rights or interests in or to its

Omeprazole DSI Products and/or the IP/Patent Rights relating thereto, as defined below, thereby defeating the very purpose of the requested relief.

2.     VetBridge has petitioned this Court for a temporary restraining order to enjoin and restrain Defendant NewMarket from directly or indirectly pledging, encumbering, assigning, transferring, disposing of or otherwise conveying or granting any rights or interests in or to:

(a)     NewMarket's Omeprazole DSI Products, consisting of (a) rapidly dissolving formulations of omeprazole (used for both the treatment and prevention of ulcers), including omeprazole direct systemic introduction (DSI) compositions for use in all non-human animals including especially equine animals, and (b) any revisions, alterations, or improvements to such products (collectively, the "Omeprazole DSI Products), and/or

(b)     NewMarket's IP/Patent Rights relating thereto, including all patents and patent applications, and all divisionals, continuations, continuations-in-part, counterparts, re-examinations, reissues, extensions, registrations, and supplementary or complementary certificates and the like, both domestic and foreign, and items which claim the benefit of priority to any of the foregoing, whether in whole or in part, directly or indirectly owned, licensed, and/or optioned (with the right to grant sub-licenses) by NewMarket or an affiliate thereof, as of the Effective Date (June 27, 2014) of the Exclusive Distribution and License Agreement or during the term of said agreement, which relate to the Omeprazole DSI Products, and their development, manufacture, or use in the Field and in the Territory, as defined below, including, but not limited to, the following:

| Item | Country | Patent Application or Patent No. | Filing Date | Title |
|------|---------|-------------------------------|-------------|-------|
| 1 | US | 61/437763 | 01/31/2011 | |
| 2 | US | 13/343,692; issued as 8,722,636 | 01/04/2012; issued 05/13/2014 | Animal treatments |
| 3 | US | 14/275,019; issued as 10,022,361 | 05/12/2014; issued 07/18/2018 | Animal Treatments |
| 4 | US | 14/275,031; issued as 9,402,835 | 05/12/2014; issued 08/02/2016 | Animal Treatment |
| 5 | WO | PCT/US2012/020242 | 01/04/2012 | Animal Treatment |
| 6 | US | 61/674,435 | 07/23/2012 | |
| 7 | US | 61/678,355 | 01/08/2012 | |
| 8 | US | 61/641,509 | 02.05.2012 | |

2

| Item | Country | Patent Application or Patent No. | Filing Date | Title |
|------|---------|-------------------------------|-------------|-------|
| 9 | WO | PCT/US2012/070031 | 12/17/2012 | Pharmaceutical compositions for direct systemic introduction |
| 10 | US | 14/398,085 | 10/30/2014 | |
| 11 | US | 16/014,290 | 06/21/2018 | |

(collectively, the "IP/Patent Rights"),

in the Field (defined as "the veterinary use of rapidly dissolving formulations of omeprazole in all non-human animals including especially horses and other equine animals") and Territory (defined as "the veterinary market in the United States of America including all of its states, districts, territories, and possessions, including the District of Columbia").

3.     VetBridge has submitted persuasive evidence, through its Verified Petition and Ex Parte Motion for a Temporary Restraining Order, and the Court finds, that:

(a)     The June 27, 2014 Exclusive Distribution and License Agreement (the "Agreement," **Exhibit A** to the Verified Petition) is a valid and enforceable agreement.

(b)     Pursuant to the Agreement, for and in consideration of VetBridge's payment of $4,000,000 to NewMarket, which sums were to be used "solely for direct expenses related to the development of the [Omeprazole DSI] Products," NewMarket:

(1)     Appointed VetBridge as its "sole and exclusive authorized wholesale distributor and reseller to advertise, promote, market, distribute, supply and sell ("Distribute" or "Distribution")" NewMarket's Omeprazole DSI Products in the Field and Territory; and

(2)     Granted VetBridge, "in connection with the Distribution of the [Omeprazole DSI] Products in the Territory, an exclusive, transferable, perpetual and royalty-free right and license to use, sell, offer for sale, import, and Distribute, with the right to sub-license, the IP/Patent Rights in the Field and Territory.

(c)     VetBridge made timely payment to NewMarket of the $4,000,000 due under the Agreement.

3

(d)     The Agreement expressly prohibits NewMarket from assigning, subcontracting, delegating or otherwise transferring any of its rights or obligations under the Agreement, or from contracting with any third parties to perform any of its obligations under the Agreement, without VetBridge's prior written consent.

(e)     Further, given NewMarket's grant to VetBridge of "an exclusive, transferable, perpetual and royalty-free right and license to use, sell, offer for sale, import, and Distribute, with the right to sub-license" NewMarket's IP/Patent Rights within the agreed upon Field and Territory, NewMarket is prohibited from assigning or granting to any other person or entity a license for its IP/Patent Rights in the Field and Territory.

(f)     Additionally, the Agreement, at Paragraph 12(f), expressly prohibits NewMarket from granting any security interests or permitting any liens against its IP/Patent Rights, without VetBridge's prior consent.

(g)     A "change of control," as defined in Paragraph 13(d)(v) of the Agreement, has occurred.

(h)     In the event of a "change of control," pursuant to Paragraph 13(d)(ii) of the Agreement, VetBridge is entitled to:

     (1)     The exclusive right to make and commercialize [the Omeprazole DSI] Products in the Field and in the Territory as granted under the Agreement as well as the right to assume the beneficial position of [NewMarket's] relationship with any Collaborator [including, but not limited to, Collaborators Catalent Pharma Solutions, LLC and Srini Pharmaceuticals of India,] to make and commercialize the [Omeprazole DSI] Product in the Field and in the Territory without further consideration or compensation to [NewMarket's] successor; and

     (2)     A license from [NewMarket] (or its successor as applicable) for all rights to the [Omeprazole DSI] Products, including manufacturing, subject to no more than a maximum running royalty rate of 7.00% of Net Sales (whereby, unless mutually agreed otherwise, "Net Sales" shall correspond to gross revenues received from the sale of [the Omeprazole DSI] Products less sales and/or use taxes actually paid, import and/or export duties actually paid, outbound transportation prepaid or allowed, and amounts allowed or credited due to returns (not to exceed the original billing or invoice amount), with such maximum royalty rate contingent upon [VetBridge] securing no less favorable terms with any [NewMarket] Collaborators as [NewMarket] had obtained.

(i)     VetBridge has requested specific performance of the Agreement, and specifically, enforcement of its rights under Paragraph 13(d)(ii), in Count III of its Verified Petition.

4

(j)    In the absence of the requested temporary restraining order, VetBridge will suffer immediate and irreparable harm, in that, among other things:

    (1)    VetBridge's rights under the Agreement and in NewMarket's Omeprazole DSI Products and the IP/Patent Rights relating thereto are unique, and VetBridge is without an adequate remedy at law; and

    (2)    Any judgment of specific performance, as requested in Count III of the Verified Petition, would be rendered ineffectual, if NewMarket were to directly or indirectly pledge, encumber, assign, transfer, dispose of or otherwise convey or grant any rights or interest in or to its Omeprazole DSI Products and/or its IP/Patent Rights relating thereto to any person or entity, in direct violation of VetBridge's exclusive rights and license in and to the same.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Defendant NewMarket Pharmaceuticals, LLC, together with its officers, managers, members, agents, affiliates, attorneys, and employees, and all other persons in active concert or participation with them, are hereby enjoined and restrained from directly or indirectly pledging, encumbering, assigning, transferring, disposing of or otherwise conveying or granting any rights or interests in or to:

1.    NewMarket's Omeprazole DSI Products, consisting of (a) rapidly dissolving formulations of omeprazole (used for both the treatment and prevention of ulcers), including omeprazole direct systemic introduction (DSI) compositions for use in all non-human animals including especially equine animals, and (b) any revisions, alterations, or improvements to such products (collectively, the "Omeprazole DSI Products), and/or

2.    NewMarket's IP/Patent Rights relating thereto, including all patents and patent applications, and all divisionals, continuations, continuations-in-part, counterparts, re-examinations, reissues, extensions, registrations, and supplementary or complementary certificates and the like, both domestic and foreign, and items which claim the benefit of priority to any of the foregoing, whether in whole or in part, directly or indirectly owned, licensed, and/or optioned (with the right to grant sub-licenses) by NewMarket or an affiliate thereof, as of the Effective Date (June 27, 2014) of the Exclusive Distribution and License Agreement or during the term of said agreement, which relate to the Omeprazole DSI Products, and their development, manufacture, or use in the Field and in the Territory, as defined below, including, but not limited to, the following:

5

| Item | Country | Patent Application or Patent No. | Filing Date | Title |
|------|---------|-------------------------------|-------------|-------|
| 1 | US | 61/437763 | 01/31/2011 | |
| 2 | US | 13/343,692; issued as 8,722,636 | 01/04/2012; issued 05/13/2014 | Animal treatments |
| 3 | US | 14/275,019; issued as 10,022,361 | 05/12/2014; issued 07/18/2018 | Animal Treatments |
| 4 | US | 14/275,031; issued as 9,402,835 | 05/12/2014; issued 08/02/2016 | Animal Treatment |
| 5 | WO | PCT/US2012/020242 | 01/04/2012 | Animal Treatment |
| 6 | US | 61/674,435 | 07/23/2012 | |
| 7 | US | 61/678,355 | 01/08/2012 | |
| 8 | US | 61/641,509 | 02.05.2012 | |
| 9 | WO | PCT/US2012/070031 | 12/17/2012 | Pharmaceutical compositions for direct systemic introduction |
| 10 | US | 14/398,085 | 10/30/2014 | |
| 11 | US | 16/014,290 | 06/21/2018 | |

(collectively, the "IP/Patent Rights"),

in the Field (defined as "the veterinary use of rapidly dissolving formulations of omeprazole in all non-human animals including especially horses and other equine animals") and Territory (defined as "the veterinary market in the United States of America including all of its states, districts, territories, and possessions, including the District of Columbia").

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT:

VetBridge shall post a cash or surety bond with the Clerk of the Circuit Court of Buchanan County, Missouri, in the sum of $ 1000.00 .

6

IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT:

A hearing is set on Plaintiff's motion for a preliminary injunction made in its Verified Petition for **September 14**, 2018 at **9:30** o'clock a.m./p.m. in Division **1** of the Circuit Court for Buchanan County, Missouri.

This Temporary Restraining Order is entered at **9:19** a.m./p.m. and will remain in effect for ten (10) days, as the Court fixes or until further Order of this Court.

At the preliminary injunction hearing the Court will consider whether to award VetBridge its attorney's fees, court costs, and other costs incurred in this proceeding, pursuant to Missouri law and in accordance with the Agreement.

IT IS SO ORDERED.

**8/05/2018**
Date

Circuit Court Judge



**WALSH**
PIZZI
O'REILLY
FALANGA

**One Riverfront Plaza**

1037 Raymond Blvd, Suite 600
Newark, NJ 07102

T: 973.757.1100
F: 973.757.1090

**WALSH.LAW**

Joel A. Pisano
Direct Dial: (973) 757-1035
jpisano@walsh.law

September 7, 2018

<u>VIA ECF</u>
Honorable Michael A. Shipp, U.S.D.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Federal Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

> Re:   ***NewMarket Pharmaceuticals, LLC v. VetPharm, Inc. et al.***
> <u>Civil Action No. 3:17-cv-01852-MAS-TJB</u>

Dear Judge Shipp:

This firm, together with Cadwalader, Wickersham & Taft LLP, represents Plaintiff NewMarket Pharmaceuticals, LLC ("Plaintiff" or "NewMarket") in the above-referenced matter. We write to advise this Court of a recently-filed lawsuit against NewMarket by a company called VetBridge Product Development Subsidiary ("VetBridge").  (Exhibit 1).[1]  VetBridge would be a partial distributor of NewMarket's drug if its drug is ever approved by the FDA.

In *VetBridge v. NewMarket*, the Circuit Court of Buchanan County, Missouri (18BU-CV03640) issued an Ex Parte Temporary Restraining Order against NewMarket from "directly or indirectly pledging, encumbering, assigning, transferring, disposing of or otherwise conveying or granting any rights or interests in or to [NewMarket's Intellectual Property]".   (Exhibit 2). NewMarket has attached the filings from the Missouri State Court for the convenience of this Court. (*See* Exhibits 1-3).  NewMarket respectfully notes the following facts to the extent the facts are relevant to any decision forthcoming from this Court:

- VetBridge claims that "NewMarket has failed to and refused to perform and provide the funding required to perform the steps and tasks necessary to obtain FDA approval from the CVM and provide VetBridge with [the product]."  (Exhibit 1, Complaint at ¶12).

- VetBridge argued that it was entitled to a TRO because "NewMarket does not have the financial resources to remain in business, let alone pursue the required FDA

---

[1]   Exhibit A attached to the Missouri State Court Complaint is confidential.  It appears as if Exhibit A was made publicly available by virtue of being electronically filed. As NewMarket endeavors to ascertain whether or not VetBridge has breached confidentiality requirements NewMarket respectfully requests that the Court and VetPharm keep Exhibit A under seal.

Honorable Michael A. Shipp, U.S.D.J.
September 7, 2018
Page 2

approval that is necessary for the manufacture and sale of [the product]."  (*Id.* at ¶48).

• VetBridge claims that it is entitled to damages equal to the "net profits VetBridge would have earned from the sale and distribution … in an amount to be determined at trial, but reasonably and conservatively estimated to be in the amount in excess of $81,000,000.  (*Id.* at ¶13).

NewMarket did not receive any notice of the Complaint or TRO until yesterday.  To the extent the Missouri State Court case is not dismissed NewMarket will seek to consolidate that action with the present case in this Court.

We thank the Court for its continued attention to this matter, and are available should Your Honor or Your Honor's staff require anything further or have any questions.

Respectfully submitted,

*s/Joel A. Pisano*

Joel A. Pisano

cc:     All Counsel of Record (via E-mail)

# EXHIBIT 2

IN THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI
(DIVISION NO. 1)

| | | |
|---|---|---|
| VetBridge Product Development Subsidiary I (NM-OMP), LLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No.  18BU-CV03640 |
| vs. | ) ) | |
| NewMarket Pharmaceuticals, LLC, | ) ) ) | |
| Defendant. | ) ) | |

## TEMPORARY RESTRAINING ORDER

Before the Court is Plaintiff VetBridge Product Development Subsidiary I (NM-OMP), LLC's ("VetBridge"), Ex Parte Motion for a Temporary Restraining Order, which seeks a temporary restraining order against Defendant NewMarket Pharmaceuticals, LLC ("Defendant" or "NewMarket").  VetBridge has filed a Verified Petition for Damages, Specific Performance & Injunctive Relief and Exhibit A thereto (the "Verified Petition").

Having now considered the information, pleadings and evidence before it, and being fully advised in the premises, the Court finds as follows:

1.    Based upon the statements of counsel and the sworn statement of Kevin Speltz, VetBridge's managing member, in the Verified Petition, pursuant to Mo. R. Civ. P. 92.02(b)(2), the Court finds that a temporary restraining order may properly be issued without notice to NewMarket.  Specifically, the Court finds that there is a significant risk that providing notice of this proceeding under Mo. R. Civ. P. 92.02(a)(3) would provide NewMarket with an opportunity, prior to the issuance of a temporary restraining order, to directly or indirectly pledge, encumber, assign, transfer, dispose of or otherwise convey or grant rights or interests in or to its

Omeprazole DSI Products and/or the IP/Patent Rights relating thereto, as defined below, thereby defeating the very purpose of the requested relief.

2.       VetBridge has petitioned this Court for a temporary restraining order to enjoin and restrain Defendant NewMarket from directly or indirectly pledging, encumbering, assigning, transferring, disposing of or otherwise conveying or granting any rights or interests in or to:

(a)       NewMarket's Omeprazole DSI Products, consisting of (a) rapidly dissolving formulations of omeprazole (used for both the treatment and prevention of ulcers), including omeprazole direct systemic introduction (DSI) compositions for use in all non-human animals including especially equine animals, and (b) any revisions, alterations, or improvements to such products (collectively, the "Omeprazole DSI Products), and/or

(b)       NewMarket's IP/Patent Rights relating thereto, including all patents and patent applications, and all divisionals, continuations, continuations-in-part, counterparts, re-examinations, reissues, extensions, registrations, and supplementary or complementary certificates and the like, both domestic and foreign, and items which claim the benefit of priority to any of the foregoing, whether in whole or in part, directly or indirectly owned, licensed, and/or optioned (with the right to grant sub-licenses) by NewMarket or an affiliate thereof, as of the Effective Date (June 27, 2014) of the Exclusive Distribution and License Agreement or during the term of said agreement, which relate to the Omeprazole DSI Products, and their development, manufacture, or use in the Field and in the Territory, as defined below, including, but not limited to, the following:

| Item | Country | Patent Application or Patent No. | Filing Date | Title |
|------|---------|--------------------------------|-------------|-------|
| 1 | US | 61/437763 | 01/31/2011 | |
| 2 | US | 13/343,692; issued as 8,722,636 | 01/04/2012; issued 05/13/2014 | Animal treatments |
| 3 | US | 14/275,019; issued as 10,022,361 | 05/12/2014; issued 07/18/2018 | Animal Treatments |
| 4 | US | 14/275,031; issued as 9,402,835 | 05/12/2014; issued 08/02/2016 | Animal Treatment |
| 5 | WO | PCT/US2012/020242 | 01/04/2012 | Animal Treatment |
| 6 | US | 61/674,435 | 07/23/2012 | |
| 7 | US | 61/678,355 | 01/08/2012 | |
| 8 | US | 61/641,509 | 02.05.2012 | |

2

| Item | Country | Patent Application or Patent No. | Filing Date | Title |
|------|---------|----------------------------------|-------------|-------|
| 9 | WO | PCT/US2012/070031 | 12/17/2012 | Pharmaceutical compositions for direct systemic introduction |
| 10 | US | 14/398,085 | 10/30/2014 | |
| 11 | US | 16/014,290 | 06/21/2018 | |

(collectively, the "IP/Patent Rights"),

in the Field (defined as "the veterinary use of rapidly dissolving formulations of omeprazole in all non-human animals including especially horses and other equine animals") and Territory (defined as "the veterinary market in the United States of America including all of its states, districts, territories, and possessions, including the District of Columbia").

3.    VetBridge has submitted persuasive evidence, through its Verified Petition and Ex Parte Motion for a Temporary Restraining Order, and the Court finds, that:

(a)    The June 27, 2014 Exclusive Distribution and License Agreement (the "Agreement," **Exhibit A** to the Verified Petition) is a valid and enforceable agreement.

(b)    Pursuant to the Agreement, for and in consideration of VetBridge's payment of $4,000,000 to NewMarket, which sums were to be used "solely for direct expenses related to the development of the [Omeprazole DSI] Products," NewMarket:

(1)    Appointed VetBridge as its "sole and exclusive authorized wholesale distributor and reseller to advertise, promote, market, distribute, supply and sell ("Distribute" or "Distribution")" NewMarket's Omeprazole DSI Products in the Field and Territory; and

(2)    Granted VetBridge, "in connection with the Distribution of the [Omeprazole DSI] Products in the Territory, an exclusive, transferable, perpetual and royalty-free right and license to use, sell, offer for sale, import, and Distribute, with the right to sub-license, the IP/Patent Rights in the Field and Territory.

(c)    VetBridge made timely payment to NewMarket of the $4,000,000 due under the Agreement.

3

(d)     The Agreement expressly prohibits NewMarket from assigning, subcontracting, delegating or otherwise transferring any of its rights or obligations under the Agreement, or from contracting with any third parties to perform any of its obligations under the Agreement, without VetBridge's prior written consent.

(e)     Further, given NewMarket's grant to VetBridge of "an exclusive, transferable, perpetual and royalty-free right and license to use, sell, offer for sale, import, and Distribute, with the right to sub-license" NewMarket's IP/Patent Rights within the agreed upon Field and Territory, NewMarket is prohibited from assigning or granting to any other person or entity a license for its IP/Patent Rights in the Field and Territory.

(f)     Additionally, the Agreement, at Paragraph 12(f), expressly prohibits NewMarket from granting any security interests or permitting any liens against its IP/Patent Rights, without VetBridge's prior consent.

(g)     A "change of control," as defined in Paragraph 13(d)(v) of the Agreement, has occurred.

(h)     In the event of a "change of control," pursuant to Paragraph 13(d)(ii) of the Agreement, VetBridge is entitled to:

    (1)     The exclusive right to make and commercialize [the Omeprazole DSI] Products in the Field and in the Territory as granted under the Agreement as well as the right to assume the beneficial position of [NewMarket's] relationship with any Collaborator [including, but not limited to, Collaborators Catalent Pharma Solutions, LLC and Srini Pharmaceuticals of India,] to make and commercialize the [Omeprazole DSI] Product in the Field and in the Territory without further consideration or compensation to [NewMarket's] successor; and

    (2)     A license from [NewMarket] (or its successor as applicable) for all rights to the [Omeprazole DSI] Products, including manufacturing, subject to no more than a maximum running royalty rate of 7.00% of Net Sales (whereby, unless mutually agreed otherwise, "Net Sales" shall correspond to gross revenues received from the sale of [the Omeprazole DSI] Products less sales and/or use taxes actually paid, import and/or export duties actually paid, outbound transportation prepaid or allowed, and amounts allowed or credited due to returns (not to exceed the original billing or invoice amount), with such maximum royalty rate contingent upon [VetBridge] securing no less favorable terms with any [NewMarket] Collaborators as [NewMarket] had obtained.

(i)     VetBridge has requested specific performance of the Agreement, and specifically, enforcement of its rights under Paragraph 13(d)(ii), in Count III of its Verified Petition.

(j)     In the absence of the requested temporary restraining order, VetBridge will suffer immediate and irreparable harm, in that, among other things:

    (1)     VetBridge's rights under the Agreement and in NewMarket's Omeprazole DSI Products and the IP/Patent Rights relating thereto are unique, and VetBridge is without an adequate remedy at law; and

    (2)     Any judgment of specific performance, as requested in Count III of the Verified Petition, would be rendered ineffectual, if NewMarket were to directly or indirectly pledge, encumber, assign, transfer, dispose of or otherwise convey or grant any rights or interest in or to its Omeprazole DSI Products and/or its IP/Patent Rights relating thereto to any person or entity, in direct violation of VetBridge's exclusive rights and license in and to the same.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Defendant NewMarket Pharmaceuticals, LLC, together with its officers, managers, members, agents, affiliates, attorneys, and employees, and all other persons in active concert or participation with them, are hereby enjoined and restrained from directly or indirectly pledging, encumbering, assigning, transferring, disposing of or otherwise conveying or granting any rights or interests in or to:

1.     NewMarket's Omeprazole DSI Products, consisting of (a) rapidly dissolving formulations of omeprazole (used for both the treatment and prevention of ulcers), including omeprazole direct systemic introduction (DSI) compositions for use in all non-human animals including especially equine animals, and (b) any revisions, alterations, or improvements to such products (collectively, the "Omeprazole DSI Products), and/or

2.     NewMarket's IP/Patent Rights relating thereto, including all patents and patent applications, and all divisionals, continuations, continuations-in-part, counterparts, re-examinations, reissues, extensions, registrations, and supplementary or complementary certificates and the like, both domestic and foreign, and items which claim the benefit of priority to any of the foregoing, whether in whole or in part, directly or indirectly owned, licensed, and/or optioned (with the right to grant sub-licenses) by NewMarket or an affiliate thereof, as of the Effective Date (June 27, 2014) of the Exclusive Distribution and License Agreement or during the term of said agreement, which relate to the Omeprazole DSI Products, and their development, manufacture, or use in the Field and in the Territory, as defined below, including, but not limited to, the following:

| Item | Country | Patent Application or Patent No. | Filing Date | Title |
|------|---------|----------------------------------|-------------|-------|
| 1 | US | 61/437763 | 01/31/2011 | |
| 2 | US | 13/343,692; issued as 8,722,636 | 01/04/2012; issued 05/13/2014 | Animal treatments |
| 3 | US | 14/275,019; issued as 10,022,361 | 05/12/2014; issued 07/18/2018 | Animal Treatments |
| 4 | US | 14/275,031; issued as 9,402,835 | 05/12/2014; issued 08/02/2016 | Animal Treatment |
| 5 | WO | PCT/US2012/020242 | 01/04/2012 | Animal Treatment |
| 6 | US | 61/674,435 | 07/23/2012 | |
| 7 | US | 61/678,355 | 01/08/2012 | |
| 8 | US | 61/641,509 | 02.05.2012 | |
| 9 | WO | PCT/US2012/070031 | 12/17/2012 | Pharmaceutical compositions for direct systemic introduction |
| 10 | US | 14/398,085 | 10/30/2014 | |
| 11 | US | 16/014,290 | 06/21/2018 | |

(collectively, the "IP/Patent Rights"),

in the Field (defined as "the veterinary use of rapidly dissolving formulations of omeprazole in all non-human animals including especially horses and other equine animals") and Territory (defined as "the veterinary market in the United States of America including all of its states, districts, territories, and possessions, including the District of Columbia").

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT:

VetBridge shall post a cash or surety bond with the Clerk of the Circuit Court of Buchanan County, Missouri, in the sum of $ _1000.00_ .

6

IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT:

A hearing is set on Plaintiff's motion for a preliminary injunction made in its Verified Petition for September 14, 2018 at 9:30 o'clock a.m./p.m. in Division 1 of the Circuit Court for Buchanan County, Missouri.

This Temporary Restraining Order is entered at 9:19 a.m./p.m. and will remain in effect for ten (10) days, as the Court fixes or until further Order of this Court.

At the preliminary injunction hearing the Court will consider whether to award VetBridge its attorney's fees, court costs, and other costs incurred in this proceeding, pursuant to Missouri law and in accordance with the Agreement.

IT IS SO ORDERED.

9/05/2018
Date

_Melissa Dancyer_
Circuit Court Judge

7

# EXHIBIT 3

Electronically Filed - Buchanan - August 29, 2018 - 08:54 AM

## IN THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI
## (DIVISION NO. ___ )

VetBridge Product Development Subsidiary I   )
(NM-OMP), LLC,   )
   )
         Plaintiff,   )   Case No. _____
   )
vs.   )
   )
NewMarket Pharmaceuticals, LLC,   )
   )
         Defendant.   )

## EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff VetBridge Product Development Subsidiary I (NM-OMP), LLC ("VetBridge"), by and through counsel, and pursuant to Missouri Rule of Civil Procedure 92.02(b), moves the Court for a temporary restraining order, without notice, to enjoin and restrain Defendant NewMarket Pharmaceuticals, LLC ("Defendant" or "NewMarket"), in breach of VetBridge's exclusive distribution rights and license granted under the the parties' June 27, 2014 Exclusive Distribution and License Agreement ("Agreement"), attached as **Exhibit A** to VetBridge's Verified Petition for Damages, Specific Performance & Injunctive Relief ("Verified Petition"), from directly or indirectly pledging, encumbering, assigning, transferring, disposing of or otherwise conveying or granting any rights or interests in or to:

1. NewMarket's Omeprazole DSI Products, consisting of (a) rapidly dissolving formulations of omeprazole (used for both the treatment and prevention of ulcers), including omeprazole direct systemic introduction (DSI) compositions for use in all non-human animals including especially equine animals, and (b) any revisions, alterations, or improvements to such products (collectively, the "Omeprazole DSI Products), and/or

Electronically Filed - Buchanan - August 29, 2018 - 08:54 AM

2.      NewMarket's IP/Patent Rights relating thereto, including all patents and patent applications, and all divisionals, continuations, continuations-in-part, counterparts, re-examinations, reissues, extensions, registrations, and supplementary or complementary certificates and the like, both domestic and foreign, and items which claim the benefit of priority to any of the foregoing, whether in whole or in part, directly or indirectly owned, licensed, and/or optioned (with the right to grant sub-licenses) by NewMarket or an affiliate thereof, as of the Effective Date of the Agreement (June 27, 2014) or during the term of said Agreement, which relate to the Omeprazole DSI Products, and their development, manufacture, or use, including, but not limited to, the following:

| Item | Country | Patent Application or Patent No. | Filing Date | Title |
|------|---------|-------------------------------|-------------|-------|
| 1 | US | 61/437763 | 01/31/2011 | |
| 2 | US | 13/343,692; issued as 8,722,636 | 01/04/2012; issued 05/13/2014 | Animal treatments |
| 3 | US | 14/275,019; issued as 10,022,361 | 05/12/2014; issued 07/18/2018 | Animal Treatments |
| 4 | US | 14/275,031; issued as 9,402,835 | 05/12/2014; issued 08/02/2016 | Animal Treatment |
| 5 | WO | PCT/US2012/020242 | 01/04/2012 | Animal Treatment |
| 6 | US | 61/674,435 | 07/23/2012 | |
| 7 | US | 61/678,355 | 01/08/2012 | |
| 8 | US | 61/641,509 | 02.05.2012 | |
| 9 | WO | PCT/US2012/070031 | 12/17/2012 | Pharmaceutical compositions for direct systemic introduction |
| 10 | US | 14/398.085 | 10/30/2014 | |
| 11 | US | 16/014,290 | 06/21/2018 | |

(collectively, the "IP/Patent Rights"),

2

Electronically Filed - Buchanan - August 29, 2018 - 08:54 AM

in the Field (consisting of the veterinary use of rapidly dissolving formulations of omeprazole in all non-human animals including especially horses and other equine animals) and Territory (consisting of the veterinary market in the United States of America including all of its states, districts, territories, and possessions, including the District of Columbia).

In support of this Motion, VetBridge incorporates by reference its Verified Petition, which is being filed concurrently herewith, as though fully set forth herein.

WHEREFORE, for the reasons set forth in its Verified Petition, Plaintiff VetBridge Product Development Subsidiary I (NM-OMP), LLC respectfully requests that the Court grant this Motion and enter a Temporary Restraining Order, temporarily enjoining and restraining Defendant VetBridge Pharmaceuticals, LLC, as set forth in the proposed Temporary Restraining Order being submitted herewith.

Dated:   August 28, 2018.                    Respectfully submitted by,

                                             LATHROP & GAGE LLP

                                             BY:    *Greer S. Lang*
                                             Greer S. Lang          MO #40107
                                             Brian W. Fields        MO #45704
                                             2345 Grand Boulevard, Suite 2200
                                             Kansas City, Missouri  64108-2618
                                             Phone: 816.292.2000
                                             Fax: 816.292.2001
                                             glang@lathropgage.com
                                             bfields@lathropgage.com

                                             **Attorneys for Plaintiff**

3

Joel A. Pisano
Selina M. Ellis
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd, Suite 600
Newark, NJ 07102
(973) 757-1100

*Of Counsel*
Robert M. Pollaro
John T. Moehringer
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
(212) 504-6000

*Attorneys for Plaintiff*
*NewMarket Pharmaceuticals, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NEWMARKET PHARMACEUTICALS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>VETPHARM, INC., a New York corporation; DENNI O. DAY; an individual; and PRELUDE DYNAMICS, LLC, a Texas limited liability company,<br><br>Defendants. | Civil Action No. 3:17-cv-01852 (MAS-TJB)<br><br>**NOTICE OF MOTION TO SEAL**<br><br>**Return Date: November 5, 2018**<br><br>*Filed Electronically* |

**PLEASE TAKE NOTICE** that on November 5, 2018, or as soon thereafter as counsel may be heard, the undersigned, attorneys for Plaintiff NewMarket Pharmaceuticals, LLC ("Plaintiff") shall move before the Honorable Tonianne J. Bongiovanni, U.S.M.J., at the Clarkson S. Fischer Building & U.S. Courthouse, 402 East State Street, Trenton, NJ 08608, for the entry of an Order pursuant to Local Civil Rule 5.3(c) to Seal the following filings or portions thereof:

1. The entirety of Exhibit 1 to Plaintiff's September 7, 2018 Letter to the Hon.

   Michael A. Shipp, U.S.D.J. (D.E. 88); and

**Lang Dec., EXHIBIT C**

2.   VetPharm, Inc.'s September 11, 2018 Letter to the Hon. Michael A. Shipp,

U.S.D.J. (D.E. 90).

**PLEASE TAKE FURTHER NOTICE THAT** the Plaintiff shall rely upon the

accompanying Proposed Findings of Fact and Conclusions of Law, Declaration of Joel A. Pisano

with Exhibit 1 annexed thereto; and all papers submitted herewith.

**PLEASE TAKE FURTHER NOTICE THAT** that Defendants do not object to this

motion.

**PLEASE TAKE FURTHER NOTICE THAT** a proposed form of Order is also

submitted for the Court's consideration.

Respectfully submitted,                          Dated:  September 26, 2018

By: *s/Joel A. Pisano*
Joel A. Pisano
Selina M. Ellis
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd, Suite 600
Newark, NJ 07102
(973) 757-1100

*Of Counsel*
Robert M. Pollaro
John T. Moehringer
CADWALADER, WICKERSHAM & TAFT
LLP
200 Liberty Street
New York, NY 10281
(212) 504-6000

*Attorneys for Plaintiff*
*NewMarket Pharmaceuticals, LLC*

Joel A. Pisano
Selina M. Ellis
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd, Suite 600
Newark, NJ 07102
(973) 757-1100

*Of Counsel*
Robert M. Pollaro
John T. Moehringer
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
(212) 504-6000

*Attorneys for Plaintiff*
*NewMarket Pharmaceuticals, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEWMARKET PHARMACEUTICALS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>VETPHARM, INC., a New York corporation; DENNI O. DAY; an individual; and PRELUDE DYNAMICS, LLC, a Texas limited liability company,<br><br>Defendants. | Civil Action No. 3:17-cv-01852 (MAS-TJB)<br><br>**DECLARATION OF JOEL A. PISANO IN SUPPORT OF MOTION TO SEAL**<br><br>*Filed Electronically* |

I, Joel A. Pisano, do hereby declare as follows:

1.      I am an attorney with Walsh Pizzi O'Reilly Falanga LLP.  I am fully familiar with the facts set forth herein.

2.      I submit this Declaration in support of Plaintiff's Motion to Seal the following filings or portions thereof: (1) The entirety of Exhibit 1 to Plaintiff's September 7, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 88); and (2) VetPharm, Inc.'s September 11, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 90).  Specifically, Plaintiff seeks to seal the select portions of the above documents identified in the Index attached hereto as

1

Exhibit 1.  These select portions of the above documents are collectively referred to herein as the "Confidential Information."

3.    In particular, the Confidential Information discloses Plaintiff's proprietary commercial and business interests, including information relevant to Plaintiff's partial distribution and license agreement with a third party that the parties maintain in confidence in light of the highly competitive marketplace.  Disclosure of this information would result in substantial harm to Plaintiff and/or third party's ability to compete in the marketplace.

4.    It is my understanding that the Confidential Information contain information regarding the partial distribution and license agreement and have been designated and/or otherwise treated as confidential by Plaintiff and/or third party.

5.    There is a substantial public interest in ensuring that non-public information relating to Plaintiff and/or third party's competitively sensitive and propriety business information remains confidential and will not become public at a later date.

6.    The non-public and competitively sensitive and propriety business information of Plaintiff and/or third party, from which competitors could identify Plaintiff and/or third party's commercial interests embodies content which, if disclosed, would likely harm Plaintiff and/or third party's competitive standing in the marketplace.

7.    Plaintiff and/or third party have a continuing interest to ensure that their confidential and proprietary non-public information remains undisclosed.  If this information were to become available, Plaintiff and/or third party's confidential business information will be publicized. Plaintiff and/or third party operate in a competitive marketplace, one in which competitors may exploit the information for their own benefit and to Plaintiff and/or third party's detriment. If other, more well established competitors were able to use the information contained in the Confidential Information, that would, at the very least, cause Plaintiff and/or

2

third party to suffer serious and irreparable financial injury.

8. There is no less restrictive alternative other than sealing portions of the above-listed documents. This is the least restrictive alternative available to protect the nonpublic highly confidential information contained in the documents.

 I declare that the foregoing statements made by me are true and am aware that if any of the foregoing statements made by me are willingly false that I am subject to punishment.

Dated: September 26, 2018        *s/Joel A. Pisano*
                    Joel A. Pisano

# EXHIBIT 1

**INDEX IN SUPPORT OF JOINT MOTION TO SEAL**

| Material/Title of Document | Basis for Sealing (Legitimate Private or Public Interest Which Warrant the Relief Sought) | Clearly Defined and Serious Injury that Would Result if Relief is Not Granted | Why a Less Restrictive Alternative to the Relief Sought is Not Available | Any Prior Order Sealing the Same Materials in the Pending Action | Party in Opposition to Sealing, if any, and Basis |
|---|---|---|---|---|---|
| Exhibit 1 to Plaintiff's September 7, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 88); | | | | | |
| Exhibit 1 | In its entirety. | Plaintiff requests redaction of its commercially sensitive, proprietary business information relating Plaintiff's partial distribution and license agreement with a third party.

*See* Declaration of Joel A. Pisano ("Pisano Decl.") | Plaintiff and/or third party have a continuing interest to ensure that their confidential and proprietary non-public information remains undisclosed. If this information were to become available, Plaintiff and/or third party's confidential business information will be publicized. Plaintiff and/or third party operate in a competitive marketplace, one in which competitors may exploit the information for their own benefit and to Plaintiff and/or third party's detriment. If other, more well established competitors were able to use the information contained in the Confidential Information, | There is no less restrictive alternative other than sealing portions of the below-listed documents. This is the least restrictive alternative available to protect the nonpublic highly confidential information contained in the documents. See Pisano Decl.

Additionally, redacted versions of the documents have been filed on the docket consistent with this Index. | Sealing Orders D.E. 25, D.E. 82. | None |

1

| Material/Title of Document | | Basis for Sealing (Legitimate Private or Public Interest Which Warrant the Relief Sought) | Clearly Defined and Serious Injury that Would Result if Relief is Not Granted | Why a Less Restrictive Alternative to the Relief Sought is Not Available | Any Prior Order Sealing the Same Materials in the Pending Action | Party in Opposition to Sealing, if any, and Basis |
|---|---|---|---|---|---|---|
| | | | that would, at the very least, cause Plaintiff and/or third party to suffer serious and irreparable financial injury. *See* Pisano Decl. | | | |
| **VetPharm, Inc.'s September 11, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 90)** | | | | | | |
| Page 2 | First full paragraph, line 2, from "assertions" until the end of the paragraph.<br><br>Second full paragraph, line 4, from "services" until "As VetBridge's" on line 7.<br><br>Footnote 2 in its entirety. | *See* Explanation Above | *See* Explanation Above | *See* Explanation Above | *See* Above | None |

2

Joel A. Pisano
Selina M. Ellis
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd, Suite 600
Newark, NJ 07102
(973) 757-1100

*Of Counsel*
Robert M. Pollaro
John T. Moehringer
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
(212) 504-6000

*Attorneys for Plaintiff*
*NewMarket Pharmaceuticals, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEWMARKET PHARMACEUTICALS, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> VETPHARM, INC., a New York corporation; DENNI O. DAY; an individual; and PRELUDE DYNAMICS, LLC, a Texas limited liability company, <br><br> Defendants. | Civil Action No. 3:17-cv-01852 (MAS-TJB) <br><br> **PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION TO SEAL** <br><br> *Filed Electronically* |

Pursuant to Local Civil Rule 5.3(c), Plaintiff NewMarket Pharmaceuticals, LLC ("Plaintiff") hereby submits the Proposed Findings of Fact and Conclusions of Law in support of its Motion to Seal the following filings or portions thereof: (1) The entirety of Exhibit 1 to Plaintiff's September 7, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 88); and (2) VetPharm, Inc.'s September 11, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 90). Specifically, Plaintiff seeks to seal the select portions of the above documents identified in the Index attached as Exhibit 1 to the Declaration of Joel A. Pisano ("Pisano Decl."). These select portions of the above referenced documents are collectively referred to herein as the

"Confidential Information." Local Civil Rule 5.3(c) places the burden of proof on the moving party as to why a motion to seal or otherwise restrict public access should be granted. Specifically, it requires a showing of:

> (1)   the nature of the materials or proceedings at issue;
> (2)   the legitimate private or public interest which warrants the relief sought;
> (3)   the clearly defined and serious injury that would result if the relief sought is not granted; and
> (4)   why a less restrictive alternative to the relief sought is not available.

Set forth below are the findings of fact and conclusions of law addressing each of the elements of Local Civil Rule 5.3(c). These findings of fact and conclusions of law support the granting of Plaintiff's Motion to Seal the Confidential Information identified above:

## I.   The Nature of the Materials or Proceedings at Issue

### A.   Findings of Fact

1.)   The Confidential Information discloses Plaintiff's proprietary commercial and business interests, including information relevant to Plaintiff's partial distribution and license agreement with a third party that the parties maintain in confidence in light of the highly competitive marketplace. Disclosure of this information would result in substantial harm to Plaintiff and/or third party's ability to compete in the marketplace. (*See* Pisano Decl.[1])

### B.   Conclusions of Law

2.)   This Court has the power to seal where confidential information may be disclosed to the public. Fed. R. Civ. P. 26(c)(1)(G) allows the court to protect materials containing "trade secret[s] or other confidential research, development, or commercial information [,]" upon

---

[1] "Pisano Decl." refer to the Declaration of Joel A. Pisano in Support of the Motion to Seal, submitted herewith.

motion by a party, to prevent harm to a litigant's competitive standing in the marketplace.  *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 889-91 (E.D. Pa. 1981).

This Court has permitted the sealing of confidential business information in other cases.  *See, e.g., Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) ("courts may deny access to judicial records, for example, where they are sources of business information that might harm a litigant's competitive standing."); *Goldenberg v. Indel, Inc.*, No. 09-5202, 2012 U.S. Dist. LEXIS 479, at *8-12 (D.N.J. Jan. 3, 2012) (permitting the sealing of business agreements containing commercially sensitive and proprietary non-public business information and confidential financial information); *Hershey Co. v. Promotion in Motion, Inc.*, No. 07-1601, 2010 U.S. Dist. LEXIS 43322, at *6-10 (D.N.J. May 4, 2012) (protecting from disclosure proprietary and commercially sensitive financial and sales information); *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, No. 08-1331, 2009 U.S. Dist. LEXIS 65031, at *3-4 (D.N.J. July 28, 2009) (granting motion to seal information that constitutes "trade secrets, non-public business and marketing plans, customer lists, [and] research and development."); *Osteotech, Inc. v. Regenerations Tech., Inc.*, No. 06-4249, 2009 U.S. Dist. LEXIS 3943, at *2-4 (D.N.J. Jan. 21, 2009) (protecting from disclosure technical business information regarding proprietary technology); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, No. 03-6025, 2007 U.S. Dist. LEXIS 51828, at *18-24 (D.N.J. July 18, 2007) (protecting from disclosure specific confidential sales, costs and profit information); *In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 667-68 (D.N.J. 2004) (protecting from disclosure a party's confidential processes, chemical formulas and specifications, and research information).

II.     **The Legitimate Private or Public Interest Which Warrants the Relief Sought**

   A.     **Findings of Fact**

   3.)     The Confidential Information sought to be sealed contains information that Plaintiff and/or third party consider confidential and proprietary information. The Confidential Information is presently confidential and unavailable to the public. Counsel for Plaintiff has submitted Declaration stating that Plaintiff and/or third party have an interest in not publicly disclosing this information and rely on such information to advance their business strategies and to maintain a competitive advantage.  (*See* Pisano Decl.).

   4.)     Plaintiff and/or third party have a continuing interest to ensure that their confidential and proprietary non-public information remains undisclosed.  If this information were to become available, Plaintiff and/or third party's competitors could and would likely use that information in the highly competitive marketplace.  (*Id.*).

   B.     **Conclusions of Law**

   5.)     Courts have recognized that the presumption of public access is not absolute and may be rebutted.  *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 662 (3d Cir. 1991).  "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Littlejohn*, 851 F.2d at 678 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

   6.)     Courts may deny access to and seal a document when it encompasses business information that might harm a litigant's competitive standing.  *See Littlejohn*, 851 F.2d at 678 (citations omitted).

7.)     Courts in this District have held that the inclusion of trade secrets and other confidential information in documents warrants the sealing of such documents.  "A well-settled exception to the right of access is the 'protection of a party's interest in confidential commercial information, such as a trade secret, where there is a sufficient threat of irreparable harm.'"  *In re Gabapentin Patent Litig.*, 312 F. Supp. 2d at 664 (citation omitted).  As such, "[t]he presence of trade secrets or other confidential information weighs against public access and, accordingly, documents containing such information may be protected from disclosure."  *Id.* (citations omitted).

## III.   The Clearly Defined and Serious Injury that Would Result if the Relief Sought Is Not Granted

### A.     Findings of Fact

8.)     In light of its reference to, and disclosure of, non-public information that is otherwise unavailable, the public disclosure of the Confidential Information poses a substantial risk of harm to Plaintiff and/or third party's legitimate proprietary interests and competitive position.  (*See* Pisano Decl.)

9.)     Disclosure of such specific highly confidential or confidential information would permit competitors to undercut or otherwise counter Plaintiff and/or third party's commercial performance.  (*Id.*).

10.)    Competitors would improperly benefit from the disclosure of Plaintiff and/or third party's non-public information and would likely use the Confidential Information to unfairly enhance their market positions.  (*Id.*).

### B.     Conclusions of Law

5

11.)   This Court has discretion to balance the factors for and against access to court documents.  *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 781 (3d Cir. 1994).

12.)   Protection of a party's interest in confidential commercial information, such as a trade secret, is a sufficient threat of irreparable harm, and is clearly defined as a serious injury. *See Publicker*, 733 F.2d at 1071; *see also Vista India, Inc. v. Raaga, LLC*, No. 07-1262, 2008 WL 834399, at *3-4 (D.N.J. Mar. 27, 2008).

**IV.    Why a Less Restrictive Alternative to the Relief Sought Is Not Available**

**A.    Findings of Fact**

13.)   Once confidential information is disclosed to the public, it can never again be sealed or maintained as private.   Moreover, Plaintiff's request to seal the Confidential Information is narrowly tailored to the specific confidential and proprietary information identified above.

14.)   The disclosure of the Confidential Information would pose a financial and competitive risk to Plaintiff and/or third party.  (*See* Pisano Decl.). Accordingly, the only way to protect this interest is to seal the Confidential Information.  Plaintiff has carefully redacted only the specific pages, lines, and words containing the Confidential Information.  Plaintiff's request to seal the Confidential Information is narrowly tailored to the specific confidential and proprietary information that Plaintiff has redacted.

**B.      Conclusions of Law**

15.)      Under Local Civil Rule 5.3(c)(2), a party seeking to seal documents must meet the fourth prong that a no less restrictive alternative to the relief sought is available.  *See Securimetrics, Inc. v. Iridian Techs., Inc.*, No. 03-cv-04394, 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006).

16.)      The sealing of confidential documents and information is an accepted practice in the District of New Jersey.  *In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653.


Respectfully submitted,

Dated:  September 26, 2018

By: *s/Joel A. Pisano*
Joel A. Pisano
Selina M. Ellis
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd, Suite 600
Newark, NJ 07102
(973) 757-1100

*Of Counsel*
Robert M. Pollaro
John T. Moehringer
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
(212) 504-6000

*Attorneys for Plaintiff*
*NewMarket Pharmaceuticals, LLC*

7

Joel A. Pisano
Selina M. Ellis
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd, Suite 600
Newark, NJ 07102
(973) 757-1100

*Of Counsel*
Robert M. Pollaro
John T. Moehringer
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
(212) 504-6000

*Attorneys for Plaintiff*
*NewMarket Pharmaceuticals, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEWMARKET PHARMACEUTICALS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>VETPHARM, INC., a New York corporation; DENNI O. DAY; an individual; and PRELUDE DYNAMICS, LLC, a Texas limited liability company,<br><br>Defendants. | Civil Action No. 3:17-cv-01852 (MAS-TJB)<br><br>**STATEMENT IN LIEU OF BRIEF PURSUANT TO LOCAL CIVIL RULE 7.1(d)(4)**<br><br>*Filed Electronically* |

Pursuant to Local Civil Rule 7.1(d)(4), no brief in support of the motion to seal brought by Plaintiff NewMarket Pharmaceuticals, LLC, for the entry of an Order to Seal is necessary because the factual and legal basis for the relief sought herein are set forth in the Proposed Findings of Fact and Conclusions of Law, and in the Declaration of Joel A. Pisano with Exhibit 1 annexed thereto.

Respectfully submitted,                    Dated:  September 26, 2018

By: *s/Joel A. Pisano*
Joel A. Pisano
Selina M. Ellis
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd, Suite 600
Newark, NJ 07102
(973) 757-1100

*Of Counsel*
Robert M. Pollaro
John T. Moehringer
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
(212) 504-6000

*Attorneys for Plaintiff*
*NewMarket Pharmaceuticals, LLC*

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEWMARKET PHARMACEUTICALS, LLC, a Delaware limited liability company, | Civil Action No. 3:17-cv-01852 (MAS-TJB) |
| Plaintiff, | |
| v. | **[PROPOSED] ORDER** |
| VETPHARM, INC., a New York corporation; DENNI O. DAY; an individual; and PRELUDE DYNAMICS, LLC, a Texas limited liability company, | *Filed Electronically* |
| Defendants. | |

**THIS MATTER** having been opened to the Court by the application of Plaintiff NewMarket Pharmaceuticals, LLC ("Plaintiff") by and through its undersigned counsel, in connection with the Motion to Seal, pursuant to Local Civil Rule 5.3(c) the following filings or portions thereof: (1) The entirety of Exhibit 1 to Plaintiff's September 7, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 88); and (2) VetPharm, Inc.'s September 11, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 90), and the Court having further found that the standards of L. Civ. R. 5.3(c) have been met and support the sealing of the confidential documents and information; and for other and good cause having been shown, the Court hereby finds:

**FINDINGS OF FACT**

A.  Pursuant to Local Civil Rule 5.3(c), Plaintiff moves to seal the following filings or portions thereof: (1) The entirety of Exhibit 1 to Plaintiff's September 7, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 88); and (2) VetPharm, Inc.'s September 11, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 90), relating to Plaintiff and/or

third party's commercially sensitive, proprietary business information, including information relevant to Plaintiff's partial distribution and license agreement with a third party that the parties maintain in confidence in light of the highly competitive marketplace

B.  The select portions of the above documents identified in the index attached as Exhibit 1 to the Declaration of Joel A. Pisano ("Pisano Decl.") that are sought to be sealed are collectively referred to herein as the "Confidential Information."

C.  The Confidential Information contains and/or reflects information that Plaintiff and/or third party have designated as "Confidential."

D.  In particular, the Confidential Information discloses Plaintiff and/or third party's commercially sensitive, proprietary business information.

E.  The legitimate private or public interests which warrant confidentiality are: Plaintiff and/or third party have a legitimate interest in maintaining the confidentiality of their confidential business information.  The clearly defined and serious injury that would result if the Confidential Information is disclosed is: Information which was not intended to be seen by competitors would be available for review and potential use against Plaintiff and/or third party. Moreover, competitors (actual and potential) in the highly competitive marketplace, who are not parties to this action would have access to the information.  There is no less restrictive alternative to the sealing of the Confidential Information.

F.  Plaintiff has complied with the terms of the Local Civil Rule 5.3(c) by moving to seal the Confidential Information.

2

**CONCLUSIONS OF LAW**

A.  The Court, having considered this matter pursuant to Fed. R. Civ. P. 78 and Local Civil
    Rule 5.3, and Plaintiff's submissions in support of the Motion, finds that Plaintiff has
    satisfied its burden of proving under L. Civ. R. 5.3(c) and applicable case law, that the
    Confidential Information is highly confidential or confidential and entitled to protection.
    There exists in civil cases a common law public right of access to judicial proceedings
    and records.  *Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 192 (3d Cir.
    2001) (citing *Littlejohn v. BIC Corp.*, 851 F.2d 673, 677-78 (3d Cir. 1988)).  The party
    seeking to seal any part of a judicial record bears the burden of demonstrating that "the
    material is the kind of information that courts will protect."  *Miller v. Indiana Hosp.*, 16
    F.3d 549, 551 (3d Cir. 1994) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059,
    1071 (3d Cir. 1984)).  This Court has the power to seal where confidential information
    may be disclosed to the public.  Fed. R. Civ. P. 26(c)(1)(G) allows the court to protect
    materials containing "trade secret[s] or other confidential research, development, or
    commercial information [,]" upon motion by a party, to prevent harm to a litigant's
    competitive standing in the marketplace.  *See Zenith Radio Corp. v. Matsushita Elec.
    Indus. Co.*, 529 F. Supp. 866, 889-91 (E.D. Pa. 1981).  Additionally, courts in this
    District have held that the inclusion of trade secrets and other confidential information in
    documents warrants the sealing of such documents.  "A well-settled exception to the right
    of access is the 'protection of a party's interest in confidential commercial information,
    such as a trade secret, where there is a sufficient threat of irreparable harm.'"  *In re
    Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 664 (D.N.J. 2004) (citation omitted).  As

3

such, "[t]he presence of trade secrets or other confidential information weighs against public access and, accordingly, documents containing such information may be protected from disclosure." *Id.* (citations omitted).

B.  Local Civil Rule 5.3(c) places the burden of proof on the moving party as to why a motion to seal or otherwise restrict public access should be granted.  Specifically, it requires a showing of: (1) the nature of the materials or proceedings at issue; (2) the legitimate private or public interest which warrants the relief sought; (3) the clearly defined and serious injury that would result if the relief sought is not granted; and (4) why a less restrictive alternative to the relief sought is not available.

C.  The information in Plaintiff's submission satisfies the standards set forth in Local Civil Rule 5.3(c) and there is no less restrictive alternative to sealing the Confidential Information.

**THEREFORE,** it is on this _____ day of _____, 2018;

**ORDERED** as follows:

1.  The following filings or portions thereof identified in the index attached as Exhibit 1 to Pisano Decl. contain confidential information: (1) The entirety of Exhibit 1 to Plaintiff's September 7, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 88); and (2) VetPharm, Inc.'s September 11, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 90).  The Court further finds that Plaintiff and/or third party would suffer substantial and specific harm, including but not limited to, potential financial damage through the divulgence of such confidential information, that the public interest weighs in

4

favor of the information remaining confidential and being sealed, and that no less restrictive alternative exists.

2.  Therefore, Plaintiff's Motion pursuant to Local Civil Rule 5.3(c) to Seal is **GRANTED**.

    **SO ORDERED.**


                _____

                **HONORABLE TONIANNE J. BONGIOVANNI**
                **UNITED STATES MAGISTRATE JUDGE**

Joel A. Pisano
Selina M. Ellis
WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd, Suite 600
Newark, NJ 07102
(973) 757-1100

*Of Counsel*
Robert M. Pollaro
John T. Moehringer
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
(212) 504-6000

*Attorneys for Plaintiff*
*NewMarket Pharmaceuticals, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEWMARKET PHARMACEUTICALS, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>VETPHARM, INC., a New York corporation; DENNI O. DAY; an individual; and PRELUDE DYNAMICS, LLC, a Texas limited liability company,<br><br>Defendants. | Civil Action No. 3:17-cv-01852 (MAS-TJB)<br><br>**CERTIFICATE OF SERVICE**<br><br>*Filed Electronically* |

I, Joel A. Pisano, hereby certify that, on the date set forth below, I caused true and correct copies of the following documents submitted on behalf of Plaintiff NewMarket Pharmaceuticals, LLC to be electronically filed and served via the Court's electronic filing system on the Office of the Clerk, United States District Court for the District of New Jersey, Clarkson S. Fisher Federal Building & U.S. Courthouse, 402 East State Street, Trenton, New Jersey:

- Notice of Motion to Seal;

- Declaration of Joel A. Pisano with Exhibit 1 annexed thereto;

- Proposed Findings of Fact and Conclusions of Law;

- Statement in Lieu of Brief pursuant to L. Civ. R. 7.1(d);

- Proposed form of Order; and

- This Certificate of Service.

I further certify that, on the date set forth below, I caused a true and correct copy of the above documents to be served on all counsel of record via email and electronic filing.

I hereby certify the foregoing statements made by me are true. I am aware that if any of the foregoing statement by me are willingly false that I am subject to punishment.

Dated:  September 26, 2018                                    *s/Joel A. Pisano*
                                                                          Joel A. Pisano

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEWMARKET PHARMACEUTICALS, LLC, a Delaware limited liability company, | Civil Action No. 3:17-cv-01852 (MAS-TJB) |
| Plaintiff, | |
| v. | [~~PROPOSED~~] ORDER |
| VETPHARM, INC., a New York corporation; DENNI O. DAY; an individual; and PRELUDE DYNAMICS, LLC, a Texas limited liability company, | *Filed Electronically* |
| Defendants. | |

**THIS MATTER** having been opened to the Court by the application of Plaintiff NewMarket Pharmaceuticals, LLC ("Plaintiff") by and through its undersigned counsel, in connection with the Motion to Seal, pursuant to Local Civil Rule 5.3(c) the following filings or portions thereof: (1) The entirety of Exhibit 1 to Plaintiff's September 7, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 88); and (2) VetPharm, Inc.'s September 11, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 90), and the Court having further found that the standards of L. Civ. R. 5.3(c) have been met and support the sealing of the confidential documents and information; and for other and good cause having been shown, the Court hereby finds:

## FINDINGS OF FACT

A. Pursuant to Local Civil Rule 5.3(c), Plaintiff moves to seal the following filings or portions thereof: (1) The entirety of Exhibit 1 to Plaintiff's September 7, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 88); and (2) VetPharm, Inc.'s September 11, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 90), relating to Plaintiff and/or

**Lang Dec., EXHIBIT D**

third party's commercially sensitive, proprietary business information, including information relevant to Plaintiff's partial distribution and license agreement with a third party that the parties maintain in confidence in light of the highly competitive marketplace

B. The select portions of the above documents identified in the index attached as Exhibit 1 to the Declaration of Joel A. Pisano ("Pisano Decl.") that are sought to be sealed are collectively referred to herein as the "Confidential Information."

C. The Confidential Information contains and/or reflects information that Plaintiff and/or third party have designated as "Confidential."

D. In particular, the Confidential Information discloses Plaintiff and/or third party's commercially sensitive, proprietary business information.

E. The legitimate private or public interests which warrant confidentiality are: Plaintiff and/or third party have a legitimate interest in maintaining the confidentiality of their confidential business information.  The clearly defined and serious injury that would result if the Confidential Information is disclosed is: Information which was not intended to be seen by competitors would be available for review and potential use against Plaintiff and/or third party. Moreover, competitors (actual and potential) in the highly competitive marketplace, who are not parties to this action would have access to the information.  There is no less restrictive alternative to the sealing of the Confidential Information.

F. Plaintiff has complied with the terms of the Local Civil Rule 5.3(c) by moving to seal the Confidential Information.

2

## CONCLUSIONS OF LAW

A. The Court, having considered this matter pursuant to Fed. R. Civ. P. 78 and Local Civil Rule 5.3, and Plaintiff's submissions in support of the Motion, finds that Plaintiff has satisfied its burden of proving under L. Civ. R. 5.3(c) and applicable case law, that the Confidential Information is highly confidential or confidential and entitled to protection. There exists in civil cases a common law public right of access to judicial proceedings and records. *Goldstein v. Forbes (In re Cendant Corp.)*, 260 F.3d 183, 192 (3d Cir. 2001) (citing *Littlejohn v. BIC Corp.*, 851 F.2d 673, 677-78 (3d Cir. 1988)). The party seeking to seal any part of a judicial record bears the burden of demonstrating that "the material is the kind of information that courts will protect." *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). This Court has the power to seal where confidential information may be disclosed to the public. Fed. R. Civ. P. 26(c)(1)(G) allows the court to protect materials containing "trade secret[s] or other confidential research, development, or commercial information [,]" upon motion by a party, to prevent harm to a litigant's competitive standing in the marketplace. *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 889-91 (E.D. Pa. 1981). Additionally, courts in this District have held that the inclusion of trade secrets and other confidential information in documents warrants the sealing of such documents. "A well-settled exception to the right of access is the 'protection of a party's interest in confidential commercial information, such as a trade secret, where there is a sufficient threat of irreparable harm.'" *In re Gabapentin Patent Litig.*, 312 F. Supp. 2d 653, 664 (D.N.J. 2004) (citation omitted). As

3

such, "[t]he presence of trade secrets or other confidential information weighs against public access and, accordingly, documents containing such information may be protected from disclosure." *Id.* (citations omitted).

B.   Local Civil Rule 5.3(c) places the burden of proof on the moving party as to why a motion to seal or otherwise restrict public access should be granted.   Specifically, it requires a showing of: (1) the nature of the materials or proceedings at issue; (2) the legitimate private or public interest which warrants the relief sought; (3) the clearly defined and serious injury that would result if the relief sought is not granted; and (4) why a less restrictive alternative to the relief sought is not available.

C.   The information in Plaintiff's submission satisfies the standards set forth in Local Civil Rule 5.3(c) and there is no less restrictive alternative to sealing the Confidential Information.

**THEREFORE**, it is on this ___30^th___ day of ___October___, 2018;

**ORDERED** as follows:

1.   The following filings or portions thereof identified in the index attached as Exhibit 1 to Pisano Decl. contain confidential information: (1) The entirety of Exhibit 1 to Plaintiff's September 7, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 88); and (2) VetPharm, Inc.'s September 11, 2018 Letter to the Hon. Michael A. Shipp, U.S.D.J. (D.E. 90).   The Court further finds that Plaintiff and/or third party would suffer substantial and specific harm, including but not limited to, potential financial damage through the divulgence of such confidential information, that the public interest weighs in

4

favor of the information remaining confidential and being sealed, and that no less restrictive alternative exists.

2. Therefore, Plaintiff's Motion pursuant to Local Civil Rule 5.3(c) to Seal is **GRANTED**.

**SO ORDERED.**

_____

**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**

(Docket Entry No. 93 is terminated).

5

| | |
|---|---|
| **From:** | Lang, Greer S. |
| **Sent:** | Wednesday, October 24, 2018 5:38 PM |
| **To:** | Pollaro, Robert |
| **Cc:** | Shanks, Brett A.; Stahl, Thomas; Fields, Brian W.; Moehringer, John |
| **Subject:** | RE: VetBridge v. NewMarket |

Robert,

Before you file a motion for sanctions, you should look at the rule. I believe it requires you to provide us with that motion in advance and that you may not file it with the court for 21 days. I would also note that filing a frivolous motion for sanctions is itself sanctionable conduct; though it is not our practice to constantly threaten opposing counsel with sanctions as a standard way of doing business.

Moreover, it is not our prerogative to put something under seal. The court will only do that after it is satisfied that the materials are in fact confidential and that there is a sufficient justification for not having the filings made public. I don't think that showing can be made here under any circumstance given your own filing and disclosures. But I accept that you will proceed in the manner you've indicated.

Regards,


Greer S. Lang
Partner
Lathrop Gage LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108-2618
Direct: 816.460.5511 | Mobile: 785.691.6155 | Fax: 816.292.2001
glang@lathropgage.com

-----Original Message-----
From: Pollaro, Robert [mailto:Robert.Pollaro@cwt.com]
Sent: Wednesday, October 24, 2018 5:29 PM
To: Lang, Greer S.
Cc: Shanks, Brett A.; Stahl, Thomas; Fields, Brian W.; Moehringer, John
Subject: Re: VetBridge v. NewMarket

Thanks Greer. I will be filing a motion to compel and for sanctions.

Regards,

Robert

> On Oct 24, 2018, at 6:27 PM, Lang, Greer S. (LG) <glang@lathropgage.com> wrote:
>
> Robert,
>

> I have spoken with our client and we do not agree that the Exclusive Distribution and License Agreement ("Agreement") is confidential under the express terms of that Agreement for the reasons I previously expressed. Additionally, the Agreement contains an integration clause and by its express terms, the Agreement and its Exhibits "supersede all prior oral and written understandings and agreements between the parties."
>
> I would also note the Petition, the original TRO and the Amended TRO quote at length from the Agreement. At the September 14 hearing in the Circuit Court, you did not advise that you considered anything in the Petition or the original TRO to be confidential. Nor did you do so at the time you received the Amended TRO entered by the Court.
>
> Further, you filed a copy of the original TRO with the court in the New Jersey action on September 7 [Doc. 87], after being served with the Petition and the TRO , making the portions of the Agreement quoted in the TRO a matter of public record, clearly indicating that you and your client did not consider the portions disclosed therein to be confidential.
>
> Moreover, at the time you filed your Notice of Removal in the Western District of Missouri on October 5 [Doc. 1], you attached and filed as a matter of public record, complete copies of the foregoing pleadings and orders, again publishing substantial portions of the Agreement that were quoted at length therein.
>
> I would also note that as an exhibit to Mark Ridall's declaration in connection with your motion to transfer that Mr. Ridall disclosed substantive information from the Agreement in ¶¶ 8 and 9; in addition to attaching a copy of a September 9, 2016 letter that again discloses substantive information regarding the terms of the Agreement, your client's efforts to modify the same, and other information pertaining to a number of other matters that are the subject of the Agreement, as well as the status of the same and a budget of actual and projected costs. That information was disclosed and filed as a matter of public record even though that letter and the attachment are marked "Confidential."
>
> Given the foregoing, your client has not treated the Agreement or its terms as confidential, and we do not believe that your client can  selectively pick and choose what parts of the Agreement it wants to unilaterally keep confidential and what parts it wants to make public.  Having chosen to make those disclosures, we do not think it is possible for your client to now try to un-ring the bell.  Accordingly, we are not willing to remove the copy of the Agreement attached as an exhibit to our recently filed motion to set the preliminary injunction hearing.
>
> If you believe we are missing something in our analysis, we would be willing to discuss.
>
> Kind regards,
>
>
>
> Greer S. Lang
> Partner
> Lathrop Gage LLP
> 2345 Grand Blvd., Suite 2200
> Kansas City, MO 64108-2618
> Direct: 816.460.5511 | Mobile: 785.691.6155 | Fax: 816.292.2001
> glang@lathropgage.com
>
> -----Original Message-----
> From: Lang, Greer S.
> Sent: Monday, October 22, 2018 4:02 PM
> To: Pollaro, Robert
> Cc: Shanks, Brett A.; Stahl, Thomas; Fields, Brian W.; Moehringer, John
> Subject: Re: VetBridge v. NewMarket
>
> Robert,

&gt;

&gt; I responded to your email on Saturday and agreed to discuss tomorrow. I'm not available to talk at 10 am, but can get to a phone at 1pm CST. If that works, I'll send a call in number.

&gt;

&gt; In advance, please advise if the basis upon which you contend Lathrop is disqualified.

&gt;

&gt; Regards,

&gt;

&gt; Sent from my iPhone

&gt;

&gt;

&gt; Greer S. Lang

&gt; Partner

&gt; Lathrop Gage LLP

&gt; 2345 Grand Blvd., Suite 2200

&gt; Kansas City, MO 64108-2618

&gt; Direct: 816.460.5511 | Mobile: 785.691.6155 | Fax: 816.292.2001

&gt; glang@lathropgage.com

&gt;

&gt;

&gt;&gt; On Oct 22, 2018, at 2:31 PM, Pollaro, Robert &lt;Robert.Pollaro@cwt.com&gt; wrote:

&gt;&gt;

&gt;&gt; Greer,

&gt;&gt;

&gt;&gt; We are disappointed that you have not filed corrective papers with the court regarding NewMarkets' confidential business information.  In addition to our anticipated motion for sanctions we want to meet and confer on Lathrop Gage's disqualification from this action tomorrow at 10am (central, 11am Eastern).  Please circulate a dial-in in advance of the call.

&gt;&gt;

&gt;&gt; Regards,

&gt;&gt;

&gt;&gt; Robert

&gt;&gt;

&gt;&gt;&gt; On Oct 20, 2018, at 11:35 AM, Lang, Greer S. (LG) &lt;glang@lathropgage.com&gt; wrote:

&gt;&gt;&gt;

&gt;&gt;&gt; Robert,

&gt;&gt;&gt;

&gt;&gt;&gt; As indicated in my email, we are willing to discuss.

&gt;&gt;&gt;

&gt;&gt;&gt;

&gt;&gt;&gt;

&gt;&gt;&gt; Greer S. Lang

&gt;&gt;&gt; Partner

&gt;&gt;&gt; Lathrop Gage LLP

&gt;&gt;&gt; 2345 Grand Blvd., Suite 2200

&gt;&gt;&gt; Kansas City, MO 64108-2618

&gt;&gt;&gt; Direct: 816.460.5511 | Mobile: 785.691.6155 | Fax: 816.292.2001

&gt;&gt;&gt; glang@lathropgage.com

&gt;&gt;&gt;

&gt;&gt;&gt; -----Original Message-----

&gt;&gt;&gt; From: Pollaro, Robert [mailto:Robert.Pollaro@cwt.com]

&gt;&gt;&gt; Sent: Saturday, October 20, 2018 10:30 AM

>>> To: Lang, Greer S.
>>> Cc: Shanks, Brett A.; Stahl, Thomas; Fields, Brian W.
>>> Subject: Re: VetBridge v. NewMarket
>>>
>>> Greer,
>>>
>>> With all do respect it doesn't matter what you think. NewMarket has expressed their unambiguous position that the agreement is confidential. You are obligated to treat it as such until a court orders otherwise. It makes zero sense that an agreement formed under an NDA would not be itself confidential. I suggest we meet and confer on this topic Tuesday before I file my motion for sanctions and whatever other appropriate remedies for which NewMarket may be entitled.
>>>
>>> Robert
>>>
>>>> On Oct 20, 2018, at 11:03 AM, Lang, Greer S. (LG) <glang@lathropgage.com> wrote:
>>>>
>>>> Robert,
>>>>
>>>> There is no basis to claim that the Exclusive Distribution & License Agreement ("Agreement") is "Confidential Information" and should be filed under seal.
>>>>
>>>> We agreed, as a matter of courtesy, to place the same under seal in the Circuit Court. However, the Agreement itself is not called a "Confidential Agreement" and contains no markings identifying it as "Confidential," as required under ¶12(b) of the Agreement. Further, given your client's unwillingness to agree to a preliminary injunction, consistent with the Amended TRO, we must assume that NewMarket, consistent with its prior actions, intends to misstate to third parties that NewMarket can transfer exclusive worldwide rights (including the Field and Territory held by VetBridge) "free and clear," and to not disclose the Agreement's existence. Placing the Agreement under seal only serves to allow those misstatements to be made and to expose our client's rights to further prejudice.
>>>>
>>>> If you or your client have some basis to claim that the Agreement itself is "Confidential Information," we are willing to reconsider our position or you can file a motion with the Court asking that the same be placed under seal. However, in the absence of an explanation of the basis for the same, we will not agree to place the same under seal.
>>>>
>>>> Regards,
>>>>
>>>>
>>>>
>>>>
>>>>
>>>> Greer S. Lang
>>>> Partner
>>>> Lathrop Gage LLP
>>>> 2345 Grand Blvd., Suite 2200
>>>> Kansas City, MO 64108-2618
>>>> Direct: 816.460.5511 | Mobile: 785.691.6155 | Fax: 816.292.2001
>>>> glang@lathropgage.com
>>>>
>>>> -----Original Message-----
>>>> From: Pollaro, Robert [mailto:Robert.Pollaro@cwt.com]
>>>> Sent: Friday, October 19, 2018 5:27 PM
>>>> To: Lang, Greer S.
>>>> Cc: Shanks, Brett A.; Stahl, Thomas; Fields, Brian W.

>>>> Subject: Re: VetBridge v. NewMarket

>>>>

>>>> Thank you. Please tell me that our agreement is not publicly available. If so please rectify immediately.

>>>>

>>>> Have a good weekend.

>>>>

>>>> Robert

>>>>

>>>>> On Oct 19, 2018, at 5:31 PM, Lang, Greer S. (LG) <glang@lathropgage.com> wrote:

>>>>>

>>>>> Robert,

>>>>>

>>>>> Tuesday works for me, as well. How about 10 a.m. CST/11 a.m. EST, or I could do in the afternoon.

>>>>>

>>>>>

>>>>>

>>>>>

>>>>> Greer S. Lang

>>>>> Partner

>>>>> Lathrop Gage LLP

>>>>> 2345 Grand Blvd., Suite 2200

>>>>> Kansas City,  MO  64108-2618

>>>>> Direct: 816.460.5511 | Mobile: 785.691.6155 | Fax: 816.292.2001

>>>>> glang@lathropgage.com<mailto:glang@lathropgage.com>

>>>>>

>>>>>

>>>>> From: Pollaro, Robert [mailto:Robert.Pollaro@cwt.com]

>>>>> Sent: Friday, October 19, 2018 4:15 PM

>>>>> To: Lang, Greer S.

>>>>> Cc: Shanks, Brett A.; Stahl, Thomas; Fields, Brian W.

>>>>> Subject: Re: VetBridge v. NewMarket

>>>>>

>>>>> Greer,

>>>>>

>>>>> I am available Tuesday.

>>>>>

>>>>> Please send courtesy copies of the papers you filed today.

>>>>>

>>>>> Thank you,

>>>>>

>>>>> Robert

>>>>>

>>>>> On Oct 19, 2018, at 9:05 AM, Lang, Greer S. (LG) <glang@lathropgage.com<mailto:glang@lathropgage.com>> wrote:

>>>>>

>>>>>

>>>>> Robert,

>>>>>

>>>>> We are required to have our Rule 26(f) conference to agree the timing of initial disclosures and to develop an agreed discovery plan and scheduling order no later than October 25 (next Thursday). Please let me know when you can be available to discuss the same.

>>>>>

>>>>>
>>>>> Greer S. Lang
>>>>> Partner
>>>>> <image9020c1.PNG>
>>>>> Lathrop Gage LLP
>>>>> 2345 Grand Blvd., Suite 2200
>>>>> Kansas City, MO 64108-2618
>>>>> Direct: 816.460.5511 | Mobile: 785.691.6155 | Fax: 816.292.2001
>>>>> glang@lathropgage.com<mailto:glang@lathropgage.com>
>>>>> lathropgage.com<http://www.lathropgage.com/glang>
>>>>>
>>>>> _____

>>>>> This e-mail (including any attachments) may contain material that (1) is confidential and for the sole use of the intended recipient, and (2) may be protected by the attorney-client privilege, attorney work product doctrine or other legal rules. Any review, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies.
>>>>>
>>>>>
>>>>>
>>>>> _____

>>>>> NOTE: The information in this email is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use or disseminate the information; please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy. Although this email and any attachments are believed to be free of any virus or other defect that may affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Cadwalader, Wickersham & Taft LLP for any loss or damage arising in any way from its use.
>>>>> _____
>>>>>
>>>>> <013_Motion to Set Preliminary Injunction Hearing_Suggestions.zip>
>