## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## ST. JOSEPH DIVISION

| | |
|---|---|
| VetBridge Product Development Subsidiary I (NM-OMP), LLC, a Missouri limited liability company, | ) ) ) |
| Plaintiff, | ) Civil Action No. 5:18-cv- |
| v. | ) 06147-BCW ) |
| NewMarket Pharmaceuticals, LLC, a Delaware limited liability company, | ) **JURY TRIAL DEMANDED** ) |
| Defendant, | ) |
| NewMarket Pharmaceuticals, LLC, a Delaware limited liability company, | ) ) ) |
| Third Party Plaintiff, | ) |
| v. | ) ) |
| VetPharm, INC., a New York corporation; | ) ) |
| Third Party Defendant. | ) ) |

## NEWMARKET'S ANSWER TO COMPLAINT AND THIRD PARTY COMPLAINT AGAINST VETPHARM, INC.

Defendant, and Third Party Complaint Plaintiff NewMarket Pharmaceuticals, LLC ("NewMarket"), hereby answers the Complaint of Plaintiff ("VetBridge") and hereby files its Third Party Complaint against VetPharm, Inc. ("VetPharm") as follows:

### PARTIES

1. Admitted that Plaintiff VetBridge purports to be a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business located at 1302 S. 59th Street, St. Joseph, Missouri 64508. Except as admitted,

NewMarket has insufficient knowledge or information to form a belief as to the allegations contained in paragraph 1 of the Complaint.

2.     Admitted.

## JURISDICTION AND VENUE

3.     NewMarket denies that pursuant to Paragraph 14(b) of the Agreement the State Court of Missouri has personal jurisdiction over NewMarket under RSMo. §506.500(1) and (2). The remainder of paragraph 3 of the Complaint contains conclusions of law to which no response is required, and therefore NewMarket denies them.

4.     NewMarket admits that VetBridge purports to base venue in the State Court of Missouri pursuant to RSMo. §508.010(4) but denies that this venue is the appropriate venue for adjudication of the claims raised by VetBridge in its Complaint.

## COUNT I
## (BREACH OF CONTRACT)

5.     Admitted.

6.     NewMarket is without knowledge or information sufficient to form a belief as to the allegations in paragraph 6 of the Complaint including whether or not VetBridge and its members are "successful" and therefore denies the same.

7.     NewMarket admits that on June 27, 2014 NewMarket entered into a license, limited by field of use and territory, with VetBridge as a limited distributor. Except as so admitted, NewMarket denies the remaining allegations in paragraph 7 of the Complaint including that the Agreement is valid or enforceable.

8.     Denied.

9.     NewMarket admits VetBridge was required to pay for "direct expenses" related to governmental approval, "including, but not limited to, the direct expenses associated

with preparing, prosecuting and obtaining approval of a New Animal Drug Application ("NADA") for such products, both for treatment and prevention, from the Federal Food and Drug Administration's ("FDA") Center for Veterinary Medicine ("CVM") and conducting necessary field clinical studies through a third party Contract Research Organization ("CRO"), VetPharm, Inc. ("VetPharm")". Except as so admitted, NewMarket denies the remaining allegations in paragraph 9 of the Complaint.

10.     Denied.

11.     NewMarket denies that VetBridge has fully performed its obligations under the Agreement but admits that VetBridge has paid NewMarket the total sum of $4,002,435 as partial payment for expenses related to governmental approval.

12.     Denied.

13.     Denied.

14.     Denied.

15.     Denied.

**COUNT II**
**(BREACH OF CONTRACT)**

16.     NewMarket reasserts and incorporates its responses to paragraphs 1-15 of the VetBridge's Complaint.

17.     NewMarket admits VetBridge was required to pay for "direct expenses" related to governmental approval, "including, but not limited to, the direct expenses associated with preparing, prosecuting and obtaining approval of a NADA for such products, both for treatment and prevention, from the FDA's CVM  and conducting necessary field clinical studies through a third party CRO, VetPharm." Except as so admitted, NewMarket denies the remaining allegations in paragraph 17 of the Complaint.

18.     NewMarket is without sufficient knowledge or information sufficient to form a belief as to the allegations that "contrary to [the foregoing restriction] shall provide [VetBridge] with the right to immediate repayment from [NewMarket] of all monies paid to [NewMarket] by [VetBridge]" and therefore denies the allegation.

19.     NewMarket admits that by November 23, 2015 VetBridge had paid NewMarket the total sum of $4,002,435.   Except as so admitted, NewMarket denies the remaining allegations in paragraph 19 of the Complaint.

20.     Admitted.

21.     Admitted.

22.     Denied.

23.     Denied.

24.     Denied.

25.     Denied.

26.     Denied.

27.     Denied.

## COUNT III
### (SPECIFIC PERFORMANCE)

28.     NewMarket reasserts and incorporates its responses to paragraphs 1-27 of the Complaint.

29.     Denied.

30.     Denied.

31.     Denied.

32.     NewMarket admits that paragraph 32 appears to comport with events identified as "change of control" in the Agreement.   Except as so admitted, NewMarket denies the remaining allegations in paragraph 32 of the Complaint.

33.     NewMarket admits that a "NOTICE OF LICENSE RIGHTS IN A US PATENT APPLICATION OR US PATENT" was filed with the USPTO as Document No. 5030144511, EPAS ID: PAT306111, at Patent Reel 033930, Frame 0226-0228.  Except as so admitted, NewMarket denies the remaining allegations in paragraph 33 of the Complaint.

34.     Denied.

35.     Admitted.

36.     NewMarket is without knowledge of VetBridge's "information and belief" and therefore denies the allegations in paragraph 36 of the Complaint.

37.     Denied.

38.     Denied.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Denied.

## COUNT IV
## (TEMPORARY, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF)

43.     NewMarket reasserts and incorporates its responses to paragraphs 1-42 of the Complaint.

44.     Denied.

45.     Denied.

46.     NewMarket admits that it is currently involved in litigation with VetPharm, the contract research organization ("CRO") in the case styled NewMarket Pharmaceuticals, LLC v. VetPharm, Inc., et al.  No. 3:17-CV-01852-MAS-TJB currently pending in the United States District Court for the District of New Jersey.  NewMarket is

without knowledge of that "VetBridge's apprehension in this regard is heightened" and therefore denies the allegations in paragraph 46 of the Complaint.

47.     Paragraph 47 of the Complaint contains conclusions of law to which no response is required, and therefore NewMarket denies them.

48.     Denied.

49.     Paragraph 49 of the Complaint contains conclusions of law to which no response is required, and therefore NewMarket denies them.

50.     Paragraph 50 of the Complaint contains conclusions of law to which no response is required, and therefore NewMarket denies them.

51.     Paragraph 51 of the Complaint contains conclusions of law to which no response is required, and therefore NewMarket denies them.

52.     Paragraph 52 of the Complaint contains conclusions of law to which no response is required, and therefore NewMarket denies them.

53.     Paragraph 53 of the Complaint contains conclusions of law to which no response is required, and therefore NewMarket denies them.

54.     Denied.

## **JURY DEMAND**

NewMarket acknowledges that VetBridge purports to demand a trial by jury on all issues so triable raised by the Complaint. NewMarket further denies that VetBridge is entitled any of the relief requested in unnumbered or ambiguously numbered paragraphs of the Complaint.

## GENERAL DENIAL

NewMarket denies any and all allegations, conclusions, statements, requests, prayers for relief or other provisions contained in the Complaint that are not specifically admitted herein.

## NEWMARKET DEFENSES

Further answering the Complaint, NewMarket asserts the following defenses in response to the allegations in the Complaint, undertaking the burden of proof only as to those defenses as required by law, regardless of how such defenses are denominated herein. NewMarket reserves the right to assert additional defenses or counterclaims that become known through the course of discovery, including expert discovery, further litigation in this or related actions, and development of case authority.

## FIRST DEFENSE
### (Failure to State a Claim)

55.     The Complaint fails to state any claim against NewMarket upon which relief can be granted.

## SECOND DEFENSE
### (Unclean Hands)

56.     The Complaint is barred, in whole or in part, based on the principles of unclean hands.

## THIRD DEFENSE
### (Unenforceability)

57.     VetBridge's claims are barred or limited because one or more of the contract provisions at issue are unenforceable.

## FOURTH DEFENSE
### (Invalidity)

58.     VetBridge's claims are barred, in whole or in part, because the contract is invalid.

## FIFTH DEFENSE
### (Acquiescence, Waiver and Estoppel)

59.     VetBridge's claims are barred, in whole or in part, based on principles of acquiescence, waiver and/or estoppel.

## FIFTH DEFENSE
### (Breach of Agreement)

60.     VetBridge's claims are barred or limited by its own breach of the Agreement(s) at issue in this case.  VetBridge, for example, failed to meet its obligations under the Agreement by refusing to fund the Project.

## SIXTH DEFENSE
### (Laches)

61.     VetBridge's claims are barred in whole or in part based on the doctrine of laches.

## SEVENTH DEFENSE
### (No Damage or Injury)

62.     VetBridge's claims are barred, in whole or in part, due to lack of any cognizable injury or damages legally compensable by law.  VetBridge fails to establish that it suffered any harm as a direct and proximate result of any conduct attributable to NewMarket in this case.

## EIGHTH DEFENSE
### (Equity)

63.     VetBridge's claims are barred on equitable grounds.

## NINTH DEFENSE
### (Good Faith)

64. VetBridge's claims are barred, in whole or in part, because NewMarket never acted in bad faith and/or with improper motive.

## TENTH DEFENSE
### (No Entitlement to Punitive, Special or Compensatory Damages)

65. The Complaint fails to state facts sufficient to support a claim for punitive, special or compensatory damages.

## ELEVENTH DEFENSE
### (VetBridge's Own Conduct)

66. VetBridge's claims are barred, in whole or in part, because the alleged injuries or damages, if any, were caused by VetBridge's own conduct.

## TWELFTH DEFENSE
### (No Claim for Attorney's Fees)

67. The Complaint fails to state facts sufficient to support a claim for attorney's fees.

## THIRTEENTH DEFENSE
### (No Entitlement to Injunctive Relief)

68. Notwithstanding the foregoing defenses, VetBridge cannot establish the prerequisites for an injunction, as, at a minimum, any alleged injury to it is not immediate or irreparable, Plaintiff has an adequate remedy at law for any claims it can prove, and/or an injunction would not serve the public interest.

## FOURTEENTH DEFENSE
### (Reservation of Rights to Assert Additional Defenses)

69. NewMarket continues to investigate facts relating to the negotiation of the contract-in-suit, the assertions of breach of contract against NewMarket and communications with third-parties (including Third Party Defendant VetPharm) regarding the

contract-in-suit.  To the extent that this investigation reveals any further improprieties or other deficiencies in connection with such matters, NewMarket reserves the right to seek leave to amend to assert such allegations, and/or defenses based thereon that may be appropriate.

## NEWMARKET THIRD-PARTY COMPLAINT

Defendant and Third Party Plaintiff NewMarket Pharmaceuticals, LLC ("NewMarket"), by and through its attorneys, Cadwalader, Wickersham & Taft LLP alleges in this Third Party Complaint against Third Party Defendant VetPharm, Inc. ("VetPharm") on personal knowledge on matters relating to itself and on information and belief on all other matters, as follows:

## PARTIES

1.      Defendant and Third Party Plaintiff NewMarket is a limited liability corporation, organized and existing under the laws of the State of Delaware, with its principal place of business in Trenton, New Jersey.  Plaintiff NewMarket is a small, predominantly family-run business with the aim of providing veterinary pharmaceutical products to improve animals' health and quality of life.

2.      Upon information and belief, Plaintiff VetBridge is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business located at 1302 S. 59th Street, St. Joseph, Missouri 64508.

3.      Upon information and belief, Third Party Defendant VetPharm is a New York corporation, organized and existing under the laws of the State of New York, with its principal executive office located at 349 West Commercial Street, Suite 2200 East Rochester, New York. Defendant VetPharm is a contract research organization that provides clinical trial support services to pharmaceutical companies that develop new animal health products.

## NATURE OF THE THIRD PARTY COMPLAINT

4.      This action arises out of NewMarket's stalled attempts to obtain government approval for its new animal drug (the "Project") and who is liable for the delay.  In furtherance of its Project, NewMarket entered into separate contracts with Plaintiff VetBridge

(to fund the Project) and Third Party Defendant VetPharm (to monitor clinical trials for the Project). Each contract required information related to the Project be kept in confidence. VetPharm and VetBridge have no affiliation or relationship (contractual or otherwise).

5. The costs associated with VetPharm's monitoring of the clinical trials for the Project materially exceeded the budgeted costs. A dispute arose (the "Fee Dispute") between NewMarket and VetPharm as to the amount of the increased costs and the timeliness with which any increased costs could or would be paid. The Fee Dispute has yet to be resolved. *See NewMarket Pharmaceuticals, LLC v. VetPharm, Inc.*, Case No. 3:17-cv-001852-MAS-JTB (the "NJ Action"). As soon as it became aware of the increase in costs NewMarket requested additional funding from VetBridge to cover the increased costs of the Project including those costs associated with VetPharm's monitoring of the clinical trials. VetBridge agreed to provide the necessary funding to cover the increase in costs associated with the Project. However, before the funds were delivered to NewMarket, VetBridge decided not to provide the required additional funding for the Project.

6. During the critical period between the time that VetBridge agreed to provide the additional funding and the time that the funds should have been made available to NewMarket, VetPharm president and CEO Denni Day ("Day"), unbeknownst to NewMarket and in violation of applicable agreements, initiated communications with VetBridge regarding the Project. *See generally* Declaration of Day submitted in support of VetBridge's Opposition to NewMarket's Request to Transfer – Dkt. No. 26-1. VetPharm spoke negatively about NewMarket including impugning NewMarket's management of the Project and its financial stability. Upon information and belief, VetBridge did not deliver the agreed-upon funding to NewMarket, in whole or in part, because of the negative statements made by VetPharm to VetBridge about NewMarket and/or the Project. Since the VetPharm-initiated, improper

communications between VetPharm and VetBridge occurred, VetBridge has not provided the necessary funding to NewMarket for the Project in violation of its agreement with NewMarket.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the Plaintiff, Defendant/Third Party Plaintiff and Third Party Defendant are all citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

8. This Court has supplemental jurisdiction over NewMarket's state law claims under 28 U.S.C. § 1367(a).

9. This Court has both general and specific personal jurisdiction over VetBridge because it is organized and has its principal place of business in the Western District of Missouri.

10. This Court has both general and specific personal jurisdiction over VetPharm, a provider of clinical trial support services, because they conduct business in the Western District of Missouri, have regularly communicated with VetBridge a resident of District regarding the subject matter of the present action and has willingly subjected itself to the personal jurisdiction of the Court by voluntarily submitting sworn testimony by way of declaration in the present action. *See* Dkt No. 26-1 (Declaration of Denni O. Day, President and CEO of VetPharm, in support of VetBridge's Opposition to NewMarket's Request to Transfer).

11. Venue in the Western District of Missouri is appropriate under 28 U.S.C. §§ 1391 and 1400(a) as the Plaintiff and Third Party Defendant conduct business in this District and have therefore voluntarily subjected themselves personal jurisdiction in this venue.

## GENERAL FACTUAL ALLEGATIONS

### NewMarket's New Animal Drug (the "Project")

12.     NewMarket is the inventor of technology useful for administering animal pharmaceuticals faster, safer, easier and more accurately than existing methods.  NewMarket's technology eliminates needles, pills, pastes, gels, suspensions or granules while improving efficacy.  In order for a veterinary pharmaceutical product to be marketed and sold, the Food and Drug Administration Center for Veterinary Medicine ("FDA/CVM") must first approve the product to ensure that it is safe and effective.  The approval process for veterinary medicines is similar to the process for that of human drugs.

13.     The formal process of governmental approval for animal drugs begins with the filing of a new animal drug application ("NADA") with the FDA/CVM.  As part of the NADA project sponsor collects information about the manufacturing, safety, and effectiveness of the new drug.  The sponsor will usually need to conduct studies to develop this information.  A sponsor may hire, and often does hire, an independent CRO to assist in the preparation of clinical trial management services related to a NADA.

14.     The NADA, is reviewed by a team of FDA/CVM personnel, including veterinarians, animal scientists, biostatisticians, chemists, microbiologists, pharmacologists, and toxicologists.  If the FDA/CVM determines that the drug is, *inter alia*, safe and effective, the FDA/CVM approves the NADA and the drug can be legally marketed and sold.  A NADA includes several major technical components or "sections" such as:    (1) Chemical Manufacturing and Controls ("CMC"); (2) Target Animal Safety; (3) Effectiveness; (4) Human Food Safety; and (5) Environmental Impact.  The FDA/CVM allows for the major technical sections to be submitted in phases but will not approve an NADA application until all phases have been completed and individually approved.

15.     NewMarket, as the drug sponsor and owner, is under an obligation to inform the FDA/CVM of any information that it is aware of that has the potential to impact the integrity of the clinical trial data associated with its NADA.

16.     NewMarket filed the CMC section on January 26, 2017.  The remaining sections of the NADA required for NewMarket's NADA – the Target Animal Safety and Effectiveness sections – are based on the clinical trial data, which has been withheld by VetPharm and is the subject of the NJ Action.

17.     The Target Animal Safety and Effectiveness sections of the NADA cannot be submitted without access to the clinical trial data.

18.     The Target Animal Safety and Effectiveness sections of the NADA cannot be approved without access to the clinical trial data.

## NewMarket Contracts With VetBridge To Fund Governmental Approval

19.     NewMarket contracted with VetBridge to fund the Project on June 27, 2014 (the "VetBridge Agreement").  The VetBridge Agreement was executed on behalf of VetBridge and NewMarket by the companies' respective presidents.  The Court in the Present Action and the NJ Action have ordered that the VetBridge Agreement remain under seal.

20.     VetBridge is a limited liability company whose members include several large national and international animal drug distributors.  Prior to the formation of VetBridge, NewMarket entered into confidential non-disclosure agreements ("NDA's") with members of VetBridge, including with the president of VetBridge, to be "helpful in evaluating and entering into a potential relationship regarding services in connection with NewMarket's proprietary products (the "Purpose")."  Confidential information related to the Purpose includes non-public information "furnished in any form."  The NDA's contained restrictions on the use and/or

disclosure of NewMarket's confidential information including a prohibition on the disclosure of confidential information to an unaffiliated third party. These restrictions remain in force today.

21. In return for funding the Project, the VetBridge Agreement purported to grant VetBridge a license to distribute NewMarket's drug, limited by territory and field of use, if and when approved by the FDA/CVM.

22. At the time the VetBridge Agreement was signed the total estimated costs of achieving market approval was "a projected grand total of $4 million dollars."

23. The costs of the Project have exceeded $4 million.

24. VetBridge has funded the Project in excess of $4 million dollars.

25. VetBridge expressed "an interest in funding future projects [for] NewMarket."

**NewMarket Contracts With VetPharm To Conduct The Clinical Trial For The Project**

26. NewMarket contracted with VetPharm to monitor the clinical trials necessary for governmental approval on December 22, 2014 (the "VetPharm Agreement"). The purpose of the VetPharm Agreement was for VetPharm to provide "clinical trial support services" to companies that are "developing new animal health products" and, in return, NewMarket agreed to "retain the services of VetPharm from time to time to provide clinical trial management services in connection with certain clinical research programs NewMarket is conducting". VetPharm drafted the VetPharm Agreement.

27. VetPharm identifies itself as a CRO on its website (www.vetpharm.com) which states it "is the leading full-service contract research organization dedicated exclusively to animal health." And that they "offer a complete menu of clinical trial support services in the United States and Europe" and their "proprietary study management system facilitates rapid study initiation, accelerated enrollment, and superior results."

28.     The VetPharm Agreement requires both parties to treat all information obtained or created as a result of the agreement as confidential and the exclusive property of NewMarket.

29.     Under the VetPharm Agreement, Confidential Information may only be used solely for purposes contemplated by the Agreement.  VetPharm may NOT use Confidential Information for any purpose not contemplated by the Agreement.  Using Confidential Information in an attempt to receive payment is not contemplated by the VetPharm Agreement.  If information is used for any contrary purpose the aggrieved party may seek to enforce the provisions of the Agreement in a court of competition jurisdiction to remedy irreparable harm – "[a]ccordingly, the disclosing Party may seek to enforce the provisions of this Agreement prohibiting disclosure or distribution on its Confidential Information or use thereof contrary to the provisions hereof in a court of competent jurisdiction."

30.     The VetPharm Agreement does not contemplate either party withholding Confidential Information in an effort to extort greater compensation from the other party.

31.     During the term of the VetPharm Agreement, VetPharm was obligated to provide NewMarket with access to all information and data related to a Project – "VetPharm shall cooperate with any reasonable internal review or audit by NewMarket and make available to NewMarket for examination and duplication, during normal business hours and at mutually agreeable times, all documentation, data, and information related to a Project."

**VetBridge Agrees to Provide Additional Funding for the Project (the "Capital Call")**

32.     By early March 2016 the cost of the Project exceeded the proposed budget by at least $806,000.

33.     Most of the overrun was the result of increased costs associated with VetPharm's administration of the clinical trials related to the Project.

34.     NewMarket made VetBridge aware of the increased costs of the Project including the increased costs associated with VetPharm's monitoring of the clinical trial studies for the Project.

35.     By March 11, 2016, VetBridge had drafted a "revised amendment" to the VetBridge Agreement including "the written consent form that the VetBridge board requires" before a capital call can be issued "to raise the 806 K to pay for the cost of the over runs on the [Project]."

36.     By March 14, 2016, VetBridge had satisfied all the necessary requirements to issue and capital call and did issue a capital call (the "Capital Call") to its members to cover the additional $806,000 overrun related to the Project.

**VetPharm Initiates Improper Communications with VetBridge to NewMarket's Detriment**

37.     VetPharm has no affiliation or relationship (contractual or otherwise) with VetBridge.

38.     Upon information and belief, between March 1, 2016 and March 8, 2016 VetPharm president Denni Day ("Day") elicited information from NewMarket that she intended to use, and did use, to identify the members of VetBridge for the purpose making contact with them.

39.     Upon information and belief, VetPharm believed at the time that NewMarket intended to "pay as little as possible as late as possible."

40.     Upon information and belief, between March 8, 2016 and March 15, 2016 Day conducted Google and LinkedIn searches based on the information that she had elicited from NewMarket and had identified companies she "thought could be NewMarket investors."

41.     Upon information and belief, on March 15, 2016, Day reached out and contacted the president of VetBridge and "several of the [VetBridge] members" regarding aspects related to the VetPharm Agreement including providing characterizations of the confidential clinical trial data.

42.     At 5:04PM on March 22, 2016, the president of VetBridge sent an email to the president of NewMarket requesting "written permission from [NewMarket] to talk with VetPharm directly, per [Day's] request."

43.     At 6:63PM on March 22, 2016, the president of NewMarket responded stating "I cannot give you permission to speak with VetPharm under the advice of counsil [sic]. We would consider direct contact with VetPharm interference with our existing contracts."

44.     VetBridge did not deliver to NewMarket the funds associated with the Capital Call.  Nor has VetBridge provided any funds whatsoever since being contacted by VetPharm.

45.     VetBridge has not funded any other project for NewMarket since VetPharm initiated contact with VetBridge.

46.     Upon information and belief, VetPharm has continued to communicate with VetBridge regarding aspects related to the VetPharm Agreement including providing characterizations of the confidential clinical trial data.

47.     Upon information and belief, Day has continued to provide "updates" to members of VetBridge regarding aspects related to the VetPharm Agreement including providing characterizations of the confidential clinical trial data.

48.     VetPharm president Day continues to communicate with VetBridge and has submitted a sworn declaration, dated October 31, 2018, in the present action and in support of VetBridge's opposition to NewMarket's motion to transfer venue.

**VetPharm's Attempts to Sell NewMarket's Data and Information**

49.     All data and information related to the Project is the exclusive property of NewMarket.

50.     VetPharm may not sell the data and information related to the Project that it has in its possession, custody and control.

51.     VetPharm has represented to the United States District Court for the District of New Jersey in the NJ Action that it would not "monetize" or be "destroying or disposing of any data."

52.     Upon information and belief, VetPharm has offered to sell the data and information associated with the Project to at least VetBridge and potentially other parties.

53.     VetPharm has stated that the integrity of the data and information may be impacted if VetPharm were to enter bankruptcy.

54.     VetPharm's improper sale of the data and information would impact VetBridge's rights on its agreement with NewMarket.

## FIRST CLAIM FOR RELIEF
### (Tortious Interference with Contract Against VetPharm)

55.     NewMarket repeats and re-alleges all foregoing paragraphs of this Third Party Complaint as if fully set forth herein.

56.     NewMarket and VetBridge had a valid and binding contractual relationship or beneficial business relationship.

57.     VetPharm was aware of the relationship between NewMarket and VetBridge.

58.     VetPharm knew or should have known that its actions would cause VetBridge to cease funding the Project in violation of its contract or beneficial business relationship with NewMarket.

59.     VetPharm knew or should have known that its actions would cause delay and increase the costs of the Project.

60.     As a result of VetPharm's conduct, VetBridge has refused to provide necessary funding for the Project in breach of its contractual relationship or beneficial business relationship with NewMarket and has caused delay of the Project.

61.     The actions of VetPharm have caused NewMarket to suffer damages in an amount exceeding the jurisdictional minimum, the amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Misrepresentation Against VetPharm)

62.     NewMarket repeats and re-alleges all foregoing paragraphs of this Third Party Complaint as if fully set forth herein.

63.     VetPharm has represented to others including at least VetBridge that it can sell the data and information related to the Project that it has in its possession, custody or control.

64.     VetPharm intended VetBridge or any other prospective purchasers to rely on its representations that it could sell the data and information related to the Project that it has in its possession, custody or control.

65.     VetPharm's representations that it has the right to sell the data and information related to the Project that it has in its possession, custody or control is false.

66.     VetPharm knew or should have known that its representations that it has the right to sell the data and information related to the Project that it has in its possession, custody or control is false.

67. VetPharm knew or should have known that its representations that it has the right to sell the data and information related to the Project that it has in its possession was material.

68. VetPharm knew or should have known that its representations would impact the ability of NewMarket to sell its data and information associated with the Project.

69. The actions of VetPharm have caused NewMarket to suffer damages in an amount exceeding the jurisdictional minimum, the amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Third Party Defendant, as follows:

(a)     Damages to be determined at trial;

(b)     For costs of suit incurred herein, including reasonable attorneys' and experts' fees;

For such other and further relief as the Court may deem just and proper.

Dated:  April 1, 2019

*/s/ Robert M. Pollaro*

CADWALADER, WICKERSHAM & TAFT LLP
Robert M. Pollaro (Admitted Pro Hac Vice)
200 Liberty Street
New York, New York 10281
Telephone (212) 504-6000

*Attorneys for NewMarket Pharmaceuticals, LLC*

## VERIFICATION OF ANSWER AND THIRD PARTY-COMPLAINT

I Mark Ridall declare under penalty of perjury that the following statements are true and correct:

1. I am President and Chief Executive Officer of NewMarket Pharmaceuticals, LLC ("NewMarket") which is the Defendant and Third Party Plaintiff in this action.

2. To the best of my knowledge, information, and belief, based on a reasonable inquiry and investigation undertaken in connection with this matter, this Answer and Third Party Complaint are true and correct except as to the matters stated to be on information and belief, and in such matters, based on the foregoing, I believe the same to be true.

Executed: April 1, 2019

_____
MARK RIDALL

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of April, 2019, the foregoing was filed with the

Court via the CM/ECF system, and served on the following via electronic mail:

Brian W. Fields
LATHROP & GAGE LLP
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108-2618
Telephone: 816-292-2000
Facsimile: 816-292-2001
Email: bfields@lathropgage.com

Greer S. Lang
Lewis Brisbois Bisgaard & Smith LLP
4600 Madison Avenue, Suite 700
Kansas City, MO 64112
Telephone: 816-299-4258
Facsimile: 816-299-4245
Email: Greer.Lang@lewisbrisbois.com


Attorneys for Plaintiff
VetBridge Product Development Subsidiary I (NM-OMP), LLC


*/s/ Robert M. Pollaro*
Robert M. Pollaro

Attorney for Defendant and
Third Party Plaintiff NewMarket
Pharmaceuticals, LLC