**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION**

|  |  |
|---|---|
| VetBridge Product Development Subsidiary I (NM-OMP), LLC,<br><br>              Plaintiff,<br><br>    v.<br><br>NewMarket Pharmaceuticals, LLC,<br><br>            Defendant. | Civil Action No. 5:18-cv-06147-BCW |
| NewMarket Pharmaceuticals, LLC,<br><br>            Third-Party Plaintiff,<br><br>    v.<br><br>VetPharm, Inc.,<br><br>           Third-Party Defendant. |  |

**SUGGESTIONS IN SUPPORT OF VETPHARM, INC.'S MOTION TO
DISMISS THE THIRD-PARTY COMPLAINT OR TO COMPEL ARBITRATION**

Of Counsel:

**HARRIS BEACH, PLLC**
Douglas A. Foss (*pro hac vice* pending)
Kyle D. Gooch (*pro hac vice* pending)
99 Garnsey Road
Pittsford, NY 14534
T: 585.419.8800
F: 585.419.8801
dfoss@harrisbeach.com
kgooch@harrisbeach.com

**TIEMAN, SPENCER & HICKS, LLC**
Lee C. Tieman
Joel S. Hane
702 Felix Street
St. Joseph, MO 64501
T: 816.279.3000
F: 816.279.3066
lee.tieman@tshhlaw.com
joel.hane@tshhlaw.com

*Attorneys for Third-Party Defendant
VetPharm, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ...................................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

    A.    VetBridge Invests in NewMarket's Development of an Equine
          Ulcer Product ....................................................................................... 2

    B.    NewMarket Retains VetPharm to Manage Its Clinical Trial .................. 2

    C.    VetPharm Cancels the Clinical Trials Due to NewMarket's
          Nonpayment ......................................................................................... 3

    D.    NewMarket Attempts to Frustrate Arbitration and Sue in the
          District of New Jersey .......................................................................... 4

    E.    VetBridge Asserts Breach-of-Contract Claims Against NewMarket
          in This Action ....................................................................................... 4

ARGUMENT .............................................................................................................. 5

    I.    The third-party complaint should be dismissed under Rule 12(b)(2)
        because VetPharm is not subject to personal jurisdiction in
        Missouri ................................................................................................ 5

        A.    VetPharm is not subject to general jurisdiction in Missouri
            because it is not "essentially at home" here ................................. 6

        B.    VetPharm's limited, incidental contacts with Missouri are
            insufficient to give rise to specific jurisdiction ........................... 7

        C.    VetPharm has not waived personal jurisdiction ......................... 10

    II.    NewMarket's purported third-party complaint against VetPharm is
        improper under Rule 14 because it asserts claims that are
        independent of VetBridge's claims against NewMarket ...................... 10

    III.    NewMarket's third-party claims are subject to mandatory
        arbitration ............................................................................................ 12

    IV.    Alternatively, the third-party complaint should be dismissed under
        Rule 12(b)(6) because NewMarket fails to state a viable claim for
        relief .................................................................................................... 13

Case 5:18-cv-06147-BCW   Document 63   Filed 04/29/19   Page 2 of 23

A.      New York governs NewMarket's claims against VetPharm ....................14

B.      NewMarket does not state a viable claim for tortious interference ..........14

C.      NewMarket does not state a viable claim for misrepresentation ...............15

CONCLUSION ...................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Advanced Lipo Dissolve Ctr., LLC v. Karkkainen*,
2007 WL 8448225 (E.D. Mo. Mar. 19, 2007) ........................................................... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................... 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 8, 13

*BJC Health Sys. v. Columbia Cas. Co.*,
478 F.3d 908 (8th Cir. 2007) ...................................................................................... 15

*Burger King v. Rudzewicz*,
471 U.S. 462 (1985) ...................................................................................................... 7

*Burlington Indus., Inc. v. Maples Indus., Inc.*,
97 F.3d 11003 (8th Cir. 1996) ...................................................................................... 9

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ...................................................................................................... 6

*Eagle Tech. v. Expander Ams., Inc.*,
783 F.3d 1131 (8th Cir. 2015) ...................................................................................... 8

*Fastpath, Inc. v. Arbela Techs. Corp.*,
760 F.3d 816 (8th Cir. 2014) .......................................................................... 5, 6, 7, 8

*Foster v. Churchill*,
665 N.E.2d 153 (N.Y. 1996) ................................................................................. 14, 15

*Gerber v. Riordan*,
649 F.3d 514 (6th Cir. 2011) ...................................................................................... 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ...................................................................................................... 6

*HRB Tax Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
2012 WL 4363723 (W.D. Mo. Sept. 21, 2012) .......................................................... 13

*Hudson v. ConAgra Poultry Co.*,
484 F.3d 496 (8th Cir. 2007) ...................................................................................... 12

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ........................................................................................ 7

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011) ........................................................................................ 7

*Joe Hand Promotions, Inc. v. In Your Ear, LLC*,
    2013 WL 121458604 (W.D. Mo. July 26, 2013) .................................................. 11

*Keeley v. Pfizer Inc.*,
    2015 WL 3999488 (E.D. Mo. July 1, 2015) ........................................................ 6

*Lama Holding Co. v. Smith Barney Inc.*,
    668 N.E.2d 1370 (N.Y. 1996) ......................................................................... 14

*Mattes v. ABC Plastics, Inc.*,
    323 F.3d 6954 (8th Cir. 2003) ..................................................................... 3, 10

*Mobile Anesthesiologists Chicago, LLC v.*
    *Anesthesia Assocs. of Houston Metroplex, P.A.*,
    623 F.3d 4403 (7th Cir. 2010) ....................................................................... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ......................................................................................... 12

*N.Y. Univ. v. Cont'l Ins. Co.*,
    662 N.E.2d 763 (N.Y. 1995) ........................................................................... 12

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*,
    664 N.E.2d 492 (N.Y. 1996) ........................................................................... 14

*Neeley v. Wyeth LLC*,
    2015 WL 1456984 (E.D. Mo. Mar. 30, 2015) ...................................................... 6

*Orthmann v. Apple River Campground, Inc.*,
    765 F.2d 119 (8th Cir. 1985) ......................................................................... 13

*Owen Equip. & Erection Co. v. Kroger*,
    437 U.S. 365 (1978) ...................................................................................... 11

*Pasternack v. Lab. Corp. of Am. Holdings*,
    59 N.E.3d 4853 (N.Y. 2016) ........................................................................... 15

*Perkins v. Benguet Consolidated Mining Co.*,
    342 U.S. 437 (1952) ........................................................................................ 6

iv

*PRM Energy Sys., Inc. v. Primenergy, L.L.C.*,
592 F.3d 830 (8th Cir. 2010) ................................................................. 12

*Torrenzano Grp., LLC v. Burnham*,
26 A.D.3d 242 (N.Y. App. Div. 2006) ..................................................... 14

*United States v. Olavarrieta*,
812 F.2d 640 (11th Cir. 1987) .......................................................... 10, 11

*Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*,
646 F.3d 589 (8th Cir. 2011) ............................................................... 8, 9

*W. World Ins. Co. v. Halphin*,
2014 WL 37304562 (W. D. Mo. July 28, 2014) ..................................... 11

*Walden v. Fiore*,
571 U.S. 277 (2014) ................................................................................. 8

*Winter v. Novartis Pharm. Corp.*,
739 F.3d 405 (8th Cir. 2014) ........................................................... 13, 14

*World-Wide Volkswagen v. Woodson*,
444 U.S. 286 (1980) ................................................................................. 7

**Statutes**

9 U.S.C. § 3 ............................................................................................. 13

**Rules**

Fed. R. Civ. P. 4(k)(1)(A) ........................................................................ 5

Fed. R. Civ. P. 9(b) ................................................................................ 15

Fed. R. Civ. P. 12(b)(2) ............................................................................ 2

Fed. R. Civ. P. 12(b)(6) ...................................................................... 3, 13

Fed. R. Civ. P. 14 ................................................................................... 12

Fed. R. Civ. P. 14(a)(1) .......................................................................... 10

**Other Authorities**

6A Charles Alan Wright et al., Federal Practice & Procedure Civ. § 1446,
Westlaw (3d ed. updated Apr. 2019) ........................................................ 3

# INTRODUCTION

NewMarket Pharmaceuticals, LLC ("NewMarket") and VetPharm, Inc. ("VetPharm") are currently arbitrating their contract dispute. After repeated unsuccessful attempts to frustrate that process and drag VetPharm into federal court in the District of New Jersey, NewMarket now seeks to hale VetPharm into this Court—the site of an unrelated dispute between NewMarket and its investor, VetBridge Product Development Subsidiary I (NM-OMP), LLC ("VetBridge")—on a ginned-up set of tort claims. The Court should see this tactic for what it is: a vexatious attempt to drive up VetPharm's litigation costs by forcing it to defend itself against unsubstantiated allegations in an inconvenient forum. NewMarket's third-party complaint should be dismissed on at least four grounds.

First, this Court lacks personal jurisdiction over VetPharm, a New York corporation that has had a very limited connection to the State of Missouri since its founding in 2000. VetPharm's minimal communications with VetBridge are not enough to satisfy the minimum-contacts test.

Second, NewMarket's third-party complaint is procedurally improper because it asserts claims that are logically independent of the claims asserted by VetBridge in the main action. NewMarket does not allege that VetPharm is or may be secondarily liable for VetBridge's claims against NewMarket. Thus, the third-party complaint violates Rule 14 and should be dismissed.

Third, NewMarket's third-party claims are subject to mandatory arbitration. The parties agreed that all disputes arising under their contract must be arbitrated, and the Eighth Circuit has held that that language broadly encompasses both contract and related tort claims. Moreover, because another federal court has already assumed jurisdiction over the parties in a first-filed action related to the same contract, that court should be the only court to retain jurisdiction over the controversy pending the completion of the arbitration.

Finally, NewMarket's third-party complaint fails to state a viable claim for relief. Under

1

applicable New York law, NewMarket's claim for tortious interference fails because (i) it does not allege, as it must, that VetPharm's actions caused VetBridge to breach an existing contractual obligation and (ii) VetPharm's actions were justified by its own economic interest. NewMarket's claim for misrepresentation claim fails because (i) it is not pleaded with particularity as required by Rule 9(b) and (ii) NewMarket has not plausibly alleged detrimental reliance or injury.

## STATEMENT OF FACTS

### A.  VetBridge Invests in NewMarket's Development of an Equine Ulcer Product

NewMarket, based in Trenton, New Jersey, owns the rights to a new method of administering an animal drug to treat and prevent ulcers in horses. (ECF No. 54 ("Third-Party Compl.") ¶¶ 1, 4; ECF No. 1-1 ("Pet.") ¶¶ 5, 7.) VetBridge, based in St. Joseph, Missouri, is a limited liability company whose members are animal health product distributors. (Pet. ¶¶ 1, 6.) In June 2014, NewMarket and VetBridge signed an Exclusive Distribution and License Agreement ("EDLA"), under which VetBridge agreed to invest $4 million to fund the development of NewMarket's new equine ulcer product in exchange for certain exclusive rights to distribute that product in the United States. (Third-Party Compl. ¶¶ 4, 19–22; Pet. ¶¶ 7–8.)

### B.  NewMarket Retains VetPharm to Manage Its Clinical Trial

VetPharm is a contract research organization based in East Rochester, New York, that provides clinical trial support services to companies developing new animal drugs. (Third-Party Compl. ¶¶ 3, 27.) VetPharm has no office, employees, physical presence, or bank accounts in Missouri. (2019 Day Decl. ¶¶ 4–5.)[1] It has conducted very limited business activities in Missouri since its founding in 2000. (*Id.* ¶¶ 1, 3–6)

In December 2014, NewMarket and VetPharm entered into a Master Services Agreement

---

[1]  "2019 Day Decl." refers to the accompanying Declaration of Denni O. Day, dated April 29, 2019, submitted in support of VetPharm's motion to dismiss based upon a lack of personal jurisdiction under Rule 12(b)(2).

2

("MSA"), in which VetPharm agreed to manage a clinical trial of NewMarket's equine ulcer product. (Third-Party Compl. ¶ 26; 2018 Day Decl. ¶ 2.)[2] The parties agreed that all disputes arising under the MSA (except for certain disputes to protect the parties' preexisting confidential information) must be submitted to mandatory arbitration. (2018 Day Decl. Ex. A § 11.11.)

## C. VetPharm Cancels the Clinical Trials Due to NewMarket's Nonpayment

The U.S. Food and Drug Administration directed NewMarket to split its planned clinical trial into two trials, one to evaluate the effectiveness of NewMarket's product in treating gastric ulcers and one to evaluate its effectiveness in preventing them. (2018 Day Decl. ¶ 3.) VetPharm and NewMarket executed a new Project Addendum, including a new budget, for each trial. (*Id.* ¶ 4.) As the trials progressed, VetPharm began invoicing NewMarket according to the terms of the MSA and respective Project Addendums. (*Id.*) NewMarket, however, almost immediately began to fall behind on its payments. (*Id.* ¶ 6.)

By March 2016, NewMarket owed VetPharm more than $900,000 in unpaid invoices. (*Id.* ¶ 8.) After several weeks of empty assurances from NewMarket that new investor funding was imminent, VetPharm stopped all work on both trials. VetPharm's chief executive officer then used information volunteered by NewMarket personnel to contact several suspected members of NewMarket's investor group to seek payment for VetPharm's services. (*Id.* ¶¶ 9–14.) Two months later, without new investor funding, NewMarket paid the outstanding invoices but directed VetPharm to resume work only on the treatment trial. (*Id.* ¶¶ 16–17.) NewMarket soon resumed its pattern of nonpayment and, by February 2017, it owed VetPharm more than $400,000. (*Id.*

---

[2]  "2018 Day Decl." refers to the Declaration of Denni O. Day dated October 31, 2018, which was previously filed in this action (ECF No. 26-1). The Court may consider the declaration on a motion to dismiss because NewMarket incorporated it by reference in its pleading (Third-Party Compl. ¶ 6). *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 n.4 (8th Cir. 2003) (a court may consider materials "necessarily embraced by the pleadings," including documents that "may be viewed as attachments to [the] complaint" on a motion to dismiss under Rule 12(b)(6)).

¶¶ 19–20.) VetPharm again stopped work on the treatment trial and filed a demand for arbitration. (*Id.* ¶ 20 & Ex. B.)

**D.     NewMarket Attempts to Frustrate Arbitration and Sue in the District of New Jersey**

In March 2017, NewMarket filed suit against VetPharm in the U.S. District Court for the District of New Jersey. (ECF No. 9-2 Ex. 1; Foss Decl. Ex. 1.) NewMarket sought a preliminary injunction to obtain the study data collected by VetPharm. The court denied NewMarket's motion and granted VetPharm's cross-motion to compel arbitration. (Foss Decl. Ex. 2.) NewMarket then attempted to frustrate the arbitration by refusing to pay its one-half share of the arbitrator's fees. (2018 Day Decl. ¶ 23 & Ex. E.) Unwilling to pay both parties' arbitration fees, VetPharm withdrew its arbitration demand. (*Id.* ¶ 25.)

NewMarket went back to the New Jersey court and renewed its motion for a preliminary injunction. The court again denied the motion and ordered the parties to return to arbitration. (Foss Decl. Ex. 3.) The parties returned to arbitration, but NewMarket nonetheless has continued to represent to the New Jersey court that it will not pay its arbitration fees and has made serial requests to that court to intervene in the arbitration—all of which the New Jersey court has denied. (Foss Decl. Exs. 4–9.) The New Jersey action remains stayed pending arbitration.

**E.     VetBridge Asserts Breach-of-Contract Claims Against NewMarket in This Action**

Meanwhile, in August 2018, VetBridge filed a petition against NewMarket in Missouri state court, alleging that NewMarket had breached the EDLA by (i) failing to adequately fund the development of the equine ulcer products; (ii) misusing at least $1.6 million of VetBridge's $4 million investment for NewMarket's overhead; and (iii) transferring certain product rights to Aboris Animal Health, LLC ("Aboris") and an "unnamed, overseas company." (Pet. ¶¶ 5–42.) NewMarket removed the action to this Court. (ECF No. 1.)

On April 1, 2019, NewMarket filed a purported third-party complaint against VetPharm.

4

(ECF No. 54.) The third-party complaint asserts two claims. First, NewMarket alleges a claim for tortious interference with contract based on its averment that VetPharm contacted VetBridge's principal in March 2016. (Third-Party Compl. ¶ 41.) NewMarket alleges that this contact caused VetBridge to cease its plans to provide additional funding to NewMarket.[3] (*Id.* ¶ 60.) Second, NewMarket asserts a claim for "misrepresentation" based on its allegation that VetPharm "has offered to sell the data and information associated with the Project to at least VetBridge and potentially other parties." (*Id.* ¶ 52.)[4]

## ARGUMENT

## I.     The third-party complaint should be dismissed under Rule 12(b)(2) because VetPharm is not subject to personal jurisdiction in Missouri.

On a motion challenging personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of showing that personal jurisdiction exists. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). The plaintiff must plead sufficient facts to support a reasonable inference that the defendant may be subject to personal jurisdiction in the forum state. *Id.*[5] That prima facie showing "must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *Id.* (internal quotation marks omitted). While genuine disputes of fact are resolved in the plaintiff's favor, the plaintiff retains the burden of proof. *Id.* Here, NewMarket has not met its prima facie burden of pleading facts sufficient to establish either general or specific jurisdiction over VetPharm in Missouri.

---

[3]    It appears that the reason VetBridge refused to provide additional funding to NewMarket was that it discovered NewMarket had overcharged VetBridge to the tune of $1.6 million. (*See* Pet. ¶ 22.)

[4]    VetPharm strongly disputes this allegation, which appears to be a gross mischaracterization of VetPharm's efforts to negotiate a joint settlement among VetPharm, NewMarket, and VetBridge. (2019 Day Decl. ¶¶ 11–12.)

[5]    A federal court generally looks to whether the defendant would be subject to personal jurisdiction in the courts of the state in which it sits. *See* Fed. R. Civ. P. 4(k)(1)(A).

5

**A.    VetPharm is not subject to general jurisdiction in Missouri because it is not "essentially at home" here.**

NewMarket's assertion that VetPharm is subject to general jurisdiction in Missouri (Third-Party Compl. ¶ 10) is meritless. A court may only exercise general jurisdiction over a foreign corporation if its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Only in an exceptional case[6] will a corporation be subject to general jurisdiction in a state other than where it is incorporated or where it maintains its principal place of business, which are the two "paradigm" bases for general jurisdiction. *Id.* at 137, 139 n.19.

Here, NewMarket has not alleged facts that establish that VetPharm is "at home" in Missouri—a state where it has no physical presence, has no employees or agents, and holds no property. (2019 Day Decl. ¶¶ 4–6.) Courts have rejected attempts to impose general jurisdiction even where the contacts between the defendant and the forum state were much more significant. *See, e.g.*, *Daimler*, 571 U.S. at 123 (defendant's subsidiary distributed vehicles to dealerships throughout the forum state); *Goodyear*, 564 U.S. at 918, 921 (defendant's parent had a manufacturing facility in the forum state and regularly conducted business there, and some of the defendant's products were distributed there).[7]

---

[6]    The Supreme Court identified *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437(1952)—where a Philippines-based corporation temporarily relocated its headquarters during World War II to Ohio, which served as its "temporary" or "surrogate" principal place of business—as an example of such an exceptional case. *See Daimler*, 571 U.S. at 129 & n.8, 139 n.19.

[7]    *See also Keeley v. Pfizer Inc.*, 2015 WL 3999488, *2 (E.D. Mo. July 1, 2015) (defendant regularly marketed and sold products in the forum state); *Neeley v. Wyeth LLC*, 2015 WL 1456984, *3 (E.D. Mo. Mar. 30, 2015) (defendant was registered with the Missouri Secretary of State to conduct business here and designated a local agent for service of process).

6

**B.      VetPharm's limited, incidental contacts with Missouri are insufficient to give rise to specific jurisdiction.**

A court may only exercise specific jurisdiction if it is permitted by the forum state's long-arm statute and is consistent with the Fourteenth Amendment's Due Process Clause. *Fastpath*, 760 F.3d at 820. "Due process requires that a non-resident have minimum contacts with the forum state such that maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice." *Id.*; *see World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 291–92 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The minimum-contacts analysis reflects the belief that "those who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *Fastpath*, 760 F.3d at 820 (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011)). A nonresident defendant's contacts with the forum state must be sufficient so that it should reasonably anticipate being haled into court there. *Id.* at 821. The defendant must undertake some act by which the defendant "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *J. McIntyre*, 564 U.S. at 877). Thus, a court may not exercise jurisdiction over a defendant based on "random, fortuitous, or attenuated contacts." *Id.* (indirectly quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). To analyze the defendant's contacts with the forum state, the Eighth Circuit considers five factors: (1) "the nature and quality of contacts with the forum state; (2) the quantity of the contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Id.*

NewMarket has not alleged sufficient contacts between VetPharm and Missouri to satisfy the first three factors of the minimum-contacts test. NewMarket alleges only that:

- Ms. Day left a voicemail for Kevin Speltz of VetBridge on March 15, 2016 and sent

7

him an email the same day;

- "[u]pon information and belief," VetPharm has continued to communicate with and provide updates to VetBridge;

- in October 2018, Ms. Day provided VetBridge with a sworn declaration, which VetBridge filed in this action; and

- at an unspecified time, in an unspecified manner, VetPharm allegedly represented to VetBridge that it could sell the clinical trial data.

(Third-Party Compl. ¶¶ 10, 41–42, 46–48, 63; 2018 Day Decl. ¶¶ 13–14.)[8] Of these alleged contacts, only the first and fourth allegedly give rise to NewMarket's causes of action; NewMarket does not allege any claim arising out of VetPharm allegedly providing "updates" to VetBridge or offering Ms. Day's declaration. Nor does NewMarket allege any facts that show that VetPharm's initial communication with VetBridge was specifically targeted at Missouri.

Even if NewMarket's allegations are taken at face value and charitably construed, they do not establish sufficient jurisdictional contacts between VetPharm and Missouri. As the Eighth Circuit has explained, "telephone calls, written communications, and even wire-transfers to and from a forum state do not create sufficient contacts to comport with due process such that a foreign corporation could 'reasonably anticipate being haled into court there.'" *Eagle Tech. v. Expander Ams., Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015) (quoting *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011)). Furthermore, the minimum-contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," *Fastpath*, 760 F.3d at 823 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)), which is all NewMarket has alleged. Thus, courts have repeatedly held that

---

[8]  The Court may disregard NewMarket's statement that VetPharm "regularly conduct[s] business" in this District (Third-Party Compl. ¶ 10) on the basis that it is conclusory, *see Twombly*, 550 U.S. at 555, and because VetPharm has adequately rebutted that allegation by submitting a detailed declaration by Ms. Day, its chief executive officer.

merely communicating with a forum-state resident—including conduct more sustained and deliberate than that alleged here—is insufficient to warrant the exercise of personal jurisdiction over a nonresident defendant. *See Eagle Tech.*, 783 F.3d at 1137 (nonresident defendant sent "daily emails, phone calls, and other communications" to the plaintiff's Missouri residence); *Fastpath*, 760 F.3d at 823 (nonresident defendant engaged in an "aggressive pursuit" of a business relationship with the forum-state plaintiff by sending emails and making telephone calls to forum state); *Viasystems*, 646 F.3d at 593 (nonresident defendant sent several emails and made phone calls to the forum-state plaintiff, sent a partial payment to the forum state, and allegedly caused tortious injury in the forum state); *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102–03 (8th Cir. 1996) (nonresident defendant made "at least 100" phone calls to forum-state entity and purchased machines from forum-state entity that allegedly used the plaintiff's trade secrets).

Likewise, the final two factors—Missouri's interest in providing a forum for its residents and the convenience of the parties—do not support jurisdiction here. The third-party claims at issue involve conduct by a New York corporation that allegedly occurred in New York and allegedly caused injury to a New Jersey company. Missouri, which is merely where many (but not all) of VetPharm's emails happen to have been received by the representative of one member company in VetBridge, has no governmental interest in providing a forum to resolve this dispute, which only tangentially touches upon Missouri. Nor would Missouri be a convenient location for NewMarket and VetPharm to resolve their dispute. This forum is remote from both VetPharm's and NewMarket's headquarters and from the residences of their respective principals. The dispute can be more conveniently and efficiently resolved as part of their active arbitration.

In short, exercising personal jurisdiction over VetPharm here would be inconsistent with

9

constitutional due process—as confirmed by applying the five-factor specific jurisdiction test.

### C. VetPharm has not waived personal jurisdiction.

There is no merit to NewMarket's allegation that VetPharm waived a personal jurisdiction challenge by "submitting sworn testimony by way of declaration in the present action." (Third-Party Compl. ¶ 10.) "To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (no waiver where defendant asked the court to delay a preliminary injunction hearing or by seeking expedited discovery to prepare for that hearing).[9]

No waiver or forfeiture occurred here. Contrary to NewMarket's suggestion, VetPharm did not appear in this litigation or submit any declaration. It was VetBridge that submitted the declaration of Ms. Day, which was made and executed in New York. The fact that Ms. Day provided VetBridge with a witness declaration in no way signaled to NewMarket that VetPharm was amenable to suit in this court. At the time, VetPharm was not a party to this action and could not have anticipated that it would become a party. It certainly did nothing to convey to NewMarket that, if named as a third-party defendant, VetPharm would litigate here on the merits.

## II. NewMarket's purported third-party complaint against VetPharm is improper under Rule 14 because it asserts claims that are independent of VetBridge's claims against NewMarket.

NewMarket's claims against VetPharm should be dismissed because they are not valid third-party claims. Rule 14, which governs third-party practice, allows a defendant to implead a

---

[9]  *See also Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (filing a motion to stay or a to vacate a default judgment was insufficient to constitute waiver; but entry of a general appearance by defendant's counsel—more than two years before moving to dismiss for lack of persona jurisdiction—did constitute waiver).

third party "who is or may be liable to [the defendant] for all or part of the claim against [the defendant]." Fed. R. Civ. P. 14(a)(1). The rule authorizes a third-party complaint "only if that third person's liability on that claim is in some way dependent upon the outcome of the main claim." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003) (quoting *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987)). It "does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim." *Id.* Put differently, a third-party claim must not merely be factually *similar* to the main claim—it must be logically *dependent* upon its outcome. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 376 (1978); *see also* 6A Charles Alan Wright et al., Federal Practice & Procedure Civ. § 1446, Westlaw (3d ed. updated Apr. 2019).

A third-party complaint must be dismissed where, as here, its proponent does not allege a valid legal theory under which the third-party defendant is or may be liable for all or part of the main claim. *See, e.g.*, *Mattes*, 332 F.3d at 698–99 (affirming dismissal of third-party complaint because its proponent offered "no coherent legal theory" under which the third-party defendant would be liable for the main claim); *W. World Ins. Co. v. Halphin*, 2014 WL 3730456, *1–2 (W. D. Mo. July 28, 2014); *Joe Hand Promotions, Inc. v. In Your Ear, LLC*, 2013 WL 12145860, *4 (W.D. Mo. July 26, 2013); *Advanced Lipo Dissolve Ctr., LLC v. Karkkainen*, 2007 WL 844822, *2–5 (E.D. Mo. Mar. 19, 2007).

Here, there is no logical connection between VetBridge's claims against NewMarket and NewMarket's claims against VetPharm. In its pleading, VetBridge alleges that NewMarket breached the EDLA by (i) failing to provide the funding necessary to secure and obtain approval of its equine ulcer product from the FDA so that VetBridge could distribute it; (ii) using VetBridge's $4 million investment to pay its own expenses and overhead in violation of the

limitations in the EDLA; and (iii) transferring certain ownership interests and rights to Aboris and an "unnamed, overseas company." (Pet. ¶¶ 5–42.) NewMarket's third-party claims against VetPharm have nothing to do with the breach-of-contract claims made by VetBridge against NewMarket. NewMarket does not allege (nor could it) that its breaches of the EDLA were caused by VetPharm's communications with VetBridge. Indeed, NewMarket fails to plead any theory by which VetPharm's alleged conduct would cause it to be liable for all or part of the damages that VetBridge may recover against NewMarket for breaching the EDLA. Accordingly, NewMarket cannot implead VetPharm under Rule 14.

## III.  NewMarket's third-party claims are subject to mandatory arbitration.

NewMarket's third-party claims must be arbitrated. The MSA requires that, with one exception not relevant here,[10] that "any dispute arising" under the MSA be submitted to binding arbitration. (2018 Day Decl. Ex. A § 11.11.) As the Eighth Circuit has held, arbitration provisions with "arising under" language are broadly construed to encompass claims sounding in tort "as long as the underlying factual allegations simply 'touch matters covered by' the arbitration provision. *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 837 (8th Cir. 2010); *see also Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 499–503 (8th Cir. 2007).[11] Moreover, "'[a]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *PRM Energy Sys.*, 592 F.3d at 836 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

NewMarket's third-party claims arise under the MSA. Both its tortious interference claim

---

[10]  The exception relates to the treatment of preexisting confidential information under Section 5 of the MSA. The New Jersey court has already ruled, in a sealed memorandum opinion, that clinical trial information does not fall into that category. VetPharm is prepared to provide this Court with a copy of the sealed memorandum opinion *in camera*.

[11]  In any event, under New York law, NewMarket's claims would be categorized as contract claims because it is merely seeking to enforce its bargain. *See N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 768 (N.Y. 1995).

and its misrepresentation claim concern clinical trial data collected by VetPharm in the course of its performance under the MSA. The former claim is premised on the allegation that VetPharm's communication to VetBridge was wrongful because it allegedly contained characterizations of the clinical trial data, which NewMarket alleges violated its contractual rights under the MSA. (Third-Party Compl. ¶¶ 26–31, 41.) The second claim is premised upon the allegation that VetPharm represented to VetBridge that it owned that clinical trial data and could sell it—again an alleged violation of NewMarket's contractual rights. (*Id.* ¶¶ 28, 31, 49–51, 63.) Thus, both claims are inextricably linked to the MSA and fall within the scope of the arbitration provision.

Ordinarily, the Court might issue an order staying the arbitrable claims and referring the parties to arbitration. *See* 9 U.S.C. § 3. But this case also implicates the first-to-file rule, which provides that the first federal court to obtain jurisdiction over the parties to a dispute has priority. *See Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985); *HRB Tax Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2012 WL 4363723, at *1 (W.D. Mo. Sept. 21, 2012) (Wimes, J.). Applying this rule, the Court should dismiss this action in favor of the first-filed in the District of New Jersey between the same parties and concerning the same contract and set of transactions as is pleaded in the third-party complaint. The New Jersey court has correctly referred NewMarket's and VetPharm's dispute to arbitration, and only the New Jersey court should retain jurisdiction over the parties pending the outcome of that arbitration.

## IV. Alternatively, the third-party complaint should be dismissed under Rule 12(b)(6) because NewMarket fails to state a viable claim for relief.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The pleading must "allow[] the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* In evaluating the pleading, the court may disregard labels, conclusions, formulaic recitations, and naked assertions. *Twombly*, 550 U.S. at 555–57.

**A.      New York governs NewMarket's claims against VetPharm.**

As a court sitting in diversity jurisdiction, this Court must apply Missouri's choice-of-law rules, which call for the application of the substantive law of the state with the "'most significant relationship' to the occurrence and to the parties." *Winter v. Novartis Pharm. Corp.*, 739 F.3d 405, 410 (8th Cir. 2014). In tort actions, this involves consideration of four factors: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) "the domicil, residence, nationality, place of incorporation and place of business of the parties"; and (4) "the place where the relationship, if any, between the parties is centered." *Id.*

The first three factors are evenly split between New York and New Jersey, given that the alleged conduct occurred in VetPharm's home state of New York but allegedly caused injury in NewMarket's home state of New Jersey. The fourth factor, however, decidedly tips in favor of applying the law of New York—the state where the parties' contractual relationship is centered and where VetPharm conducted virtually all of its clinical trial related activities under the MSA. (2019 Day Decl. ¶ 8.) Indeed, the MSA calls for the application of New York law. (*Id.*)

**B.      NewMarket does not state a viable claim for tortious interference.**

NewMarket's claim for tortious interference with contract fails for two reasons.

First, an essential element of the tort is that the defendant induced an actual breach of the contract by a third party. *See NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 664 N.E.2d 492, 495 (N.Y. 1996); *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996). But NewMarket identifies no provision of the EDLA that required VetBridge to continue providing funding to NewMarket above its $4 million initial investment. Rather, NewMarket alleges that the parties had contemplated an amendment to the EDLA under which VetBridge *might* have provided

additional funding to NewMarket, but VetBridge declined to go forward with that amendment. (Third-Party Compl. ¶¶ 35–36, 44.) Thus, NewMarket fails to allege that VetPharm's alleged interference caused VetBridge to breach an existing contractual obligation.

Second, VetPharm's actions were justified because it acted in its own economic self-interest, which is a defense to a tortious interference claim. *See Foster v. Churchill*, 665 N.E.2d 153, 156–57 (N.Y. 1996); *Torrenzano Grp., LLC v. Burnham*, 26 A.D.3d 242, 243 (N.Y. App. Div. 2006). NewMarket acknowledges that VetPharm's motivation for contacting VetBridge was to obtain payment for its services. (Third-Party Compl. ¶¶ 29, 39; 2018 Day Decl. ¶¶ 9–16.) To overcome an economic justification defense, NewMarket would have to show either that VetPharm acted with malice or that it used fraudulent or illegal means, *Foster*, 87 N.Y.2d at 750. NewMarket has not alleged facts that would support either exception.

### C.    NewMarket does not state a viable claim for misrepresentation.

To state a claim for fraudulent misrepresentation, a plaintiff must plead, among other things, that it justifiably relied upon the alleged misrepresentation to its detriment. *Pasternack v. Lab. Corp. of Am. Holdings*, 59 N.E.3d 485, 491–93 (N.Y. 2016). Reliance by a third party will not suffice. *Id.* NewMarket fails to allege that it (or anyone else, for that matter) relied on VetPharm's alleged statement concerning its ability to sell the clinical trial data. (*See* Third-Party Compl. ¶¶ 63–69.) Further, NewMarket has not plausibly alleged any injury stemming from VetPharm's alleged statement. NewMarket includes only a vague, conclusory allegation that the statement has had an unspecified impact on NewMarket's ability to sell the clinical trial data. (*Id.* ¶ 68.) But NewMarket's inability to sell the data stems from the fact that it does not have the data because it has not paid for it. NewMarket offers no plausible connection between VetPharm's alleged statement to VetBridge and its own inability to sell the clinical trial data.

NewMarket's misrepresentation claim also violates Rule 9(b), which requires a party to

plead the "who, what, where, when, and how of the alleged fraud," including "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation marks omitted). NewMarket's bare-bones allegations fail to include this necessary detail.

## CONCLUSION

For the foregoing reasons, VetPharm respectfully requests that the Court dismiss the third-party complaint.

Dated: April 29, 2019

Respectfully submitted,

**TIEMAN, SPENCER & HICKS, LLC**

*/s/ Lee C. Tieman*
Lee C. Tieman          MO Bar # 39353
Joel S. Hane           MO Bar # 67006
702 Felix Street
St. Joseph, MO 64501
T: 816.279.3000
F: 816.279.3066
lee.tieman@tshhlaw.com
joel.hane@tshhlaw.com

*Attorneys for Third-Party Defendant VetPharm, Inc.*

Of Counsel:

**HARRIS BEACH PLLC**
Douglas A. Foss (*pro hac vice* pending)
Kyle D. Gooch (*pro hac vice* pending)
99 Garnsey Road
Pittsford, NY 14534
T: 585.419.8800
F: 585.419.8801
dfoss@harrisbeach.com
kgooch@harrisbeach.com

16

## CERTIFICATE OF SERVICE

 I hereby certify that on April 29, 2019, I electronically filed the foregoing with the Clerk of the Court and that an electronic notice of filing and a copy of the foregoing will automatically be sent to all counsel of record in this matter via the Court's ECF filing system.

_/s/ Lee C. Tieman_
Lee C. Tieman
