IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| VetBridge Product Development Subsidiary I (NM-OMP), LLC,<br><br>   Plaintiff,<br><br>  v.<br><br>NewMarket Pharmaceuticals, LLC,<br><br>   Defendant. | Civil Action No. 5:18-cv-06147-BCW |
| NewMarket Pharmaceuticals, LLC,<br><br>   Third-Party Plaintiff,<br><br>  v.<br><br>VetPharm, Inc.,<br><br>   Third-Party Defendant. | |

## DECLARATION OF DENNI O. DAY

Denni O. Day, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct:

1. VetPharm is a contract research organization that provides a full menu of clinical trial support services to pharmaceutical companies seeking approval for new veterinary medicines from the U.S. Food and Drug Administration. I founded VetPharm in 2000 and have served at all times as its president and chief executive officer. I have personal knowledge of the matters set forth below.

2. I make this declaration in support of VetPharm's motion to dismiss the third-party complaint filed by NewMarket Pharmaceuticals, LLC ("NewMarket") for lack of personal jurisdiction.

3. VetPharm is a corporation organized under New York law with its principal place of business located in East Rochester, New York.

4. VetPharm has never owned, leased, possessed, or maintained any real property in Missouri. Nor has it owned, leased, possessed, or maintained an office or other regular place of business in Missouri. Nor has VetPharm ever maintained any bank, savings, investment, or loan account in Missouri, nor has it previously sued or been sued in a Missouri state or federal court.

5. VetPharm manages veterinary clinical trials under contracts with veterinary pharmaceutical companies. Of the 49 trials that VetPharm has completed since its founding in 2000, only eight (16%) were sponsored by pharmaceutical companies with offices in Missouri. The most recent of those studies concluded in 2010. As part of its work, VetPharm subcontracts with veterinary clinics and hospitals across the country to enroll their patients in clinical trials (usually 10 to 15 clinics per trial). Between 2001 and 2015, VetPharm also subcontracted with veterinary technicians across the country to serve as part-time monitors of the various veterinary clinics participating in its clinical trials. During 2012 and 2013, there was one Missouri veterinary clinic participating in a clinical trial for a non-Missouri pharmaceutical company. VetPharm hired a Missouri veterinary technician to monitor that clinic. That monitor performed very limited services for VetPharm in January 2013, was paid $270, and was then terminated. Due to its one part-time employee, VetPharm filed to register as a foreign corporation in Missouri in 2012. A certificate of qualification was issued in 2013. After terminating its one

2

employee, VetPharm applied to withdraw its registration as a foreign corporation. That registration lapsed in December 2015.

6. During at least the past five years, VetPharm has not contracted clinical trials with any Missouri-based pharmaceutical company and has not had any employees in Missouri. Between December 2016 and October 2018, one veterinary clinic in Missouri participated in a VetPharm-managed clinical trial sponsored by a non-Missouri-based pharmaceutical company. Currently, VetPharm does not conduct any business activities in Missouri.

7. In December 2014, NewMarket retained VetPharm to manage a clinical trial of a new animal health product to prevent and treat gastric ulcers in horses. The terms and conditions of that engagement were memorialized in a Master Services Agreement ("MSA") between the parties.

8. VetPharm's relationship with NewMarket was based in New York. VetPharm's performance under the MSA was carried out exclusively in and from New York. None of the participating veterinary clinics for NewMarket's clinical trials were located in Missouri, none of the monitors were located in Missouri, none of the data were collected in or from Missouri, and none of the work related to the NewMarket clinical trials was performed in Missouri.

9. The MSA provides for the application of New York law. Section 11.5 states that "[t]his Agreement and the rights and obligations of the Parties hereunder shall be governed by and construed in accordance with the laws of the State of New York without reference to its conflicts of laws [sic] provisions."

10. I understand that NewMarket has asserted a claim for tortious interference with contract against VetPharm that allegedly arises out of my efforts to contact Kevin Speltz, president of VetBridge Product Development Subsidiary I (NM-OMP), LLP ("VetBridge") in

March 2016. Those efforts—consisting of an unanswered phone call that went to voicemail and follow-up emails—are described in my previous declaration dated October 31, 2018, a copy of which is attached as **Exhibit A**. I made the phone call and sent the email described in that declaration from New York. At the time, I knew that Mr. Speltz was the president of NewMarket's investor group (from information volunteered by Bryan Ridall of NewMarket), but I did not know that its name was VetBridge.

11. I further understand that NewMarket has asserted a claim for misrepresentation based on its allegation that VetPharm has represented to VetBridge that it can sell the clinical trial data collected as the result of the services VetPharm provided under the MSA. That allegation is false: VetPharm has never offered to sell the clinical trial data to VetBridge or any other person or entity.

12. I can only surmise that NewMarket's allegations about selling the clinical trial data are gross mischaracterizations of proposals that VetPharm has made to VetBridge and NewMarket, through counsel, in order to resolve the legal dispute between VetPharm and NewMarket. Those proposals were made by VetPharm's counsel from New York via email and telephone communication with VetBridge's counsel in Missouri.

Executed on April 29, 2019.

_____
Denni O. Day